**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**EVANSVILLE DIVISION**

| | | |
|---|---|---|
| BOGARD, MCGRATH, JANE DOE, | ) | |
| BECCA SCHMILL FOUNDATION, | ) | |
| *Individually and on behalf of all* | ) | |
| *others similarly situated*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:23-cv-00012-RLY-MJD |
| | ) | |
| TIKTOK INC., BYTEDANCE INC, | ) | |
| ALPHABET INC., | ) | |
| XXVI HOLDINGS INC., GOOGLE LLC, | ) | |
| YOUTUBE, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**GOOGLE DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION,**
**OR IN THE ALTERNATIVE, TO TRANSFER TO THE NORTHERN DISTRICT OF**
**CALIFORNIA**

Pursuant to Federal Rule of Civil Procedure 12(b)(2) and 28 U.S.C. § 1404(a), Defendants

Alphabet Inc., Google LLC ("Google"), YouTube, LLC ("YouTube"), and XXVI Holdings Inc.

(together, "Google Defendants") submit this memorandum of law in support of their motion to

dismiss the Complaint for lack of personal jurisdiction, or alternatively, to transfer the case to the

Northern District of California.

This case concerns Plaintiffs' claims that social media companies, including Google and

its wholly-owned subsidiary, YouTube, did not remove certain YouTube videos after receiving

reports objecting to their content. While the Complaint fails as a matter of law, the Court must first

address the threshold problem that it lacks personal jurisdiction over the Google Defendants, and

the case should be dismissed. In the alternative, the case must be transferred to the Northern

District of California pursuant to the Google Terms of Service ("Google ToS") that Plaintiffs agreed to.

Stripped of bare legal conclusions about "minimum contacts," the Complaint is devoid of any jurisdictional allegations, and Plaintiffs plead no facts about the Google Defendants' connection to Indiana, either generally or specifically. Because of their failure to plead sufficient facts to support this Court's exercise of personal jurisdiction, the Court should dismiss the Google Defendants under Fed. R. Civ. P. 12(b)(2). Alternatively, this Court should transfer the case to the Northern District of California, where jurisdiction would lie.[1] To submit the content reports at the center of this lawsuit, Plaintiffs had to use their Google Accounts. Declaration of Raquel Small, attached hereto as Exhibit 1 ("Small Decl."), ¶ 5. When creating those accounts, Plaintiffs necessarily accepted Google's ToS, which contain a clear and unequivocal forum-selection clause that requires "all disputes arising out of or relating to" Google's services to be "resolved exclusively in the federal or state courts of Santa Clara County, California." Those agreements, and their forum-selection clauses, govern here and are properly enforced through a motion to transfer venue under 28 U.S.C. § 1404(a). *See Atl. Marine Constr. Co. v. U.S. District Court*, 571 U.S. 49, 59 (2013). Because Plaintiffs expressly agreed to resolve all such claims in the Northern District of California exclusively, binding Supreme Court precedent requires this case be transferred there. Finally, even if the Court considers the additional § 1404(a) factors foreclosed by *Atlantic Marine*, transfer still would be warranted because the Northern District of California is convenient for the parties and witnesses.

---

[1] The defendants, TikTok Inc. and ByteDance Inc. ("TikTok Defendants") concurrently seek to dismiss the claims on the basis that this court lacks personal jurisdiction over them or, alternatively, to transfer the case to the Northern District of California.

## FACTUAL BACKGROUND

### A.    Plaintiffs' Claims Against the Google Defendants

On February 1, 2023, Plaintiffs filed this lawsuit against TikTok Inc., ByteDance Inc., Alphabet Inc., XXVI Holdings, Inc., Google, and YouTube, alleging various common law and state law claims arising from "content reporting features Defendants created, designed, and marketed to members of the public." *E.g.*, Compl. ¶¶ 10, 12, 17. Despite naming four separate Google Defendants, Plaintiffs assert claims against YouTube only. *Id.* ¶¶ 162, 175, 188, 204, 211, 218, 239. All Google Defendants are Delaware corporations with their principal place of business in California. *Id.* ¶¶ 49-52. Alphabet is the sole stockholder of XXVI Holdings, Inc., of which Google is a wholly-owned subsidiary. *Id.* ¶¶ 49-51. YouTube is, in turn, a wholly-owned subsidiary of Google. *Id.* ¶ 51. The Complaint contains no jurisdictional facts about the Google Defendants' connection or relation to the forum except for conclusory allegations that they do business throughout the United States, including Indiana, and have "advertised, marketed, and distributed [their] YouTube social media platform to consumers throughout the United States." *Id.* ¶¶ 51-52.

