UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| JOANN BOGARD, <br> ANNIE MCGRATH, <br> JANE DOE, <br> BECCA SCHMILL FOUNDATION, <br><br>   Plaintiffs, <br><br> v. <br><br> TIKTOK INC., <br> BYTEDANCE INC., <br> ALPHABET INC., <br> XXVI HOLDINGS INC., <br> GOOGLE LLC, <br> YOUTUBE LLC, <br><br>   Defendants. | No. 3:23-CV-00012-RLY-MJD |

**DEFENDANT TIKTOK INC.'S AND BYTEDANCE INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE, TRANSFER**

This is a putative class action involving four plaintiffs[1] and six defendants[2] that should not be litigated in Indiana. Most of the Plaintiffs, and all of the Defendants, are based out of state. Only one party—Plaintiff Bogard—is alleged to be a resident of Indiana, and as Google explains in its motion to transfer, she agreed to litigate her claims in California. None of the other parties have any relevant connection to Indiana. They are all residents of, maintain a principal place of business in, or were formed in different states. Significantly, all six Defendants have a principal place of business in California, with most, including ByteDance, having a principal place of

---

[1] (1) Joann Bogard, (2) Annie McGrath, (3) Jane Doe, and (4) Becca Schmill Foundation (collectively, "Plaintiffs").

[2] (1) TikTok Inc. ("TikTok"), (2) ByteDance Inc. ("ByteDance"), (3) Alphabet Inc. ("Alphabet"), (4) XXVI Holdings Inc. ("XXVI Holdings"), (5) Google LLC ("Google"), and (6) YouTube LLC ("YouTube") (collectively, "Defendants").

business in the Northern District of California. An MDL (MDL No. 3047) involving related claims against Defendants is also pending in the Northern District of California.

These basic facts demonstrate that this Court does not have personal jurisdiction over TikTok and ByteDance for these claims—and that the Southern District of Indiana is a less convenient venue than the Northern District of California. This Court should therefore dismiss for lack of personal jurisdiction or, in the alternative, transfer the entire "civil action" to the Northern District of California, for all of the reasons raised below and in Google's Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Transfer to the Northern District of California. As established by both Motions, the entire civil action could have been brought in the Northern District of California, and all of the statutory factors favor transfer to that more convenient forum. *See* 28 U.S.C. § 1404(a).

## RELEVANT BACKGROUND

The gravamen of Plaintiffs' Complaint is that Defendants do not adequately remove content from their respective apps that allegedly violate the Defendants' content guidelines and/or policies, and that this failure to remove the content has harmed Plaintiffs. *See, e.g.*, Compl. ¶¶ 8-9, 17-21. Specifically, Plaintiffs allege that they relied on the Defendants reporting guidelines to "proactively" report content they found objectionable, Compl. ¶ 19, but that the Defendants' "failure to provide meaningful review" of the reported content, including failure to remove the content from their respective apps, "caused Plaintiffs to waste their time and resources" and made Plaintiffs feel "that their concerns were invalidated and disregarded." Compl. ¶¶ 20-21.

Only one party—Joann Bogard—claims to be a resident and citizen of Indiana. Compl. ¶ 43. None of the other parties have any relevant connection to Indiana. They are all residents of,

maintain a principal place of business in, or were formed in different states. *See* Compl. ¶¶ 44-52.[3] Significantly, each Defendant maintains a principal place of business in California, Compl. ¶¶ 47-52, and Defendants ByteDance, Alphabet, XXVI Holdings, Google, and YouTube each maintain a principal place of business in the Northern District of California, specifically. *See* Compl. ¶¶ 48-52 (maintaining a principal place of business in Mountain View or San Bruno, California).

Aside from conclusory allegations about the appropriateness of jurisdiction and venue in the Southern District of Indiana, *see* Compl. at ¶¶ 53-56, the Complaint is devoid of any allegations that Defendants directed any relevant conduct towards Indiana. *See* Compl. *passim*. With respect to Defendants TikTok and ByteDance, this is because neither directed any relevant conduct at Indiana. Indeed, TikTok and ByteDance do not have an office in Indiana, do not have any employees in Indiana, and do not make any guidelines or decisions about the appropriateness of content on TikTok, or whether any content should be removed from TikTok, in Indiana. *See* Declaration of Brian Michael O'Connor in Support of TikTok Inc.'s and ByteDance Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, Transfer, at ¶¶ 9-10, attached as Exhibit A (hereinafter, "Ex. A"). Rather, such decisions are made in California, where TikTok and ByteDance conduct the majority of their business. *See* Ex. A, at ¶¶ 7-8, 10.