Plaintiff Bogard resides in Indiana, Plaintiff McGrath resides in Wisconsin, and the Becca Schmill Foundation ("Foundation") is a non-profit corporation registered in Massachusetts. *Id.* ¶¶ 43-44, 46.[2] Plaintiffs Bogard and McGrath allege their minor children had watched "choking challenge" videos on YouTube and "upon information and belief, [] passed away in a fatal accident in attempting this 'choking challenge.'" *Id*. ¶¶ 61, 80. The Foundation aims to, among other things, "advocate for policies that promote and safeguard the wellbeing of adolescents and young adults," including "social media accountability and online safety." *Id.* ¶¶ 105-06. Bogard, McGrath and the

---

[2] Plaintiff Doe, an Oregon resident, brings claims against TikTok and ByteDance ("TikTok Defendants") only. Compl. ¶¶ 161-247.

Foundation assert they "have been going online, searching for and reporting choking videos and other harmful videos they find to social media and video streaming platforms," but their efforts were "unheeded, ignored, and arbitrarily dismissed by YouTube…" *Id.* ¶ 8. Plaintiffs claim they "relied upon the reporting process set forth by Defendants' platforms to flag and report the harmful content so that it may be removed per the platforms' own published guidelines and rules." *Id.* ¶ 28. Plaintiffs allegedly "reexperienced trauma and grief" when they received "canned responses stating that choking challenge videos…does not violate [YouTube's] community guidelines." *Id.* ¶ 9.

Plaintiffs bring claims on behalf of themselves and their deceased children. *Id.* ¶¶ 26, 43-46. They also seek to represent a nationwide class of "all people who used…YouTube and who made safety reports through the process set forth by Defendants from January 2020[3] through the date of dispositive judgment made in this action," *Id.* ¶ 144, in addition to subclasses of Indiana, Oregon, and Wisconsin residents. *Id.* ¶¶ 147-49. The claims against YouTube are: products liability, negligence, fraudulent and negligent misrepresentation, violations of the Indiana Deceptive Consumer Sales Act, the Wisconsin Deceptive Trade Practices Act, and California's Unfair Competition and False Advertising laws. Plaintiffs seek compensatory damages, punitive damages, and injunctive relief. *Id.* ¶¶ 52-53.

### B.    Google's and YouTube's Terms of Service.

Plaintiffs' claims against the Google Defendants all are based on content reports Bogard, McGrath and the Foundation's "retained researchers" (*id.* ¶¶ 107-08) filed about YouTube videos. *Id.* ¶¶ 71-72, 82-85, 108. The earliest YouTube content report appears to have been made after February 14, 2018, *id.* ¶¶ 80-82, using "the reporting processes set forth by Defendants' platforms

---

[3] Elsewhere, Plaintiffs allege they made content reports in 2018 and 2019. Compl. ¶¶ 37, 66, 82.

to flag and report the harmful content," *id.* ¶ 28. Since at least that time, users must submit YouTube content reports by signing into their Google Accounts. Small Decl. ¶ 5. To create a Google Account, every user, without exception, is required to accept Google's ToS. *Id*. ¶ 6. For example, in the current version of the sign-up process, when users create a Google Account, they are presented with the text: "To create a Google Account, you'll need to agree to the Terms of Service below." The phrase "Terms of Service" appears in blue font, and links to the complete text of Google's ToS. By clicking "I Agree," users agree to abide by Google's ToS. *Id.* ¶ 7. Without accepting Google's ToS, the user cannot create a Google Account. *Id.* ¶ 6.

At all times relevant here, the Google ToS have included an express forum-selection clause designating the courts in Santa Clara County, California, as the required venue for litigation arising out of Google's services. *Id.* ¶ 13. This is the version of the provision applicable to all current users:

> California law will govern all disputes arising out of or relating to these terms, service-specific additional terms, or any related services, regardless of conflict of law rules. These disputes will be resolved exclusively in the federal courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts.