---

[3] Specifically, the Complaint alleges that at all relevant times: (1) Plaintiff McGrath was a resident and citizen of Wisconsin, Compl. ¶ 44; (2) Plaintiff Doe was a resident and citizen of Oregon, *id.* ¶ 45; (3) Plaintiff Becca Schmill Foundation was a 501(c)(3) organization registered in Massachusetts, *id.* ¶ 46; (4) Defendant TikTok was incorporated in California and has its principal place of business in Culver City, California, *id.* ¶ 47; (5) Defendant ByteDance was incorporated in Delaware with a principal place of business in Mountain View, California, *id.* ¶ 48; (6) Defendant Alphabet was incorporated in Delaware and has its principal place of business in Mountain View, California, *id.* ¶ 49; (7) Defendant XXVI Holdings was incorporated in Delaware and has its principal place of business in Mountain View, California, *id.* ¶50; (8) Defendant Google was organized under the laws of Delaware and has its principal place of business in Mountain View, California, *id.* ¶51; and (9) Defendant YouTube was organized under the laws of Delaware and has its principal place of business in San Bruno, California, *id.* ¶ 52.

**ARGUMENT**

This case has no business being litigated in Indiana. This Court lacks personal jurisdiction over TikTok and ByteDance for these claims and Indiana is an inconvenient forum with—at best—only a tenuous connection to the underlying claims of one out of four Plaintiffs. This Court should therefore dismiss for lack of personal jurisdiction or, in the alternative, transfer the entire "civil action" to the Northern District of California. As established by the Defendants' respective Motions, the entire civil action could have been brought in the Northern District of California, and all of the statutory factors favor transfer to that more convenient forum.

**I.     The Court Lacks Personal Jurisdiction Over TikTok Inc. and ByteDance Inc.**

The Due Process Clause limits a court's power to impose a judgment on a nonresident defendant. It requires that the defendant have "certain minimum contacts" with the state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This requirement "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Indiana's long-arm statute is coextensive with the Due Process Clause. *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006); Ind. Trial R. 4.4(A). Consistent with this longstanding precedent, "'Indiana courts will employ caution and exert potentially coercive legal authority only over a defendant who has the requisite minimum contacts to Indiana.'" *Martin v. Eide Baily LLP*, 2016 WL 4496570, at *4 (S.D. Ind. Aug. 26, 2016) (quoting *Boyer v. Smith*, 42 N.E.3d 505, 509 (Ind. 2015).

Due Process recognizes two different types of personal jurisdiction: (1) general jurisdiction, which is found when a defendant's "affiliations with the State are so 'continuous and

systematic' as to render them essentially at home in the forum State," *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quotations omitted); and (2) specific jurisdiction, which is found when the suit-related conduct arises out of or relates to the defendant's conduct within or directed at the forum state. *See Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1025 (2021). Here, Plaintiffs have failed to allege that Defendants have sufficient contacts with Indiana to support either general or specific jurisdiction.

### A. TikTok and ByteDance Are Not Subject to General Jurisdiction in Indiana

For there to be general jurisdiction, a defendant's affiliations with a state must be "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For corporations like TikTok and ByteDance, this requirement is generally satisfied in only two places: the state in which the corporation has its principal place of business and the state of its incorporation. *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 698 (7th Cir. 2015). Here, Plaintiffs allege that TikTok and ByteDance maintain their principal place of business in California—not Indiana. Compl. ¶¶ 47-48. Plaintiffs also do not allege that TikTok or ByteDance are incorporated in Indiana. *Id.* And they are not, as discussed above. *See* Ex. A, at ¶¶ 5-6. Thus, there is no basis for general jurisdiction over TikTok or ByteDance.