*Id.*, Ex. 1. "Services" are a defined term that include a "Google Account." *Id*. Santa Clara County is located in the Northern District of California. *See* 28 U.S.C. § 84(a). Because many millions of users create Google Accounts free of charge, the forum-selection clause is necessary to manage the cost of litigation and reduce the inconvenience to Google that would arise if the company were forced to litigate claims all over the world. Small Decl. ¶ 14; *accord Rojas-Lozano v. Google, Inc.*, No. 15-cv-10160, 2015 WL 4779245, at *3 (D. Mass. Aug. 12, 2015) (enforcing forum-selection clause in Google's Terms of Service where "Plaintiff was required to check a box next to the text, 'I agree to Google Terms of Service and Privacy Policy.'").

## ARGUMENT

### A.    This Court Lacks Personal Jurisdiction over the Google Defendants.

Under Rule 12(b)(2), Plaintiffs have the burden to establish personal jurisdiction by alleging facts sufficient to show that the Court has general or specific jurisdiction over the defendants. *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). General jurisdiction "is all-purpose; it permits a defendant to be sued in a forum for *any* claim, regardless of whether the claim has any connection to the forum state." *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019) (emphasis in original). Specific jurisdiction applies in a suit "arising out of or related to the defendant's contacts with the forum." *Brook*, 873 F.3d at 552. Dismissal of a complaint is warranted where the plaintiff fails to allege facts sufficient to establish personal jurisdiction over the defendant. *Rogers v. City of Hobart, Indiana*, 996 F.3d 812, 821 (7th Cir. 2021) (affirming dismissal of complaint for lack of personal jurisdiction); *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 496 (7th Cir. 2014) (same). Threadbare, conclusory allegations without factual support are not entitled to an assumption of truth and are insufficient to establish personal jurisdiction. *See Hill-Rom Servs., Inc. v. Tellisense Med., LLC*, No. 1:17-cv-4725, 2018 WL 5044686, at *4 (S.D. Ind. Oct. 17, 2018). Here, Plaintiffs baldly allege that all Defendants "do business in this District," "have sufficient minimum contacts with this District," and "intentionally avail themselves of the markets in this State." Compl. ¶ 55. Such threadbare allegations are insufficient for general or specific jurisdiction.

**General Jurisdiction.** A court may only assert general jurisdiction over foreign corporations "when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*, 783 F.3d 695, 697 (7th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S.

117, 137 (2014)).  A defendant must be "essentially at home" in that forum for a court to exercise general jurisdiction over it. *Abelesz v. OTP Bank*, 692 F.3d 638, 656 (7th Cir. 2012). A corporation is considered to be "at home" in its place of incorporation and principal place of business. *Daimler*, 571 U.S. at 137. If a corporation's principal place of business or state of incorporation is not the forum state, general jurisdiction may be appropriate ***only*** where the corporation's operations in that forum are "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19.

Plaintiffs concede the Google Defendants are not incorporated or headquartered in Indiana. Compl. ¶¶ 49-52. There are no allegations whatsoever that any of the Google Defendants has contacts with Indiana that are "so substantial" to make any of them "at home" in Indiana. While this Court may disregard the conclusory nature of Plaintiffs' allegation that "Defendants transacted business" in Indiana, *Hill-Rom Servs*, 2018 WL 5044686, at *4, such an allegation is wholly insufficient to create general jurisdiction, *Collazo v. Enterprise Holdings, Inc.*, 823 F. Supp. 2d 865, 870 (N.D. Ind. 2011) ("even the operation of a 'highly interactive' website will not, alone, subject a defendant to general jurisdiction"). Plaintiffs thus cannot demonstrate that the Court may exercise general jurisdiction over the Google Defendants.

**Specific Jurisdiction.** Specific jurisdiction is limited to the "adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019) (citations and quotations omitted). To establish specific jurisdiction, the plaintiff must show that (1) the defendant has purposefully directed its activities at the forum state; (2) the alleged injury arises out of or relates to the defendant's forum-related activities; and (3) any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *Rogers*, 996 F.3d at 819.