### B. TikTok and ByteDance Are Not Subject to Specific Jurisdiction in Indiana in Relation to any of Plaintiffs' Claims

The Due Process Clause also forecloses this Court's exercise of specific jurisdiction over Plaintiffs' claims. Specific jurisdiction encompasses causes of actions which "arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. 255, 262 (2017) (cleaned up). To determine whether a defendant's contacts with a state are sufficient, courts "focus[] on the relationship among the

defendant, the forum and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal citation and quotations omitted). What matters is the "contacts that the 'defendant *himself*' creates with the forum State," not the "defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 284-85.

Here, Plaintiffs do not allege *any* action taken by Defendants *in Indiana*. Instead, the suit arises out of and relates to decisions about whether or not to remove third-party content that Defendants made elsewhere. *See, e.g.*, *see, e.g.*, Compl. ¶¶ 8-9, 12, 16-19, 110-121. For three of the four Plaintiffs—McGrath, Doe, and Becca Schmill Foundation—there can be no reasonable dispute that TikTok and ByteDance are not subject to personal jurisdiction in Indiana for their claims. None of these Plaintiffs are Indiana residents, nor claims to have suffered any harm in Indiana, nor identifies any suit-related conduct in Indiana. *See* Compl. *passim*; *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. 255, 265 (2017) (finding no specific jurisdiction under such circumstances). Indeed, Plaintiff McGrath doesn't even allege she ever used TikTok. The Supreme Court has rejected efforts by out-of-state plaintiffs to bootstrap themselves to personal jurisdiction by joining in-state plaintiffs, reasoning that *each* plaintiff must establish "a connection between the forum and the specific claims at issue." *Id.* at 265. In other words, these Plaintiffs fail to allege any affiliation whatsoever between Indiana and their respective claims. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at 264.

While the Complaint seems to suggest that Plaintiff Bogard accessed the TikTok app in Indiana, *see, e.g.*, Compl. ¶¶ 43, 47, 147, this does not establish sufficient contact with Indiana, particularly because the Complaint does not allege that TikTok or ByteDance targeted Indiana in any way. *See AirFx, LLC v. Braun*, 2011 WL 5523521, at *3 (S.D. Ind. Nov. 14, 2011); *Zaletel v.*

6

*Prisma Labs, Inc.* 226 F. Supp. 3d 599, 611 (E.D. Va. 2016) (no jurisdiction where defendant "used nationwide app stores to place [its] product in the stream of commerce, without targeting or directing its activity toward Virginia in particular").

Nor can Plaintiffs establish jurisdiction based on Plaintiff Bogard's use of the app in Indiana or reporting allegedly violative content from Indiana, as doing so would "impermissibly allow[] [the consumer's] contacts with the defendant and forum to drive the jurisdictional analysis." *Walden*, 571 U.S. at 289. It is well-established that the unilateral activity of a third person cannot establish specific jurisdiction, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); instead, "specific jurisdiction depends on *defendants'* contacts within the state"—not Plaintiffs' contacts to the state. *Walden*, 571 U.S. at 289. Were the rule otherwise, defendants in internet-related cases would be subject to personal jurisdiction in "every spot on the planet where that interactive website is accessible"—an unjust and absurd result, which courts have roundly rejected. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014), *as corrected* (May 12, 2014).

## II. The Court Should Transfer Venue to the Northern District of California Pursuant to § 1404(a)

In the alternative, this Court should transfer this action to the Northern District of California under 28 U.S.C. § 1404. District courts have the power to transfer a civil action to any district where it may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." *Id.* § 1404(a). The venue transfer statute gives courts "broad discretion" with regard to transfer motions, *Coté v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986), and courts should evaluate transfer motions with an "individualized, case-by-case consideration of convenience and fairness," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

Motions to transfer venue involve a two-step analysis. First, the Court must make a threshold determination of whether the action could have been brought in the proposed transferee court. *See Heckler & Koch, Inc. v. Tippman Sport*, LLC, No. 1:09-cv-0560-WTL-TAB, 2009 WL 4907016, at *2 (S.D. Ind. Dec. 11, 2009). Second, the Court must determine whether, based on all relevant factors, the balance of convenience and the interests of justice favor transfer. *See Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). "The statute permits a 'flexible and individualized analysis' and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations." *Id.* (quoting *Stewart*, 487 U.S. at 29). Each of these factors favors transfer.