Here, the Complaint does not meet any of the elements required for specific jurisdiction over the Google Defendants. As an initial matter, the Complaint does not allege any facts supporting jurisdiction over Alphabet or XXVI Holdings, which mandates their dismissal. As to Google and YouTube, the conclusory allegation that YouTube "transacts . . . business in this District and throughout the United States" and that Google and YouTube have "advertised, marketed and distributed [] YouTube . . . to consumers throughout the United States" are similarly deficient. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) (no specific jurisdiction over company that maintained an email marketing list to "shower past customers and other subscribers with company-related emails," since such nationwide marketing "does not show a relation between the company and Indiana.").

Indeed, the Complaint contains no allegations that Google or YouTube "purposefully directed [their] activities," with respect to content reporting and removal, to Indiana residents in particular. At most, Plaintiffs allege Google and YouTube operate a highly interactive online platform that allows all users, wherever they reside, to report YouTube videos through their Google Accounts. "The interactivity of a website is [] a poor proxy for adequate in-state contacts." *Advanced Tactical Ordnance Sys.*, 751 F.3d at 803. As the Seventh Circuit has warned, "[c]ourts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" *Id.* If Plaintiffs' could establish jurisdiction based on their alleged YouTube content reporting in Indiana, this would "impermissibly allow[] [the consumer's] contacts with the defendant and forum to drive the jurisdictional analysis." *Walden v. Fiore*, 571 U.S. 277, 289 (2014). But "specific jurisdiction depends on defendants' contacts within the state," not Plaintiffs' contacts. *Id.*

The only specific jurisdiction allegations in the Complaint are conclusory recitations of the "minimum contacts" test. *See* Compl. ¶ 55 (alleging that all defendants "intentionally avail themselves of the markets in this State through the promotion, marketing, and operations of their platforms at issue in this lawsuit, and by retaining the profits and proceeds from these activities."); ¶ 56 ("Plaintiffs' claims arose in this District and Defendants are subject to the Court's personal jurisdiction with respect to this action"). These threadbare and unsupported conclusory statements are wholly inadequate to establish jurisdiction. *See Tellisense Med., LLC*, 2018 WL 5044686, at *4.

Notably, only one plaintiff, Bogard, is a resident of Indiana, Compl. ¶ 43, and the other three Plaintiffs should not be able to bootstrap jurisdiction over the Google Defendants for their respective claims through Bogard. *See Bristol-Meyers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 265 (2016) ("The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California"—and allegedly sustained the same injuries as did the nonresidents—"does not allow the State to assert specific jurisdiction over the nonresidents' claims.") (emphasis in original). Moreover, Plaintiffs do not allege that Bogard reported any YouTube videos in Indiana. There are no allegations that Google marketed YouTube's content reporting procedures specifically to Indiana residents, or that such marketing was any different compared to the rest of the country. *Advanced Tactical Ordnance Sys.*, 751 F.3d at 803. Plaintiffs fail to demonstrate that Google's or YouTube's alleged conduct has any connection to Indiana, apart from the operation of a global interactive service accessible throughout the world, which is insufficient to establish personal jurisdiction. *See Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019) (recognizing that courts must ensure that companies like Google are "not haled

into court simply because the defendant owns or operates an interactive website that is accessible in the forum state.").

The Court should therefore dismiss Plaintiffs' claims against the Google Defendants for lack of personal jurisdiction. *Rogers*, 996 F.3d at 821. Alternatively, the Court can transfer the case to the Northern District of California. *Diversity Max, LLC v. David Waller, W2 Ltd.*, No. 1:14-cv-02066, 2016 WL 1270205, at *5 (S.D. Ind. Mar. 31, 2016) (Young, C.J.).

> **B.    Alternatively, this Court Should Transfer this Case Pursuant to a Mandatory Forum Selection Clause Plaintiffs Agreed To**

A district court may transfer any civil action to any district court where it could have originally been brought or to any district "to which all parties have consented." 28 U.S.C. § 1404(a). Generally, the moving party must establish under Section 1404(a) that "(1) venue is proper in the transferor district, (2) venue and jurisdiction are proper in the transferee district, and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interests of justice." *Advance Prod., Inc. v. SFI of Tenn., LLC*, No. 2:11-cv-113, 2011 WL 3751645, at *2 (N.D. Ind. Aug. 23, 2011). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct.*, 571 U.S. 49, 63 (2013).