  **A. This Entire Civil Action—Including the Claims Against TikTok Inc. and ByteDance Inc.—Could Have Been Brought in the Northern District of California**

This action easily satisfies the first transfer condition—whether the action could have initially been brought in the transferee district. Each Defendant maintains a principal place of business in California, Compl. ¶¶ 47-52, so all are subject to general personal jurisdiction in California. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (holding that the place of a principal place of business is a paradigm basis for general personal jurisdiction). They are all also residents of California for purposes of venue. *See* 28 § U.S.C. 1391(c)(2). Moreover, because Defendants ByteDance, Alphabet, XXVI Holdings, Google, and YouTube all have their principal place of business in the Northern District of California, Compl. ¶¶ 48-52, these Defendants are also residents of the Northern District of California. *See* 28 U.S.C. § 1391(d). Accordingly, the Northern District of California is a proper venue for this action, *see* 28 U.S.C. § 1391(b)(1), and the entire civil action—including the claims against TikTok and ByteDance—could initially have been brought in the Northern District of California. In fact, this action could *only* have been

brought in the Northern District of California. *See* Google Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative, to Transfer to the Northern District of California, ECF Nos. 38-39 (filed Apr. 14, 2023).

### B. The Northern District of California is a More Convenient Venue than the Southern District of Indiana for Adjudicating Plaintiffs' Claims Against TikTok and ByteDance

The convenience factors also favor transfer to the Northern District of California. When evaluating whether transfer to a different district would be more convenient, courts generally consider a variety of factors, including the availability of and access to witnesses, each party's access to and distance from resources in each forum, the location of material events, and the relative ease of access to sources of proof. *Research Automation, Inc.*, 626 F.3d at 978; *see also Estate of Davis v. Erickson Beamon, Ltd.*, 2013 WL 6328726, *5 (S.D. Ind. Dec. 4, 2013) ("Factors relevant to this 'convenience' inquiry include: '(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums.'").

#### 1. The Overall Availability and Access to Witnesses and the Relative Ease of Access to Sources of Proof Favors Transfer

The Northern District of California is a more convenient forum for adjudicating claims against TikTok and ByteDance because a significant number of witnesses and other sources of proof will be located in California, where both TikTok and ByteDance maintain their principal places of business and employ a majority of their employees. *See* Ex. A, at ¶¶ 5-8, 11. Indiana, on the other hand, would not be a convenient forum. No Defendant in this action has a principal place of business, and only one named-Plaintiff—Plaintiff Bogard—alleges any connection to Indiana. *See* Compl. ¶¶ 43-52. Significantly, neither TikTok nor ByteDance have any relevant connection to the Southern District of Indiana, and most of the relevant witnesses and sources of proof related

9

to the claims against TikTok and ByteDance are located in, or are closer to, the Northern District of California. *See* Ex. A, at ¶¶ 7-8, 11-12.

### 2.      The Location of Material Events Favors Transfer

The location-of-material-events factor also favors transfer to the Northern District of California. TikTok and ByteDance have their principal places of business located in California, and the material events relevant to Plaintiffs' Complaint—*i.e.*, the alleged failures to adequately remove violative content, including content reported by Plaintiffs pursuant to TikTok's reporting guidelines, from the TikTok app, *see, e.g.*, Compl. ¶¶ 8-9, 12, 16-19, 74, 110-121—primarily occurred in, or were directed towards, California, with none of TikTok's or ByteDance's relevant conduct occurring in Indiana. *See* Ex. A, at ¶¶ 5-6, 8-10; *Advanced Turf Sols., Inc. v. Johns*, 223 F. Supp. 3d 786, 792 (S.D. Ind. 2016) (noting that the location of material events weighs heavily in favor of transfer when the dispute arises out of conduct that occurred in the transferee forum). As such, this factor also favors transfer to the Northern District of California.