The Supreme Court has instructed that "a valid forum-selection clause" should be "given controlling weight in all but the most exceptional cases," and, in light of this, "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Atl. Marine*, 571 U.S. at 63 (internal quotation and citation omitted). First, the plaintiff's choice of forum "merits no weight" and the plaintiff "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, the court "should not consider arguments about the parties' private interests. . . . A court . . . must deem the private-

interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64; *see also IAC/InterActiveCorp v. Roston*, 44 F.4th 635, 645 (7th Cir. 2022) (affirming that the "district court had no duty to consider the plaintiffs' preferred forum or the private interest factors" because their claims were subject to a mandatory forum-selection clause). "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Atl. Marine*, 571 U.S. at 64 (citations omitted).

    **1.**  **The Forum-Selection Clause in the Google Terms of Service is Valid and Applies to Plaintiffs' Claims.**

    Plaintiffs are bound by Google's ToS and the forum-selection clause in those terms mandating that any dispute be resolved in California. Plaintiffs admit that they reported numerous videos to YouTube between 2018 and February 2023. To do this, Plaintiffs had to be signed into their Google Accounts. Small Decl. ¶ 5. If the user is not signed in, they will be prompted to do so before being able to submit a report on a video. *Id.* If the user does not have a Google Account, they will be prompted to create one and affirmatively agree to Google's ToS. *Id.* ¶¶ 6-7. Therefore, anyone who has reported a video to YouTube during the relevant time period in the Complaint has assented to Google's ToS.

    Here, the forum-selection clause contained in Google's ToS clearly applies to Plaintiffs' claims. Google's ToS state that "all disputes arising out of or relating to these terms, service-specific additional terms, or any related services… will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts." *Id.* ¶ 13, Ex. 1. Because Plaintiffs' claims against the Google

Defendants are based on their use of their Google Accounts to report video content on the YouTube platform, the forum-selection clause from the Google ToS applies to their claims.

Courts routinely find these types of website user agreements are valid and enforceable contracts, including those that contain a forum-selection clause. *See, e.g.*, *Merchants Bank of Indiana v. Curby*, No. 1:21-cv-02669, 2022 WL 16658130, at *2 (S.D. Ind. Nov. 3, 2022) ("most courts, including Indiana courts, find clickwrap to be enforceable."); *Appliance Zone, LLC v. NexTag, Inc.*, No. 4:09-cv-0089, 2009 WL 5200572, at *4 (S.D. Ind. Dec. 22, 2009) (holding that the defendant's terms of service was an enforceable agreement where it required the plaintiff to affirmatively check a box stating it accepted the terms because even though the plaintiff "might have chosen not to read the Agreement, it affirmatively acknowledged that it had done so."). Indeed, courts confronting Google's ToS have not hesitated to enforce the forum-selection clause and mandate dismissal or transfer to the Northern District of California. *See, e.g.*, *Muhammad v. YouTube, LLC*, No. 18-cv-836, 2019 WL 2338503, at *3 (M.D. La. June 3, 2019); *Biltz v. Google, Inc.*, No. 18-cv-00059, 2018 WL 3340567 (D. Haw. July 6, 2018); *Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 61–63 (D.D.C. 2014); *see also Rojas-Lozano v. Google, Inc.*, No. 15-cv-10160, 2015 WL 4779245, at *3 (D. Mass. Aug. 12, 2015); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 246 (E.D. Pa. 2007) (holding that the forum-selection clause in Google's AdWords agreement was mandatory and enforceable); *Person v. Google Inc.*, 456 F. Supp. 2d 488, 493–97 (S.D.N.Y. 2006) (same).[4]

---

[4] It is of no moment that the version of Google's Terms of Service to which the Foundation's researcher initially agreed lacked a forum selection clause because: (a) the 2003 Google Terms of Service, to which the researcher affirmatively agreed, clearly provided that Google "reserve[s] the right to modify these Terms of Service from time to time without notice," Small Decl. ¶ 10, Ex. 4, (b) Google encouraged users to "review these Terms of Service from time to time so that you will be apprised of any changes," *id.*, and (c) Google posted the updated Terms to its website and sent emails to users describing the updates, *id.* ¶ 12. The Foundation is therefore bound by the most recent version of Google's ToS, which have contained the same forum selection clause since 2007, *id.* ¶ 13. *See, e.g., Matera v. Google, Inc.*, No. 15-cv-04062, 2016