### 3.      The Overall Convenience of Litigating in the Northern District of California Outweighs any Consideration that Should be Given to Plaintiffs' Choice of Forum

Although Plaintiffs' choice of forum is often given some weight in any transfer analysis, here, any such consideration is outweighed by the overall convenience of litigating in the Northern District of California. Indeed, cases in this district have acknowledged that a plaintiff's choice of forum "is entitled to less deference" where "the chosen forum has little connection to the relevant events," *Commissioning Agents, Inc. v. Long*, 187 F. Supp. 3d 980, 986 (S.D. Ind. 2016), or "the plaintiff chooses a forum outside his 'home turf,'" *State Farm Mut. Auto. Ins. v. Estate of Bussell*, 939 F. Supp. 646, 651 (S.D. Ind. 1996) (collecting cases). Here, three of the four Plaintiffs chose a forum outside their "home turf." And the only Plaintiff with an incidental connection to Indiana

(Bogard) alleges her reports were made "to TikTok" (in California) and "deemed" by TikTok (in California) not to violate its community guidelines" (Compl. ¶ 74). Moreover, because all Defendants have a principal place of business in California, most of the relevant witnesses and other sources of proof are likely to be located in or near the Northern District of California. Litigating in the Northern District of California will thus be more convenient and less costly for all of the Defendants. Litigating in Indiana, on the other hand, would not significantly reduce the burdens of litigation on Plaintiffs. Indeed, because three of four Plaintiffs all reside in states other than Indiana, these Plaintiffs will need to travel outside their home state whether this action remains in Indiana or is transferred to California. Consequently, the overall convenience of litigating in the Northern District of California outweighs any weight that should be given to Plaintiffs' choice of forum.

### C. The Interests of Justice Weigh in Favor of Transferring this Case to the Northern District of California

Transferring this case to the Northern District of California would also be in the interests of justice. When evaluating whether transfer to a different district would be in the interests of justice, courts generally consider a variety of factors, including the efficient administration of the court system, docket congestion and likely speed to disposition in each forum, each court's familiarity with the relevant law, the desirability of resolving controversies in each location, and the relationship of each community to the controversy. The interest of justice, moreover, "may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses point towards the opposite result." *Research Automation, Inc.*, 626 F.3d at 978.

#### 1. Court Congestion and Speed-to-Disposition Statistics Favor Transfer

The Southern District of Indiana is an extraordinarily busy court. *See Wilkins v. Genzyme Corp.*, 2020 WL 7864112, at *6 (S.D. Ind. Dec. 30, 2020) ("The Southern District of Indiana is

the second busiest federal district court in the country based on weighted case load per judge."). Indeed, as of December 31, 2022, the Southern District of Indiana had 10,831 pending civil cases divided amongst six Article III judges,[4] resulting in an average caseload of more than 1,800 cases per judge. *See* United States Courts, Table C-1, U.S. District Courts—Civil Cases Commenced, Terminated, and Pending During the 12-Month Period Ending December 31, 2022, *available at* https://www.uscourts.gov/statistics/table/c-1/statistical-tables-federal-judiciary/2022/12/31. The Northern District of California, on the other hand, had 13,114 pending cases divided amongst 21 Article III judges,[5] resulting in an average caseload just shy of 625 cases per judge. *Id.* In other words, the average civil caseload for a judge in the Southern District of Indiana in 2022 was nearly three times the size of a judge's caseload in the Northern District of California.

Moreover, whereas in 2022 the median time from filing to disposition of a civil case in the Southern District of Indiana was 12.6 months, it was 8.4 months in the Northern District of California. *See* United States Courts, Table C-5, U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, *available at* https://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2022/12/31. This suggests that the speed-to-trial—or speed-to-disposition—of this case would likely be enhanced by transfer to the Northern District of California.

These court-congestion and speed-to-disposition factors therefore favor transfer of this case to the Northern District of California. *Estate of Davis v. Erickson Beamon, Ltd.*, 2013 WL 6328726, *4 (S.D. Ind. Dec. 4, 2013) (finding a faster speed-to-trial rate in a transferee district

---

[4] Judges Pratt, Barker, Young, Magnus-Stinson, Sweeney, and Hanlon. On April 3, 2023, Judge Brookman was sworn in as an Article III Judge, and so now the Southern District of Indiana has seven Article III judges.
[5] Judges Alsup, Armstrong, Breyer, Chen, Chesney, Chhabria, Corley, Davila, Donato, Freeman, Gilliam, Hamilton, Illston, Martinez-Oluin, Orrick, Rogers, Seeborg, Thompson, Tigar, White, and Wilken.

would favor transfer); *Leapers Inc., v. Banerjee*, 2017 WL 1197291, at *4 (S.D. Ind. Mar. 31, 2017) (same).