2.      **The Public-Interest Factors Weigh in Favor of Transfer.**

Because *Atlantic Marine* controls here, the mandatory forum-selection clause in the Google

ToS requires the Court to transfer this matter to the Northern District of California. *See Mueller v.*

*Apple Leisure Corp.*, 880 F.3d 890, 893 (7th Cir. 2018) ("only an exceptional public-interest

justification can displace a contractual choice of forum."). The district court considers "the

administrative difficulties stemming from court congestion; the local interest in having localized

disputes decided at home; the interest in having the trial of a diversity case in a forum at home

with the law that must govern the action; the avoidance of unnecessary problems in conflicts of

laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated

forum with jury duty." *Roston*, 44 F.4th at 645. None of the public-interest factors weigh in

Plaintiffs' favor, let alone constitute the "exceptional" justification that would override the forum-

selection clause. First, concerns related to court congestion favor transfer. *See In re Ryze Claims*,

968 F.3d at 710 (explaining that to "the extent that court congestion matters, what is important is

the *speed with which a case can come to trial and be resolved*.") (emphasis in original). Statistics

from the Administrative Office of the U.S. Courts show that the Northern District of California

has a median time of 32.9 months from filing to trial for civil actions, versus 42.2 months in the

Southern District of Indiana. *See* U.S. District Courts Combined Civil and Criminal Federal Court

Management Statistics (December 31, 2022)[5]; *see also Wilkins v. Genzyme Corp.*, No. 4:20-cv-

00051, 2020 WL 7864112, at \*6 (S.D. Ind. Dec. 30, 2020) (observing that the Southern District of

---

WL 5339806, at \*17 (N.D. Cal. Sept. 23, 2016) (users who had agreed to a prior version of Google's Terms
of Service were bound by later version posted to the site, when previously agreed-to terms notified users
that updated terms would be posted and they should discontinue using Google's services if they did not
consent).

[5] Available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2022.pdf.

Indiana "is the second busiest federal district court in the country based on weighted case load per judge").

The local interest and diversity case factors also favor transfer. Judges in the Northern District of California are very familiar with diversity jurisdiction cases against Google and can efficiently adjudicate Plaintiffs' claims. For example, Judge Yvonne Gonzalez Rogers is currently presiding over a multi-district litigation involving similar negligence and products liability claims against Google based on the use of YouTube (in addition to TikTok). *See In re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, No. 4:22-md-3047, ECF No. 138 (N.D. Cal. Feb. 17, 2023). Plaintiffs cannot make any showing that the Northern District of California is not a proper venue to adjudicate their claims.

### C. Alternatively, a Consideration of the *Forum Non Conveniens* Factors Favors Transfer

Even if the Court were to consider the private interest factors foreclosed by *Atlantic Marine*, transfer still would be warranted. The private interest factors include convenience of the parties and the witnesses, "the location of material events and material evidence," and "the interests of justice." *Commissioning Agents, Inc. v. Long*, 187 F. Supp. 3d 980, 985 (S.D. Ind. 2016). All Defendants are based in California, and material evidence is located there. The only material events are decisions about whether or not to remove YouTube videos, which largely occurred in California. Only one Plaintiff resides in Indiana—the others live in Oregon, Massachusetts, and Wisconsin. Thus, the private interest factors support transfer, and as discussed above, the public interest factors also favor transfer.

### 1. Convenience of the Parties.

Where, as here, "the chosen forum has little connection to the relevant events," *Id.* at 986, the general presumption favoring a plaintiff's choice of forum falls away. And where the situs of

material events is not the plaintiff's chosen forum, the presumption is particularly diminished. *Id.* Any presumption favoring plaintiff's choice of forum is lowered further when the case is brought as a class action. *See Banks v. Cent. Refrigerated Servs. Inc.*, No. 2:15-cv-105, 2016 WL 8671568, at *3 (N.D. Ind. Apr. 29, 2016) ("in class action suits . . . a plaintiff's choice of forum is entitled to less deference because any member of the class who subsequently chooses to appear might be faced with similar inconveniences, depending on where the action proceeds.") (internal citations omitted).