### 2. The Local and Community Interest Factors Favor Transfer

Because only one party (out of ten) in the Complaint has alleged any connection at all to Indiana, Indiana's interest in the outcome of this action is tenuous at best. California's interest in the potential impact of this suit on *six* California businesses, on the other hand, is significant, and it far outweighs Indiana's interest. Moreover, because TikTok and ByteDance's "presence in Indiana is primarily through internet connections," and none of TikTok or ByteDance's relevant conduct actually occurred in Indiana, the local and community interest factors also favor transfer. *Leapers Inc.*, 2017 WL 1197291, at *4; *see also Advanced Turf Sols., Inc. v. Johns*, 223 F. Supp. 3d 786, 792 (S.D. Ind. 2016) (reasoning that the venue with the greatest interest in deciding the controversy is the venue where the material events primarily occurred).

### 3. Familiarity with Applicable Law and the Efficient Administration of the Court System Favors Transfer

Finally, the familiarity with applicable law and the efficient of administration of the court system factors also favor transfer. "[O]ne of the most important factors considered by courts in evaluating a motion to transfer is the existence of similar litigation in the transferee district." *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 660 (S.D.N.Y. 1998). "The Supreme Court has stated that the 'interest of justice' is best served when court efficiency is served, specifically when a court most familiar with the law to be applied is able to oversee the case." *Am. Commercial Lines, LLC v. Ne. Mar. Inst., Inc.*, 588 F. Supp. 2d 935, 947 (S.D. Ind. 2008) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 645 (1964)); *see also Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986) (explaining that "related litigation should be transferred to a forum where consolidation is feasible"). Accordingly, federal courts have held that transfer is warranted where,

13

as here, the transferee court is presiding over related litigation. *See Wilkins*, 2020 WL 7864112, at *6 (finding the fact that the transferee district handled similar litigation favored transfer).

Because an MDL against Defendants involving related allegations and defenses is currently pending in the Northern District of California, *see In re: Social Media Adolescent Addiction/Personal Injury Products Liability Litigation* (22-MD-3047-YGR), the Northern District of California is better positioned to efficiently handle this litigation than the Southern District of Indiana. *See Estate of Davis v. Erickson Beamon, Ltd.*, 2013 WL 6328726, *4 (S.D. Ind. Dec. 4, 2013) (finding that transfer is favored where the transferee court is handling related matters). Theories of liability asserted in the MDL, defenses raised in the MDL, and discovery sought from the Defendants in the MDL are all likely to overlap with the issues raised in this lawsuit. Consequently, the Northern District of California is better positioned to handle this case given its contemporaneous handling of an MDL involving similar issues. *Estate of Davis*, 2013 WL 6328726, *4 (noting that transfer to a district with related litigation can help create efficiencies in discovery and can help avoid inconsistent rulings on related issues).

## CONCLUSION

The Court should therefore dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) or, in the alternative, transfer the entire "civil action" to the Northern District of California pursuant to § 1404(a).

Dated: April 14, 2023						Respectfully submitted,

							By:	*/s/ Andrew Campbell*
								Andrea R. Pierson (#18435-49)
								Andrew L. Campbell (#25516-49)
								**FAEGRE DRINKER BIDDLE & REATH LLP**
								300 N. Meridian Street, Suite 2500
								Indianapolis, IN 46204
								Telephone: (317) 237-0300
								Fax: (317) 237-1000
								andrea.pierson@faegredrinker.com
								andrew.campbell@faegredrinker.com


								Geoffrey M. Drake (admitted pro hac vice)
								Albert Giang (admitted pro hac vice)
								David Mattern (admitted pro hac vice)
								**KING & SPALDING LLP**
								1180 Peachtree Street NE,
								Suite 1600
								Atlanta, GA 30309
								Telephone: (404) 572-4726
								gdrake@kslaw.com
								agiang@kslaw.com
								dmattern@kslaw.com

								*Counsel for Defendants TikTok Inc. and ByteDance Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon all counsel and parties of record via ECF.

*/s/ Andrew L. Campbell*
Andrew L. Campbell

*Counsel for Defendants TikTok Inc. and ByteDance Inc.*