Plaintiffs' choice of forum merits no deference here. Only one Plaintiff lives in Indiana; the other three are scattered across the country, and Plaintiff Doe—who brings claims against the TikTok Defendants—lives in Oregon, within the Ninth Circuit. Compl. ¶¶ 43-46. Furthermore, Plaintiffs seek to bring their case as a class action, and there is no allegation that any material event occurred in Indiana, or that Defendants engaged in any conduct in Indiana.

The only state with a material connection to all Plaintiffs (and the potential class) is California, where all Defendants have their principal places of business. *Id.* ¶¶ 47-52. On these facts, courts regularly grant transfer motions even when considering the private interest factors. *See Bryant v. QuiBids LLC,* No. 11-cv-1013, 2012 WL 394154 (N.D. Ill. Feb. 3, 2012) (transfer to another district was warranted, in part, because only one plaintiff lived in the forum state and plaintiffs alleged a variety of state statutory claims, while the Defendant and its employees were all located in the transferee state). Further, the only material events at issue here—decisions about whether or not to remove certain YouTube videos—largely occurred in California, and none of these decisions took place in Indiana. *See* Small Decl. ¶¶ 15-17. For these reasons, the convenience of the parties factor weighs in favor of transfer.

**2.    Convenience of Witnesses and Location of Material Evidence.**

15

The second private interest factor—the convenience of witnesses and location of material evidence—also favors transfer. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Plaintiffs' claims are based on the Google Defendants' decisions in response to content reports about YouTube videos, which decisions were largely made and documented in California, by employees based in California. Small Decl. ¶¶ 16-18. Any discovery would therefore focus on witnesses and evidence located in California, which also favors transfer. *See Palmucci v. Twitter, Inc.*, No. 18-cv-1165, 2018 WL 11221296, at *3 (N.D. Ill. June 14, 2018) (finding transfer was appropriate where Google's practices and policies were developed in California.); *F.T.C. v. Fortune Hi-Tech Mktg., Inc.*, No. 13-cv-578, 2013 WL 1858598 (N.D. Ill. May 1, 2013) (finding that when documentary evidence is located in the transferee state, but digitally available it weighs slightly in favor of a transfer).

### 3.    Interests of Justice.

The "interest of justice" factor examines which forum is better for the "efficient administration of the court system." *Research Automation, Inc.*, 626 F.3d at 978. As discussed above, this factor weighs in favor of transfer. *See* discussion *supra* at 13.[6]

Notably, courts in this Circuit have undertaken the interest of justice analysis and transferred cases involving Google and similar technology companies to the Northern District of California. *See, e.g.*, *Palmucci,* 2018 WL 11221296, at * 2 (transferring the case in the interest of justice because the Northern District of California had a "presumed resulting familiarity" with the

---

[6] While courts consider the same public interest factors under both *Atlantic Marine* and Section 1404(a), the weight accorded to these factors is different where there is a valid forum-selection clause. Under *Atlantic Marine*, the Court should only refuse to enforce a forum selection clause when the public interest factors fall into one of the very limited exceptions (which are not present here), while Section 1404(a) requires the court to weigh the public interest factors among the parties. *Research Automation*, 626 F.3d at 978. No matter how much weight the public interest factors are given, they still favor transfer under the traditional 1404(a) analysis.

"area of law," "all Defendants are headquartered in the Northern District of California," and the median wait time to trial was shorter in California).

## CONCLUSION

For the foregoing reasons, the Court should grant the Google Defendants' Motion to dismiss for lack of personal jurisdiction, or, in the alternative, to transfer this action to the Northern District of California

Dated: April 14, 2023                          Respectfully submitted,

By:   */s/ Tiana Demas*
COOLEY LLP
Tiana Demas (admitted pro hac vice)
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606
(312) 881-6500
tdemas@cooley.com

Michael G. Rhodes (admitted *pro hac vice*)
Kyle C. Wong (admitted *pro hac vice*)
3 Embarcadero Center, 20th floor
San Francisco, CA 94111
(415) 693-2000
rhodesmg@cooley.com
kwong@cooley.com

Jeff Barron
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
(317) 231-7751
jeff.barron@btlaw.com

*Counsel for Defendants Alphabet Inc.,*
*Google LLC, YouTube, LLC, and XXVI*
*Holdings Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document

was served upon all counsel and parties of record via ECF on April 14, 2023.


*/s/ Tiana Demas*
Tiana Demas