**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**EVANSVILLE DIVISION**

| | | |
|---|---|---|
| BOGARD, MCGRATH, JANE DOE, | ) | |
| BECCA SCHMILL FOUNDATION, | ) | |
| *individually and on behalf of all* | ) | |
| *others similarly situated*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:23-cv-0012-RLY-MPB |
| | ) | |
| TIKTOK INC., BYTEDANCE INC, | ) | |
| ALPHABET INC., | ) | |
| XXVI HOLDINGS INC., GOOGLE LLC, | ) | |
| YOUTUBE, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR**
**MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

    A.    Defendants' video reporting and review processes. ................................. 2

    B.    Plaintiffs' lawsuit. ................................................................................... 4

ARGUMENT ...................................................................................................................... 6

I.    Plaintiffs' Claims Are Barred By Section 230 and the First Amendment. ...................... 6

    A.    Section 230 bars Plaintiffs' claims. ........................................................ 6

        1.    Defendants are providers of an interactive computer service. .................. 8

        2.    Plaintiffs' claims arise from third-party content. ..................................... 8

        3.    Plaintiffs' claims treat Defendants as publishers. .................................... 9

    B.    Plaintiffs' Claims Are Also Barred by the First Amendment. ............................. 13

II.    Plaintiffs Fail to Adequately Plead Any Claim Against Defendants. .............................. 14

    A.    Plaintiffs cannot plead a product liability claim against Defendants (Count I). ........................................................................................................... 14

        1.    Defendants' video-reporting processes are not "products." ................... 15

        2.    Plaintiffs do not allege physical injury. .................................................. 17

    B.    Plaintiffs' negligence claim (Count II) fails because they do not adequately plead that Defendants owed them a duty........................................... 18

    C.    Plaintiffs' misrepresentation and statutory claims must be dismissed because they are not pled with particularity under Rule 9(b) (Counts III–VIII). ........................................................................................................... 21

    D.    Plaintiff's Statutory Claims Are Not Cognizable (Counts V–VIII)..................... 24

        1.    Plaintiff Bogard's IDCSA claim is inadequately pled (Count V)............ 24

        2.    Plaintiff McGrath's WDTPA claim is deficient (Count VI)..................... 25

        3.    Plaintiff Doe fails to state a claim under OUTPA (Count VII). .............. 27

        4.    Plaintiffs lack statutory standing to bring their California state-law claim (Count VIII). .................................................................................. 28

    E.    All claims fail because there is no proximate causation, and Plaintiffs' alleged injuries were not reasonably foreseeable (All Counts). ......................... 30

    F.    The Becca Schmill Foundation Lacks Article III Standing. ............................... 34

CONCLUSION.................................................................................................................. 35

i

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Beech Aircraft Corp.*,
    952 F.2d 1215 (10th Cir. 1991) ............................................................................15

*Anderson v. TikTok, Inc.*,
    No. 22-cv-1849, 2022 WL 14742788 (E.D. Pa. Oct. 25, 2022), *appeal
    docketed*, No. 22-3061 (3d Cir. Nov. 10, 2022) ....................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................6

*Ass'n of Unit of Owners Bridgeview Condominium Ass'n v. Dunning*,
    69 P.3d 788 (Or. App. 2003)...................................................................................15

*Bank v. Huizar*,
    178 N.E.3d 326 (Ind. Ct. App. 2021)......................................................................25

*Banks v. R.C. Bigelow, Inc.*,
    536 F.Supp.4d 640 (C.D. Cal. 2021) .......................................................................29

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009) ......................................................................9, 10, 11

*Batzel v. Smith*,
    333 F.3d 101 (9th Cir. 2003) ....................................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................19

*Bennett v. Google, LLC*,
    882 F.3d 1163 (D.C. Cir. 2018) ................................................................................8

*Binns v. Ocwen Loan Servicing, LLC*,
    2015 WL 5775827 (S.D. Ind. Apr. 1, 2015) ...........................................................21

*Bogie v. Rosenberg*,
    705 F.3d 603 (7th Cir. 2013) ...............................................................................6, 23

*Boring v. Google, Inc.*,
    598 F. Supp. 2d 695 (W.D. Pa. 2009), *rev'd in part on other grounds*, 362
    Fed. App'x 273 (3d Cir. 2010)................................................................................19

*Brooks v. Ross*,
    578 F.3d 574 (7th Cir. 2009) .....................................................................................6

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
  761 F.3d 732 (7th Cir. 2014) ...............................................................................21

*Chicago Lawyers' Comm. for C.R. Under L., Inc. v. Craigslist, Inc.*,
  519 F.3d 666 (7th Cir. 2008) ..............................................................................7, 8

*In re Cook Med., Inc., IVC Filters Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  No. 1:14-ML-2570-RLY-TAB, 2021 WL 9099720 (S.D. Ind. Sept. 28, 2021)...............17, 18

*Creditors Protective Ass'n, Inc. v. Britt*,
  58 Or. App. 230 (1982)..........................................................................................27

*Dart v. Craigslist, Inc.*,
  665 F. Supp. 2d 967 (N.D. Ill. 2009) ...................................................................10

*Day v. TikTok, Inc.*,
  No. 21 C 50129, 2022 WL 595745 (N.D. Ill. Feb. 28, 2022).........................8, 9, 10

*DeLoe v. Dep't Stores Nat'l Bank*,
  No. 3:17-CV-00022-SB, 2017 WL 4052185 (D. Or. Aug. 18, 2017) ....................................28

*Diep v. Apple, Inc.*,
  No. 21-cv-10063, 2022 WL 4021776 (N.D. Cal. Sept. 2, 2022)............................12

*Dillon v. Legg*,
  68 Cal. 2d 728 (1968) ...........................................................................................31

*Doe v. GTE Corp.*,
  347 F.3d 655 (7th Cir. 2003) ..................................................................................6

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) ..........................................................................10, 11

*Doe v. Twitter, Inc.*,
  555 F. Supp. 3d 889 (N.D. Cal. 2021), *aff'd in part, rev'd in part on other
  grounds by Doe # 1 v. Twitter*, No. 22-15104, 2023 WL 3220912 (9th Cir.
  May 3, 2023)..........................................................................................................12

*Dyroff v. Ultimate Software Group*,
  No. 17-CV-05359-LB, 2017 WL 5665670 (N.D. Cal. Nov. 26, 2017)............................19, 20

*Dyroff v. Ultimate Software Grp., Inc.*,
  934 F.3d 1093 (9th Cir. 2019) ..............................................................................19

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Egbukichi v. Wells Fargo Bank, NA*,
    184 F. Supp. 3d 971 (D. Or. 2016) ...................................................................27

*Elizaga v. Kaiser Found. Hospitals, Inc.*,
    259 Ore. 542, 487 P.2d 870, 874 (1971)..........................................................24

*Est. of B.H. v. Netflix, Inc.*,
    No. 4:21-CV-06561-YGR, 2022 WL 551701 (N.D. Cal. Jan. 12, 2022) ..........17, 20

*Eurosesmillas, S.A. v. PLC Diagnostics, Inc.*,
    No. 17-CV-03159-TSH, 2019 WL 1960342 (N.D. Cal. May 2, 2019) ..................29

*In re Facebook Privacy Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011) ..............................................................28

*Fair Housing Council of San Fernando Valley v. Roommates.com. LLC*,
    521 F.3d 1157 (9th Cir. 2008) .......................................................................9, 10

*Fields v. Twitter, Inc.*,
    881 F.3d 739 (9th Cir. 2018) ...........................................................................32

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019)...........................................................................10, 11

*Forth v. Gen. Motors Corp.*,
    No. CIV. A 89-3842, 1989 WL 83600 (E.D. Pa. July 24, 1989)...........................18

*G.G. v. Salesforce.com, Inc.*,
    603 F. Supp. 3d 626 (N.D. Ill. 2022) ...............................................................7, 10

*Gamache v. Airbnb, Inc.*,
    No. A146179, 2017 WL 3431651 (Cal. Ct. App. Aug. 10, 2017)..........................32

*Gavra v. Google*,
    No. 5:12-cv-06547, 2013 WL 3788241, at *1–*2 (N.D. Cal. July 17, 2013) .........11

*Graham v. Bank of Am., N.A.*,
    226 Cal. App. 4th 594 (2014) .........................................................................33

*Great Pac. Sec. v. Barclays Cap., Inc.*,
    743 F. App'x 780 (9th Cir. 2018) ....................................................................21

*U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*,
    772 F.3d (7th Cir. 2014) ..................................................................................22

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Haley v. Kolbe & Kolbe Millwork Co.*,
  863 F.3d 600 (7th Cir. 2017) ...................................................34

*Hamm v. Mercedes-Benz USA, LLC*,
  No. 5:16-CV-03370-EJD, 2022 WL 913192 (N.D. Cal. Mar. 29, 2022) ...............................30

*Hartwig v. Bitter*,
  29 Wis. 2d 653, 139 N.W.2d 644 (1966)...................................................24

*Henkin v. Skane-Gripen A.B.*,
  986 F.2d 1424 (7th Cir. 1993) ...................................................24

*Herceg v. Hustler Mag.*,
  565 F. Supp. 802 (S.D. Tex. 1983) ...................................................20

*Holland v. TD Ameritrade, Inc.*,
  No. CIV S-10-2110-GEB, 2012 WL 592042 (E.D. Cal. Feb. 22, 2012), ,
  *report and recommendation adopted,* 2012 WL 13046349 (E.D. Cal. Mar. 21,
  2012) ...................................................17, 18

*Hughes v. Chattem, Inc,* 818 F. Supp. 2d 1112 (S.D. Ind. 2011) ...................................................6

*Hydraulics Int'l, Inc. v. Amalga Composites, Inc.*,
  No. 20-CV-371, 2022 WL 4273475 (E.D. Wis. Sept. 15, 2022)...................................................26

*Igbonwa v. Facebook, Inc.*,
  No. 18-cv-02027, 2018 WL 4907632 (N.D. Cal. Oct. 9, 2018), *aff'd,* 786 F.
  App'x 104 (9th Cir. 2019) ...................................................9

*Indiana Pain & Spine Clinic, LLC v. Carolina Liquid Chemistries Corp.*,
  No. 1:21CV543, 2022 WL 891051 (M.D.N.C. Mar. 25, 2022) ...................................................25

*Jackson v. Airbnb, Inc.*,
  No. CV 22-3084 DSF (JCX), 2022 WL 16753197 (C.D. Cal. Nov. 4, 2022)...................................................13

*Jacobs v. Meta Platforms, Inc.*,
  No. 22CV005233, 2023 WL 2655586 (Cal. Super. Ct. Mar. 10, 2023) ...................................................17

*James v. Meow Media, Inc.*,
  300 F.3d 683 (6th Cir. 2002) ...................................................16

*Jane Doe No. 1 v. Uber Techs., Inc.*,
  79 Cal. App. 5th 410 (2022) ...................................................20

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Jimenez v. Superior Ct.*,
    29 Cal. 4th 473 (2002) ................................................................16, 18

*Jones v. Dirty World Ent. Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014) .............................................................8

*K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*,
    720 N.W.2d 507 (2006) ...................................................................26

*Karimi v. Wells Fargo*,
    No. CV 11-00461-RGK, 2011 WL 10653746 (C.D. Cal. May 4, 2011)..........................31, 33

*Kawczynski v. Am. Coll. of Cardiology*,
    No. 15-CV-757-BBC, 2016 WL 2770552 (W.D. Wis. May 13, 2016)...................................15

*King v. Facebook, Inc.*,
    No. 19-CV-01987-WHO, 2019 WL 4221768 (N.D. Cal. Sept. 5, 2019), *aff'd*,
    845 F. App'x 691 (9th Cir. 2021) .......................................................7

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) ................................................7, 12, 13

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ..................................................................29

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ....................................................................28

*Larkin v. Fin. Sys. of Green Bay, Inc.*,
    982 F.3d 1060 (7th Cir. 2020) ...........................................................35

*Lawson v. Hale*,
    902 N.E.2d 267 (Ind. Ct. App. 2009).....................................................25

*Lorenzo v. Qualcomm Inc.*,
    No. 08CV2124 WQH LSP, 2009 WL 2448375 (S.D. Cal. Aug. 10, 2009) ...........................34

*Lynch v. DeMotte State Bank*,
    No. 2:19-CV-162-TLS-JEM, 2022 WL 4300455 (N.D. Ind. Sept. 19, 2022)........................21

*MainStreet Org. of Realtors v. Calumet City, Ill.*,
    505 F.3d 742 (7th Cir. 2007) .............................................................5

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Manigault-Johnson v. Google LLC*,
No. 2:18-cv-1032-BHH, 2019 WL 3006646 (D.S.C. March 31, 2019) ...................................5

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
925 F.3d 1263 (D.C. Cir. 2019) ........................................................................................8

*Martell v. Gen. Motors LLC*,
492 F. Supp. 3d 1131 (D. Or. 2020) ...............................................................................21

*McReynolds v. Merrill Lynch & Co.*,
694 F.3d 873 (7th Cir. 2012) .............................................................................................6

*Meador v. Apple, Inc.*,
No. 6:15-CV-715, 2016 WL 7665863 (E.D. Tex., Aug. 16, 2016) .....................................32

*Merrill v. Navegar, Inc.*,
26 Cal. 4th 465 (2001) .....................................................................................................18

*Miami Herald Publ'g Co. v. Tornillo*,
418 U.S. 241 (1974) ..................................................................................................13, 14

*Modisette v. Apple Inc.*,
30 Cal. App. 5th 136 (2018) ............................................................................................33

*Murphy v. Mellon Accts. Pro. Corp.*,
538 N.E.2d 968 (Ind. Ct. App. 1989) ..............................................................................24

*Nunally v. Morris*,
No. 119CV02568JRSTAB, 2020 WL 4583019 (S.D. Ind. Aug. 7, 2020) ............................21

*O'Handley v. Padilla*,
579 F. Supp. 3d 1163 (N.D. Cal. 2022), *aff'd sub nom. O'Handley v. Weber*,
62 F.4th 1145 (9th Cir. 2023) ....................................................................................13, 14

*In re Outlaw Lab'y, LLP*,
463 F. Supp. 3d 1068 (S.D. Cal. 2020) ............................................................................29

*Pearson v. Philip Morris, Inc.*,
358 Or. 88 (2015) ............................................................................................................27

*Pierson v. Sharp Mem'l Hosp., Inc.*,
216 Cal.App.3d 340 (1989) ........................................................................................15, 16

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*,
   2 F.4th 1002 (7th Cir. 2021) ................................................... 35

*Pullins v. Reuters News & Media Inc.*,
   No. 22-1711, 2023 WL 1514414 (7th Cir. Feb. 3, 2023) ....................................... 21

*Quinteros v. InnoGames*,
   No. C19-1402RSM, 2022 WL 898560 (W.D. Wash. Mar. 28, 2022) ..................................... 17

*Ricci v. Teamsters Union Local 456*,
   781 F. 3d 25 (2d Cir. 2015) ................................................... 10

*Riggs v. Apple, Inc.*,
   No. 17CV308219, 2017 WL 4018064 (Cal. Super. Ct. Aug. 24, 2017) ........................... 31, 32

*Ripple Labs Inc. v. YouTube LLC*,
   No. 20-cv-02747, 2020 WL 6822891 (N.D. Cal. Nov. 20, 2020) ............................................ 8

*Sakai v. Massco Invs.*,
   LLC, 20 Cal. App. 5th 1178 (2018) ................................................... 32

*Schott v. Huntington Nat. Bank*,
   914 F. Supp. 2d 933 (S.D. Ind. 2012) ................................................... 6

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*,
   No. 05 C 2623, 2009 WL 3460218 (N.D. Ill. Oct. 20, 2009) ................................................... 33

*Shannon v. First Franklin Fin. Corp.*,
   No. 09-cv-482, 2009 WL 2867742 (N.D. Ill. Sept. 2, 2009) .......................................... *passim*

*Sharpe v. Puritan's Pride, Inc.*,
   466 F. Supp. 3d 1066 (N.D. Cal. 2020) ................................................... 29

*Sherwood v. Finch*,
   No. CV-00-349-HU, 2000 WL 1862562 (D. Or. Dec. 20, 2000) ........................................... 34

*Shih v. Starbucks Corp.*,
   53 Cal. App. 5th 1063 (2020) ................................................... 31, 33

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ................................................... 30

*Slane v. Emoto*,
   582 F. Supp. 2d 1067 (W.D. Wis. 2008) ................................................... 26

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ................................................29

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)................................................34

*State of Indiana v. TikTok, Inc.*,
Cause No. 02D02-2212-PL-400, Order Denying Motion for Preliminary
Injunction, at 31–32 (May 4, 2023) ................................14, 25

*Stearns v. Select Comfort Retail Corp.*,
No. 08-2746 JF (PVT), 2009 WL 4723366 (N.D. Cal. Dec. 4, 2009)....................30

*Stewart v. Kodiak Cakes, LLC*,
537 F. Supp. 3d 1103 (S.D. Cal. 2021)................................34

*T&M Farms v. CNH Indus. Am.*, *LLC*,
488 F. Supp. 3d 756 (E.D. Wis. 2020)................................26

*Teater v. Pfizer, Inc.*,
No. 3:05-CV-00604-HU, 2012 WL 3776366 (D. Or. June 27, 2012), , *report
and recommendation adopted*, 2012 WL 3776364 (D. Or. Aug. 29, 2012)..........28

*TrafficSchool.com, Inc. v. Edriver Inc.*,
653 F.3d 820 (9th Cir. 2011) ................................28

*Twitter, Inc., v. Taamneh*,
No. 21-1496, 2023 WL 3511531 (U.S. May 18, 2023)................20, 33

*United States v. Bestfoods*,
524 U.S. 51 (1998)................................5

*Van Patten v. Vertical Fitness Grp., LLC*,
847 F.3d 1037 (9th Cir. 2017) ................................28

*Visteon Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
No. 1:11-CV-00200-RLY, 2013 WL 3814668 (S.D. Ind. July 22, 2013), *aff'd
sub nom. Visteon Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 777
F.3d 415 (7th Cir. 2015) ................................15

*Vitort v. Kroger Co.*,
No. 3:20-CV-01317-AC, 2021 WL 6061864 (D. Or. Sept. 13, 2021), *report
and recommendation adopted*, 2022 WL 294904 (D. Or. Feb. 1, 2022), *aff'd*
2023 WL 3143690 (9th Cir. Apr. 28, 2023) ................................27

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Wawanesa Mut. Ins. Co. v. Matlock*,
    60 Cal. App. 4th 583 (1997) ...................................................................................32

*Williamson v. Curran*,
    714 F.3d 432 (7th Cir. 2013) ...................................................................................6

*Wilson v. Frito-Lay N. Am., Inc.*,
    961 F. Supp. 2d 1134 (N.D. Cal. 2013) .................................................................30

*Winter v. Facebook, Inc.*,
    No. 4:21-cv-01046, 2021 WL 5446733 (E.D. Mo. Nov. 22, 2021) .......................8, 11, 16, 20

*Winter v. G.P. Putnam's Sons*,
    938 F.2d 1033 (9th Cir. 1991) ...........................................................................15, 19

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ..............................................................................8, 10, 11

*Ziencik v. Snap, Inc.*,
    CV 21-7292-DMG, 2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) .........................17

**Statutes**

47 U.S.C.
    § 230.....................................................................................................................1, 7, 10
    § 230(c)(1) ............................................................................................................7, 9, 10

Cal. Bus. & Prof. Code
    § 17200 ("UCL") .................................................................................................*passim*
    § 17203...................................................................................................................29
    § 17204...................................................................................................................28
    § 17500 ("FAL") ..................................................................................................21, 28, 29, 30

Communications Decency Act Section 230 ....................................................................1, 7, 10

Ind. Code Ann.
    § 24-0.5-3...............................................................................................................21, 24, 25, 34
    § 34-6-2-114..........................................................................................................15

O.R.S.
    § 31.710(2)(b) .......................................................................................................27
    § 646.605...............................................................................................................21, 27, 28

Wis. Stat. § 100.18 .........................................................................................................21, 25, 26, 34

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

**Other Authorities**

Fed. R. Civ. P.
    8.................................................................................................................4
    9(b) ..................................................................................... *passim*
    12(b)(2) ...............................................................................................5
    12(b)(6) .............................................................................................28

Restatement (Second) of Torts § 402(a) (1965) ........................................15

Restatement (Third) of Torts § 19 cmt. ...................................................16

First Amendment to the United States Constitution ........................................ *passim*

## INTRODUCTION

Plaintiffs' putative class action complaint raises product liability, negligence, and consumer protection claims against Defendants[1] related to their alleged failure to remove certain third-party videos found on YouTube and TikTok after receiving Plaintiffs' complaints about the videos' content.

Defendants deeply sympathize with Plaintiffs and their families for their individual losses. But this case is not about those experiences. It instead concerns "safety reports" Plaintiffs sent to YouTube and TikTok to flag "dangerous content." Compl. ¶¶ 9, 144. Specifically, Plaintiffs "have been going online, searching for and reporting" content to Defendants, and Plaintiffs seek to represent "[a]ll people who used TikTok and YouTube and who made safety reports through the process set forth by Defendants from January 2020 through the date of dispositive judgment made in this action." *Id.* ¶¶ 8, 144. In other words, Plaintiffs' claims are premised on their disagreement with Defendants' content moderation policies and decisions. Those claims must be dismissed for multiple independent reasons.

*First*, Plaintiffs' claims are barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("Section 230"), which prevents interactive communications services, including YouTube and TikTok, from being held liable for claims related to the publication of allegedly harmful third-party content, including (as relevant) hosting or failing to remove such content.

*Second*, Plaintiffs' claims are barred by the First Amendment of the United States Constitution, which protects Defendants' choices about what content to publish or not to publish.

---

[1] Defendants are Alphabet Inc., Google LLC, YouTube LLC, and XXVI Holdings Inc. (together, "Google Defendants"), and TikTok Inc. and ByteDance Inc. (together, "TikTok Defendants") (collectively, "Defendants").

1

*Third*, Plaintiffs' strict liability claim (Count I) fails because Defendants' content moderation processes are not a "product," and Plaintiffs do not allege physical injury resulting from Defendants' alleged failure to remove content in response to Plaintiffs' reports.

*Fourth,* Plaintiffs' negligence claim (Count II) fails because Plaintiffs do not, and cannot, allege a cognizable legal duty of care to remove content or protect against "harmful" videos uploaded by third parties.

*Fifth*, Plaintiffs' misrepresentation and fraud-based state-law claims (Counts III–VIII) fail because Plaintiffs fail to plead fraud with particularity, and their general allegations of fraud are contradicted by other allegations in the Complaint.

*Sixth*, Plaintiffs' negligent misrepresentation claim (Count IV) fails because it is also contradicted by other allegations the Complaint.

*Seventh*, the Indiana, Wisconsin, Oregon, and California state-law claims (Counts V–VIII) fail for myriad reasons, including because Plaintiffs do not plead an ascertainable loss or that YouTube or TikTok engaged in any "unfair or deceptive" conduct as part of a commercial transaction.

*Finally*, Plaintiffs' claims fail because even assuming they suffered emotional harm, that harm was not proximately caused by the Defendants, nor was it reasonably foreseeable.

The Court should dismiss Plaintiffs' Complaint with prejudice because the legal defenses and defects apparent from the face of the pleading cannot be cured through amendment.

## BACKGROUND

### A.     Defendants' video reporting and review processes.

YouTube and TikTok are "popular video streaming applications" on which third-party users can post and watch videos. Compl. ¶ 12. YouTube and TikTok publish Community Guidelines that explain the types of content that are not allowed on these applications. *Id.* ¶ 17.

YouTube enforces its Community Guidelines "using a combination of human reviewers and machine learning." *Id.* ¶ 17, n.9. YouTube invites users to anonymously report videos that may violate the Community Guidelines. *Id.* ¶ 17, n.8. Reported content is "not automatically taken down." *Id.* Following the review process, a reported video may remain on YouTube, be age-restricted, or be removed entirely. *Id.* ¶¶ 17, n.8, 134. When users submit a report, they receive an automated message stating "*[i]f we find this content to be in violation* of our Community Guidelines, we will remove it." *Id.* ¶¶ 69–70 (emphasis added). Users can view their report history to check if a reported video has been removed. *Id.* ¶ 17, n.8. [2]

TikTok also "set[s] forth a process for a user to report videos that they believe to be harmful." *Id.* ¶¶ 111–15. "Once [a] user reports a video, they receive a confirmation message for their report stating: 'Thanks for reporting. We'll review your report and take action *if there is a violation* of our Community Guidelines.'" *Id.* ¶ 115 (emphasis added). Users can check on the status of their "Reports," which may ultimately be "removed . . . for violating [TikTok's] Community Guidelines" or deemed to not violate TikTok's Community Guidelines. *Id.* ¶¶ 115–16. If TikTok determines that a video does not violate the Community Guidelines, it advises users that TikTok "understand[s] that you may not want to see this type of content, and you have the option to block the account that posted it." *Id.* ¶ 117.

As the Complaint makes clear, Plaintiffs' claims are inextricably intertwined with allegedly harmful third-party content and videos on Defendants' online services:

- The Complaint references "content[s]" over 150 times and "video[s]" over 50 times.

---

[2] For purposes of this motion only, Defendants accept as true non-conclusory factual allegations in the Complaint. For the avoidance of doubt, Defendants dispute and do not concede the accuracy of Plaintiffs' claims and allegations, including about the nature of Defendants' businesses and responsibility for purported harms—which they expressly reserve the right to challenge in any later phase of litigation.

- Plaintiffs are "reporting" specific videos or types of content. *E.g.*, Compl. ¶ 8 ("Plaintiffs have been going online, searching for and reporting choking videos and other harmful videos they find to the social media and video streaming platforms."), *id.* ¶ 19 (Plaintiffs "took the role of reporting harmful contents"), *id.* ¶¶ 31, 37.

- Plaintiffs seek to impose duties on Defendants "to take down" and "remove" third-party videos. *E.g.*, *id.* ¶¶ 4, 28 (Plaintiffs "flag and report the harmful content so that it may be removed").

- Plaintiffs' asserted harm arises from seeing third-party videos hosted on—and not removed from—online services. *E.g.*, *id.* ¶¶ 4 (alleging distress after being informed of "a video containing harassment and bullying messages against her son was going viral"), *id.* ¶ 9 (alleging grief when reported videos are deemed not to violate guidelines and left on platforms), *id.* ¶ 32.

- All references to "content moderation," or "arbitrary enforcement," or "defective" responses refer to Plaintiffs' disagreement with Defendants' editorial decisions about specific third-party videos—namely the failure to remove content. *E.g.*, *id.* ¶ 4 (objecting to automatic message that video "would not be removed as it did not violate any of its platform's guidelines or policies"), *id.* ¶ 14 (challenging "moderation" for failing to understand "the nuances of content versus context"), *id.* ¶ 20 (faulting failure "to meaningfully respond to reports of harmful contents"), *id.* ¶ 25 (asserting "materials containing obvious violations" "have remained up for years").

## B.    Plaintiffs' lawsuit.

On February 1, 2023, Plaintiffs filed this lawsuit against Defendants, alleging various common-law and state-law claims arising from purported defects in "content reporting features Defendants created, designed, and marketed to members of the public." *E.g.*, *id.* ¶¶ 10, 12, 17.[3]

---

[3] Despite naming four separate Google Defendants, Plaintiffs assert claims against YouTube only. Compl. ¶¶ 162, 175, 188, 204, 211, 218, 239. Under Rule 8, the Court need not consider Plaintiffs' claims against Defendants XXVI Holdings Inc. and Alphabet Inc. because Plaintiffs do nothing more than name these entities and assert only jurisdictional allegations. *See Shannon v. First Franklin Fin. Corp.*, No. 09-cv-482, 2009 WL 2867742, at *3 (N.D. Ill. Sept. 2, 2009) (Rule 8 warrants dismissal where the plaintiffs' allegations failed to put a defendant on notice of the nature of the claim and the ground on which it rests). Further, Plaintiffs concede that XXVI Holdings Inc. and Alphabet Inc. are parent companies, and Plaintiffs do not allege that either entity is responsible for the conduct alleged in the Complaint. Compl. ¶¶ 49–50; *see also* Alphabet Inc. Form 10-K, United States Securities Commission (2015), available at https://bit.ly/3hrlrGB (disclosing corporate reorganization process "pursuant to which Alphabet became a holding company with no business operations of its own") ECF No. 18 at ¶ 1–4 (certifying that that Google LLC is "a subsidiary of XXVI Holdings, which is a subsidiary of Alphabet, Inc."). As such, the Complaint does not overcome the bedrock principle of corporate law that a parent company generally cannot

Plaintiffs assert they are "modern-day champions and vigilantes," *id* ¶ 7, who "have been going online, searching for and reporting choking videos and other harmful videos they find to social media and video streaming platforms," *id.* ¶ 8. Each Plaintiff alleges using one or both of Defendants' content-reporting functions to report third-party videos to Defendants for moderation:

| Plaintiff | Allegations Against Defendant | Description of Class that Plaintiff is Seeking to Represent |
|---|---|---|
| All Plaintiffs | YouTube and TikTok | National Class. Compl. ¶ 144. |
| Joann Bogard | YouTube and TikTok | "Indiana Subclass . . . who resided in Indiana when they used TikTok or YouTube." *Id.* ¶ 147. |
| Annie McGrath | YouTube | "Wisconsin Subclass . . . who resided in Wisconsin when they used YouTube." *Id.* ¶ 148. |
| Jane Doe | YouTube[4] and TikTok | "Oregon Subclass . . . who resided in Oregon when they used TikTok or YouTube." *Id.* ¶ 149. |
| Becca Schmill Foundation | YouTube and TikTok | None. |

On April 14, Defendants filed motions to dismiss for lack of personal jurisdiction under Rule 12(b)(2), or in the alternative, to transfer the case to the Northern District of California. ECF Nos. 38–41. That motion has been fully briefed. ECF Nos. 38–49.

---

be held liable for the actions of its separate subsidiaries. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *see also Manigault-Johnson v. Google LLC*, No. 2:18-cv-1032-BHH, 2019 WL 3006646, at *3 (D.S.C. March 31, 2019) (dismissing claims against Alphabet where the plaintiffs alleged "only that Alphabet is the parent corporation of Google and YouTube and does not allege any facts showing how Alphabet is responsible for the conduct alleged in the complaint.").

[4] Although Plaintiff Doe purports to represent a class against YouTube, the Complaint contains no allegations that Doe reported any videos on YouTube. Accordingly, Doe lacks standing to pursue these claims. *MainStreet Org. of Realtors v. Calumet City*, Ill., 505 F.3d 742, 746 (7th Cir. 2007) (plaintiffs "cannot sue in a federal court to enforce someone else's legal rights"). *See* Section II.D.3 *infra.*

**ARGUMENT**

To survive a 12(b)(6) motion to dismiss, a complaint must plead facts to create "a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012). To determine the sufficiency of a complaint, a court may properly consider "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). If such incorporated or judicially noticeable documents contradict the complaint's allegations, the documents take precedence. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

Section 230 is an affirmative defense that is properly decided on a 12(b)(6) motion to dismiss if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks v. Ross,* 578 F.3d 574, 579 (7th Cir. 2009); *see also Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003) (affirming 12(b)(6) dismissal premised on Section 230).

Where claims sound in fraud, as do the fraudulent misrepresentation and state consumer protection claims (Counts III, V–VIII), a complaint must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires a plaintiff to identify "the who, what, when, where, and how" of the claim. *Schott v. Huntington Nat. Bank*, 914 F. Supp. 2d 933, 941 (S.D. Ind. 2012) (quoting Hughes *v. Chattem, Inc.*, 818 F. Supp. 2d 1112, 1123 (S.D. Ind. 2011)).

## I.    Plaintiffs' Claims Are Barred By Section 230 and the First Amendment.

### A.    Section 230 bars Plaintiffs' claims.

Plaintiffs' claims—all of which are premised on the theory that Defendants failed to

remove user content that supposedly violated their guidelines—are barred by Section 230 of the Communications Decency Act. Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). As the Seventh Circuit has explained, "[w]hat § 230(c)(1) says is that an online information system must not 'be treated as the publisher or speaker of any information provided by' someone else." *Chicago Lawyers' Comm. for C.R. Under L., Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008). Section 230 bars any claims seeking to impose liability for decisions to publish (or not remove) content posted by others. *See G.G. v. Salesforce.com, Inc.*, 603 F. Supp. 3d 626, 632–33 (N.D. Ill. 2022) (citing *Craigslist*, 519 F.3d at 671). *See also Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014 ("the very essence of publishing is making the decision whether to print or retract a given piece of content— the very actions for which Klayman seeks to hold Facebook liable."). And "content moderation" refers to decisions or policies for removing (or not removing) specific videos or types of content. *See King v. Facebook, Inc.*, No. 19-CV-01987-WHO, 2019 WL 4221768, at *4 (N.D. Cal. Sept. 5, 2019), *aff'd*, 845 F. App'x 691 (9th Cir. 2021) ("Section 230(c)(1) immunity extends to service providers' activities where they moderate third-party content."); *e.g.*, Compl. ¶ 122 (alleging content moderators "help confirm or deny whether the content should be removed").

When enacting Section 230, Congress recognized that "[m]aking interactive computer services and their users liable for the speech of third parties would severely restrict the information available on the internet." *Batzel v. Smith*, 333 F.3d 101, 1027–28 (9th Cir. 2003). The provision reflects the policy choice to protect internet-based companies from tort-based liability for removing "some—but not all—offensive material from their websites" because it "incentivized companies to neither restrict content nor bury their heads in the sand in order to avoid liability."

*Bennett v. Google, LLC*, 882 F.3d 1163, 1166 (D.C. Cir. 2018). Courts have consistently applied Section 230 to protect online service providers that publish third-party content on their platforms and engage in content moderation. *See, e.g., Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1267 (D.C. Cir. 2019); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) (under Section 230, "lawsuits seeking to hold a service provider liable for its exercise of a publisher's  traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred"); *accord Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014).

### 1.    Defendants are providers of an interactive computer service.

There is no dispute that Defendants provide "interactive computer services." The Complaint describes Defendants as "popular online video platforms," Compl. ¶ 26, *i.e.*, providers of interactive computer services. *Winter v. Facebook, Inc.*, No. 4:21-cv-01046, 2021 WL 5446733, at *4 (E.D. Mo. Nov. 22, 2021) ("[C]ourts have described video-sharing websites and social media applications with features similar to TikTok such as YouTube and Vimeo, as 'interactive computer services.'"); *see also Ripple Labs Inc. v. YouTube LLC*, No. 20-cv-02747, 2020 WL 6822891, at *6 (N.D. Cal. Nov. 20, 2020) ("YouTube is an interactive-computer service."); *Day v. TikTok, Inc.*, No. 21 C 50129, 2022 WL 595745, at *1 (N.D. Ill. Feb. 28, 2022) (dismissing complaint against TikTok under Section 230).

### 2.    Plaintiffs' claims arise from third-party content.

Section 230 bars any claim that seeks to hold an interactive computer service liable for content posted on the internet "by someone else." *Craigslist*, 519 F.3d at 671. Plaintiffs do not allege that Defendants created or developed the videos at issue in this lawsuit (nor could they). Rather, Plaintiffs' claims relate to third-party content that Plaintiffs have judged to be "harmful." *See, e.g.*, Background § A *supra*; Compl. ¶ 8 ("Plaintiffs have been going online, searching for

and reporting choking videos and other harmful videos they find" to help companies "identify the material immediately and respond"). Moreover, Plaintiffs define the proposed class as: "all people who made reports to YouTube or TikTok . . . regarding content that violates the respective platform's policies . . ." *Id.* ¶ 37. In other words, "[t]his is clearly a complaint about 'information provided by another information content provider' for which defendant cannot be held liable by the terms of Section 230(c)(1)." *Day*, 2022 WL 595745, at *2; *see also Igbonwa v. Facebook, Inc.*, No. 18-cv-02027, 2018 WL 4907632, at *6 (N.D. Cal. Oct. 9, 2018), *aff'd,* 786 F. App'x 104 (9th Cir. 2019) (websites that merely provide a "means by which third parties can post information" do not develop content).

### 3.    Plaintiffs' claims treat Defendants as publishers.

Finally, each of Plaintiffs' claims would treat Defendants as a "publisher or speaker" of information posted by another. Plaintiffs allege they "flag[ged] and report[ed] harmful content" on YouTube and TikTok "so that it may be removed per the platforms' own published guidelines and rules," but that Defendants failed to remove it. Compl. ¶ 28; *see also id.* ¶¶ 165, 180, 194, 206, 214, 221, 231, 244 (describing claims as stemming from Defendants' content "reporting" features, processes, or procedures). Their theory plainly targets Defendants' decisions and processes to remove third-party content—the very essence of publication, which involves "deciding whether to publish or to withdraw from publication third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009). *See also Fair Housing Council of San Fernando Valley v. Roommates.com. LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) (Section 230 was "enacted to protect websites against the evil of liability for failure to remove offensive content").

Other district courts within the Seventh Circuit have dismissed complaints under Section 230 when the complaint "alleges defendant allowed and did not timely remove the videos posted by someone else," holding that "[t]his is clearly a complaint . . . for which defendant cannot be

held liable by the terms of Section 230(c)(1)." *Day*, 2022 WL 595745, at *2. Plaintiffs' theory is identical, Compl. ¶¶ 8–15, and Section 230 similarly bars their claims. *See also Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 967-68 (N.D. Ill. 2009) ("A claim against an online service provider for negligently publishing harmful information created by its users treats the defendant as the 'publisher' of that information."); *G.G.*, 603 F. Supp. 3d at 637 (defendant "acted as [a] publisher" of third-party content where plaintiffs alleged that it "should have monitored [the third party] use of Salesforce's tools and deleted or restricted access to its software").

Indeed, courts consistently hold that claims based on a defendant's failure to remove website content—including mechanisms or processes to identify or take down such content—are barred by Section 230 because a claim that a service failed to remove content treats a service as the publisher of that content. *See Barnes,* 570 F.3d at 1103 ("removing content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove").[5] Applying Section 230 to bar these claims furthers its important policy motivations: if interactive computer services were held liable for failing to remove allegedly harmful content, this would "severely restrict the number and type

---

[5] *See also Zeran*, 129 F.3d at 330–32 (plaintiff's claim that "once he notified AOL of the unidentified third party's hoax, AOL had a duty to remove the defamatory posting" was barred by Section 230; explaining that "the failure to remove such a statement when first communicated by another party … constitute[s] publication"); *Doe v. MySpace, Inc.,* 528 F.3d 413, 420 (5th Cir. 2008) (no liability under the Section 230 for "decisions relating to the monitoring, screening, and deletion of content" by an interactive computer service provider); *Roommates.com,* 521 F.3d at 1170–1171 ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."); *Force*, 934 F.3d at 65 ("Facebook's alleged failure to delete content from Hamas members' Facebook pages" falls "within the heartland of what it means to be the publisher of information under Section 230(c)(1)."); *Ricci v. Teamsters Union Local 456*, 781 F. 3d 25 (2d Cir. 2015) ("The Riccis allege only that GoDaddy 'refused to remove' from its web servers an allegedly defamatory newsletter that was authored by another. These allegations do not withstand the Communications Decency Act…").

of messages posted," having "an obvious chilling effect." *Force v. Facebook, Inc.*, 934 F.3d 53, 63 (2d Cir. 2019) (quoting *Zeran*, 129 F.3d at 331).

In *Gavra v. Google*, the court applied Section 230 and dismissed claims against Google and YouTube, which were premised on treating "Google as a publisher of the content on its websites"—*i.e.*, where the plaintiff alleged failure to remove defamatory videos that did not violate YouTube's "Privacy Guidelines." No. 5:12-cv-06547, 2013 WL 3788241, at *1–*2 (N.D. Cal. July 17, 2013). Similarly, in *Winter*, the Court found the plaintiffs' claims against TikTok were barred by Section 230 because by "seek[ing] to hold . . . TikTok liable for not removing the content/accounts posted/held by [third parties], which [plaintiffs] find objectionable," the plaintiffs' claims "clearly" sought to treat TikTok as a publisher. 2021 WL 5446733, at *4. Plaintiffs' allegations here, which target "content that violates the respective platform's policies," Compl. ¶ 37, are no different than *Gavra* and *Winter*. Accordingly, this Court should dismiss all of Plaintiffs' claims.

Plaintiffs cannot avoid Section 230 by characterizing their claims as "not predicated by contents of a third-party," and "calling into question the reporting features that Defendants created, designed, and marketed to members of the public." Compl. ¶¶ 10, 38. The gravamen of Plaintiffs' Complaint is that they disagree with Defendants' decisions about whether to publish third-party content: if Defendants had removed every video Plaintiffs reported, or if the objectionable videos had never appeared on Defendants' platforms, Plaintiffs would have no claim. Courts have rejected similar attempts to circumvent Section 230, explaining that artful pleading cannot save a claim, regardless of "the name of the cause of action," that "inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1101–02; *Doe v. MySpace*, 528 F.3d 413, 419–21 (5th Cir. 2008) ("artful pleading" that defendant "failed

to implement basic safety measures" and was "negligent for not taking more precautions" was "disingenuous," as these allegations were "merely another way of claiming that [MySpace] was liable for publishing the communications"); *Anderson v. TikTok, Inc.*, No. 22-cv-1849, 2022 WL 14742788, at *4 (E.D. Pa. Oct. 25, 2022) (Section 230 barred product liability claims premised on TikTok algorithm that allegedly recommended "blackout challenge" videos because claims were "inextricably linked" to the manner in which Defendants chose to publish third-party content*), appeal docketed*, No. 22-3061 (3d Cir. Nov. 10, 2022); *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 930 (N.D. Cal. 2021) (Section 230 barred design defect claim premised on platform's alleged failure to prevent and remove harmful third-party content involving sexual trafficking of minors), *aff'd in part, rev'd in part on other grounds by Doe # 1 v. Twitter*, No. 22-15104, 2023 WL 3220912, at *1–*2 (9th Cir. May 3, 2023) (addressing non-design defect claims on interlocutory appeal); *Diep v. Apple, Inc.*, No. 21-cv-10063, 2022 WL 4021776, at *6 (N.D. Cal. Sept. 2, 2022) (Section 230 barred state consumer protection laws "premised solely upon Apple's own misrepresentations as to App Store safety.").

Nor may Plaintiffs avoid Section 230 by alleging that "Defendants also had a special duty to respond to Plaintiffs' reports" based on their terms of service. Compl. ¶ 39. The court in *Klayman v. Zuckerberg* rejected an identical argument, finding that Facebook's terms of service did not create a "special relationship" between the service and its users when the "plain text" of those terms provided that "Facebook is not responsible for the actions, content, information, or data of third parties." 573 F.3d 1354, 1359 (D.C. Cir. 2014). So, too, here. As Plaintiffs concede, Defendants explain that not every report results in removal of content. Compl. ¶¶ 115–17 (the removal of specific content on TikTok is contingent on "*if* a reported content is deemed not in violation of guidelines"; 129–134 (acknowledging that YouTube explains "When content is

reported, it's *not* automatically taken down" and that removal occurs only "*[i]f* YouTube determines that a reported content violates their guidelines.") (emphasis added).[6]

Even if the terms did not contain this language, "[s]tate law cannot predicate liability for publishing decisions on the mere existence of the very relationship that Congress immunized from suit." *Klayman*, 753 F.3d at 1360; *see, e.g.*, *Jackson v. Airbnb, Inc.*, No. CV 22-3084 DSF (JCX), 2022 WL 16753197, at *1 (C.D. Cal. Nov. 4, 2022) (dismissing defective design theories about Snapchat's processes for identifying and removing gun content because "the duty would necessarily require monitoring third-party content . . . . Plaintiffs are clearly seeking to treat Snap as a speaker or publisher.").

### B.    Plaintiffs' Claims Are Also Barred by the First Amendment.

The First Amendment independently bars Plaintiffs' claims, which are premised on challenging the "exercise of [a publisher's] editorial control and judgment." *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974). Like a traditional "newspaper or a news network," interactive computer services, like Defendants', "make[] decisions about what content to include, exclude, moderate, filter, label, restrict, or promote, and those decisions are protected by the First Amendment." *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186–87 (N.D. Cal. 2022), *aff'd sub*

---

[6] While Plaintiffs' own concessions dispel any alleged "special duty," it is worth noting that Plaintiffs' references to public terms and community guidelines only confirm that Defendants disclaim any liability for harmful content or promises about specific removal decisions. For example, TikTok's terms of service provide that "[w]e do not guarantee the accuracy, integrity, appropriateness or quality of any User Content, and under no circumstances will we be liable in any way for any User Content." *See* https://www.tiktok.com/legal/page/us/terms-of-service/en; Compl. ¶ 17 (incorporating by reference terms and guidelines). Similarly, YouTube's terms of service, also incorporated by reference, clearly inform users who upload content to YouTube that: "You are legally responsible for the Content you submit to the Service." *See* YouTube's Terms of Service (January 5, 2022), available at: https://www.youtube.com/static?template=terms. YouTube also explains—in its Community Guidelines and in the very messages Plaintiffs received after they reported videos—that it will remove content only if YouTube finds a violation of the Community Guidelines. *See* https://www.youtube.com/howyoutubeworks/policies/community-guidelines/; *Id*. ¶¶ 17, n.8, 69–70 (incorporating by reference terms and guidelines).

*nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023) (collecting cases finding that online communication services have First Amendment editorial rights). Defendants "ha[ve] important First Amendment rights that would be jeopardized by a Court order telling [them] what content-moderation policies to adopt and how to enforce those policies." *Id.* at 1188.

Here, because each of the claims asserted by Plaintiffs targets Defendants' "decisions" about published content (*e.g.*, Compl. ¶¶ 10, 30, Prayer for Relief § HI (seeking third-party review and auditing of content moderation decisions and processes))—decisions that are fundamentally about the "exercise of [a publisher's] editorial control and judgment," *Miami Herald Publ'g Co.*, 418 U.S. at 258—they are barred by the First Amendment. *See also* ECF 48-1 at 34, *State of Indiana v. TikTok, Inc.*, Cause No. 02D02-2212-PL-400, Order Denying Motion for Preliminary Injunction, at 31–32 (May 4, 2023) ("*Indiana v. TikTok* Order") (rejecting State of Indiana's request for injunction against TikTok and noting, in part, that "a significant body of case law does exist regarding social media First Amendment Constitutional protections that would be offended" if injunctive relief were issued).

## II.    Plaintiffs Fail to Adequately Plead Any Claim Against Defendants.

In addition to Section 230 and the First Amendment, Plaintiffs' claims are also barred because Plaintiffs fail to plead any cognizable cause of action.

### A.    Plaintiffs cannot plead a product liability claim against Defendants (Count I).

Plaintiffs cannot plead a product liability claim because the Defendants' communication services are not "products." Plaintiffs allege that Defendants' "reporting features" are a "design defect" that subject Defendants to strict liability. Compl. ¶¶ 163–165. But courts have uniformly rejected this theory, holding that product liability law only applies to tangible products, not to services or harm caused by intangible items. The Complaint does not allege which state law applies to the strict product liability claim, but the choice-of-law clause in Google's terms of service, *see*

ECF Nos. 38–39, mandates the application of California law. Regardless, as explained below, there is no actual conflict of law among the laws of California, Indiana, Wisconsin, or Oregon on this issue. *Visteon Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 1:11-CV-00200-RLY, 2013 WL 3814668, at *1 (S.D. Ind. July 22, 2013), *aff'd sub nom. Visteon Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 777 F.3d 415 (7th Cir. 2015) (the first step in choice of law analysis is to determine if an actual conflict exists). Under each state's law, Plaintiffs claims fail.

### 1.    Defendants' video-reporting processes are not "products."

The longstanding definition of "product" is "a *physical* article which results from a manufacturing process and is ultimately delivered to a consumer." *Pierson v. Sharp Mem'l Hosp., Inc.*, 216 Cal.App.3d 340, 345 (1989) (emphasis added). Plaintiffs plead their claim under the Restatement (Second) of Torts, Compl. ¶ 164, which identifies "products" as "tangible items, such as tires, automobiles, and insecticides." *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034 (9th Cir. 1991) (citing Restatement (Second) of Torts § 402(a) (1965)). Every other state or authority imposes a similar requirement. Restatement (Third) § 19(a) (defining "product" as "tangible personal property distributed commercially for use or consumption"); *Alexander v. Beech Aircraft Corp.*, 952 F.2d 1215, 1220 (10th Cir. 1991) (Indiana would conclude that a "'product' means any tangible object or goods produced," such that a handbook's "instructions themselves are not a product"); Ind. Code Ann. § 34-6-2-114 ("product" "does not refer to a transaction that, by its nature, involves wholly or predominantly the sale of a service rather than a product"); *Kawczynski v. Am. Coll. of Cardiology*, No. 15-CV-757-BBC, 2016 WL 2770552, at *2 (W.D. Wis. May 13, 2016) (Wisconsin law) ("The focus of products liability law is on tangible items, not intangible ideas or abstract concepts . . . ." (citing Restatement (Third) § 19)); *Ass'n of Unit of Owners Bridgeview Condominium Ass'n v. Dunning*, 69 P.3d 788, 800 (Or. App. 2003) (adopting Second Restatement's definition of "products").

15

Plaintiffs do not claim a defect from a physical article, and instead target intangible aspects of Defendants' services: their processes for reviewing and taking down reported videos. But video-reporting processes, especially for online communication services, are not physical articles or tangible property. These processes are "reporting *feature[s]*" that are "part of [Defendants'] *services*." Compl. ¶ 165 (emphasis added); *see also id.* ¶ 146 ("Membership in the class shall be determined based on TikTok and YouTube's own records of persons who used their *services*." (emphasis added)). That is insufficient as a matter of law to give rise to product liability because "[s]ervices, even when provided commercially, are not products." *Jimenez v. Superior Ct.*, 29 Cal. 4th 473, 479 (2002); *see also, e.g.*, Restatement (Third) of Torts § 19 cmt. f ("Courts are unanimous in refusing to categorize commercially-provided services as products.").

Extending product liability law to encompass Defendants' content moderation and removal features would be unworkable and raise grave constitutional concerns. The "physical article" requirement is "a fundamental and reasonable" limitation in product liability law because the "defect in the article even if initially latent is ultimately objectively measurable." *Pierson*, 216 Cal.App.3d at 345. Moreover, this tangibility requirement ensures that product liability law does not lead to "significant constitutional problems under the First Amendment that ought to be avoided." *James v. Meow Media, Inc.*, 300 F.3d 683, 695 (6th Cir. 2002). Imposing product liability law on decisions about whether to permit or remove content would "seriously inhibit those who wish to share thoughts and theories," raising the "disturbing . . . prospect that we might be deprived of the latest ideas," and would not "take into consideration the unique characteristics of ideas and expression." *Winter*, 938 F.2d at 1034–35. This concern is particularly pertinent here, where Plaintiffs seek to have Defendants "change their algorithms for content moderation,"

Compl. ¶ 88, and impose new and different processes for content review and removal based on their disagreement with Defendants' editorial decisions (Compl., Prayer for Relief § H).

Courts around the country agree that product liability law does not apply in similar situations. *Jacobs v. Meta Platforms, Inc.*, No. 22CV005233, 2023 WL 2655586, at *4 (Cal. Super. Ct. Mar. 10, 2023) (dismissing product liability claim; "as a social media platform that connects its users, Facebook is more akin to a service than a product"); *Ziencik v. Snap, Inc.*, CV 21-7292-DMG (PDX), 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) (Snapchat is not a "product"); *Est. of B.H. v. Netflix, Inc.*, No. 4:21-CV-06561-YGR, 2022 WL 551701, at *3 (N.D. Cal. Jan. 12, 2022) ("numerous authorities" conclude that "[t]here is no strict [product] liability for books, movies, or other forms of media"); *Quinteros v. InnoGames*, No. C19-1402RSM, 2022 WL 898560, at *1, *7 (W.D. Wash. Mar. 28, 2022) (website and mobile app that enabled "interaction between online players . . . over chat and other message systems" offered a service, "not a product"). The same reasoning applies here and mandates dismissal of Plaintiffs' strict product liability claim.

### 2. Plaintiffs do not allege physical injury.

The Complaint's product liability claim also fails because Plaintiffs fail to plead a physical harm. Section 402A only applies when a product causes "physical harm . . . to the ultimate user or consumer, or to his property." "Under the Restatement . . . , a cause of action for products liability, regardless of whether it sounds in negligence or strict liability, requires 'physical harm.'" *In re Cook Med., Inc., IVC Filters Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 1:14-ML-2570-RLY-TAB, 2021 WL 9099720, at *2 (S.D. Ind. Sept. 28, 2021) (Young, J.) (quoting Second Restatement §§ 388, 402A(1)). "To qualify as 'physical harm,' there must be a 'physical impairment of the human body.'" *Id.* (quoting Restatement § 7(2), (3)). Allegations of "emotional harm," without "injury to person or property," are not sufficient. *Holland v. TD Ameritrade, Inc.*, No. CIV S-10-

2110-GEB, 2012 WL 592042, at *7 (E.D. Cal. Feb. 22, 2012), *report and recommendation adopted,* 2012 WL 13046349 (E.D. Cal. Mar. 21, 2012); *see also Forth v. Gen. Motors Corp.*, No. CIV. A 89-3842, 1989 WL 83600, at *2 (E.D. Pa. July 24, 1989) ("[L]iability under § 402A is limited to physical harm and thus there can be no recovery for mental anguish and humiliation in the absence of physical injury.").

Plaintiffs do not plead any physical harm. Instead, they claim they "re-experience[d] trauma and grief" and "suffered severe mental harm, leading to emotional distress, pain, and suffering" when the videos they reported were not removed. Compl. ¶¶ 9, 171. Plaintiffs do not (and cannot) claim that Defendants' responses to Plaintiffs' content reports caused physical injury. Those responses consist of nothing more than words. The only other alleged injury—that the content reports were "a futile waste of time," *id.* ¶ 171—is, at best, a claim for economic loss, which is not cognizable under product liability law. *Jimenez v. Superior Ct.*, 29 Cal. 4th 473, 482 (2002) ("Damages available under strict products liability do not include economic loss."). The claim should be dismissed. *See In re Cook*, 2021 WL 9099720, at *3 (dismissing strict product liability claim for failure to show that alleged injury was "present physical harm"); *Holland*, 2012 WL 592042, at *7 (dismissing strict product liability claim premised only on allegations of "financial injury" and "emotional harm"); *Forth*, 1989 WL 83600, at *2 (dismissing strict product liability claim for failure to allege "physical damage to . . . vehicle").

### B.    Plaintiffs' negligence claim (Count II) fails because they do not adequately plead that Defendants owed them a duty.

To the extent Plaintiffs' construe their negligence claim as related to "designing, maintaining, and distributing" a "product," Compl. ¶ 178, it fails for the same reason as their strict liability claim. *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 479 (2001) (finding that "under a negligence theory" of product liability, a plaintiff must prove the same elements as a strict liability

claim and "also prove an additional element, namely, that the defect in the product was due to [defendant's] negligence" (internal quotation marks omitted)). But even an ordinary negligence claim would fail because it requires pleading "the existence of a duty to exercise due care," *Dyroff v. Ultimate Software Group*, No. 17-CV-05359-LB, 2017 WL 5665670, at *12 (N.D. Cal. Nov. 26, 2017), and Plaintiffs allege no cognizable duty. *See also Winter*, 938 F.2d at 1037 ("[F]or negligence to be actionable, there must be a legal duty to exercise due care."). It is not enough to "simply state[] that there is or ought to be a duty . . . the duty alleged must be one recognized by law." *Boring v. Google, Inc.*, 598 F. Supp. 2d 695, 701 (W.D. Pa. 2009) (dismissing negligence claim for lack of duty), *rev'd in part on other grounds*, 362 Fed. App'x 273 (3d Cir. 2010).

The Complaint contains bare assertions that Defendants owed duties to Plaintiffs, such as to "exercise reasonable care and caution in designing, maintaining, and distributing their product to minors," to "protect users from an unreasonable risk of harm arising out of the use of their apps," and "to provide adequate warnings to users and those making reports about the dangers associated with their reporting systems." Compl. ¶¶ 177, 181. The Court is "not bound to accept as true" Plaintiffs' "legal conclusion," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and in any event, publishers do not owe a legal "duty to investigate the accuracy of the contents" of the media they publish. *Winter*, 938 F.2d at 1037. It is well-established that websites do not owe a legal duty to users to monitor content. *See, e.g.*, *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1101 (9th Cir. 2019) ("No website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content."); *Boring*, 598 F. Supp. 2d at 701 (dismissing negligence claim resting on general allegations that Google "has a duty of care to the public to utilize proper internal controls," to avoid trespassing on Plaintiff's private property and "has a duty to utilize proper methods and controls"). Nor do websites owe a legal duty to users

to prevent self-harm when the duty is premised on "content and [its] dissemination." *See Est. of B.H.*, 2022 WL 551701, at *3 (defendant website owed no duty to minor); *Herceg v. Hustler Mag.*, Inc., 565 F. Supp. 802, 803 (S.D. Tex. 1983) (product liability law did not extend to the content in a magazine that described asphyxiation).

Plaintiffs cannot manufacture a duty by analogizing Defendants' reporting process to "a rescuer" or "a safety hotline." Compl. ¶ 178. The Complaint offers no support for these conclusory and unprecedented allegations. And Plaintiffs do not explain how their relationship with Defendants creates an affirmative duty to act or how the public interest would be served by imposing such a sweeping duty. *See, e.g.*, *Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal. App. 5th 410, 427 (2022) (Uber did not owe duty to protect passengers from a scheme that caused plaintiffs to be assaulted because violence was not a "necessary component" of Uber's business model); *Twitter, Inc., v. Taamneh*, No. 21-1496, 2023 WL 3511531, at *15 (U.S. May 18, 2023) ("Because plaintiffs' complaint rests so heavily on defendants' failure to act, their claims might have more purchase if they could identify some independent duty in tort that would have required defendants to remove ISIS' content. But plaintiffs identify no duty that would require defendants or other communication-providing services to terminate customers after discovering that the customers were using the service for illicit ends.") (internal citations omitted).

In any event, any such hypothetical duty is contradicted by Congress' decision to bar liability against platforms for failing to prevent harms relating to third-party content. *See Dyroff*, 2017 WL 5665670, at *14 (collecting authority "that website has no 'special relationship' with its users"); *Winter*, 2021 WL 5446733, at *6 (rejecting argument that by promulgating Community Standards, Facebook and TikTok had created and breached a duty of care by failing to remove

objectionable content, holding "[S]tate law cannot predicate liability for publishing decisions on the mere existence of the very relationship Congress immunized from suit").

### C.   Plaintiffs' misrepresentation and statutory claims must be dismissed because they are not pled with particularity under Rule 9(b) (Counts III–VIII).

Counts III–VIII center on allegations that Defendants deceived users about its video-reporting process. But Plaintiffs fail to plead "the 'who, what, when, where, and how'," required by Rule 9(b), *Pullins v. Reuters News & Media Inc.*, No. 22-1711, 2023 WL 1514414, at *1 (7th Cir. Feb. 3, 2023), for any claim that "sounds in fraud." *Nunally v. Morris*, No. 119CV02568JRSTAB, 2020 WL 4583019, at *6 (S.D. Ind. Aug. 7, 2020).[7] The bare allegations Plaintiffs do make are contradicted by other allegations in the Complaint and its incorporated documents. *See, e.g.*, Compl. ¶ 23 (acknowledging that reporting features addressed user concerns in a percentage of reports, but that remainder did not "effectively address[]" such concerns).

*First*, Counts III–VIII should be dismissed for failure to plead fraud with the particularity required by Rule 9(b). Plaintiffs' claims boil down to a theory that Defendants misrepresented their video-reporting processes in their respective policies. Compl. ¶¶ 17, 36, 120–21, 128–29,

---

[7] Plaintiffs' fraudulent misrepresentation claim (Count III), the Indiana Deceptive Consumers Sales Act ("IDCSA") claim (Count V), the Wisconsin Deceptive Trade Practices Act ("WDPTA") claim (Count VI), the Oregon Unfair Trade Practices Act ("OUTPA") claim (Count VII), and California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL") (Count VIII) all "sound in fraud." *See Binns v. Ocwen Loan Servicing, LLC*, 2015 WL 5775827, at *8 (S.D. Ind. Apr. 1, 2015) (applying Rule 9(b) to fraudulent misrepresentation claim); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (applying Rule 9(b) to state consumer fraud statutory claims); *Lynch v. DeMotte State Bank*, No. 2:19-CV-162-TLS-JEM, 2022 WL 4300455, at *4 (N.D. Ind. Sept. 19, 2022) ("[a]n incurable deceptive act [under the IDCSA] requires a showing of fraud and, thus, must be pled with particularity"); *Martell v. Gen. Motors LLC*, 492 F. Supp. 3d 1131, 1145 (D. Or. 2020) (applying Rule 9(b) to assess the sufficiency of plaintiff's OUTPA claim); *Great Pac. Sec. v. Barclays Cap., Inc.*, 743 F. App'x 780, 783 (9th Cir. 2018) (ruling alleged UCL and FAL claims "are subject to Rule 9(b)'s particularity standard"). Similarly, Plaintiffs' negligent misrepresentation claim (Count IV) rests entirely on the allegation that Defendants "made false representations," Compl. ¶ 206, and also is subject to Rule 9(b), *see, e.g.*, *Nunally*, 2020 WL 4583019, at *6 (applying Rule 9(b) to unjust enrichment claim alleging defendant engaged in "a pattern of fraudulent conduct").

191, 206, 214, 221, 242. But Plaintiffs fail to allege any facts—let alone with the particularity required by Rule 9(b)—from which it could be inferred that the statements in these policies were false when made. *See U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d at 1102, 1106 (7th Cir. 2014) (dismissing False Claims Act claim under Rule 9(b) in part because complaint lacked "non-conclusory allegations that [the defendant] had decided to pay kickbacks at the time it promised otherwise").

Instead, Plaintiffs aver their reports resulted in "an automated message that [the video] *did not violate*" TikTok's community guidelines or "were unheeded by YouTube," Compl. ¶¶ 24, 25; *see also id.* ¶¶ 193, 243, and some of the videos reported by the Foundation were not removed from YouTube, *id.* ¶ 141. These allegations do not constitute the "who, what, when, where, and how" of the purported fraud. The Complaint is devoid of any particulars about the videos allegedly reported, the policies the videos supposedly violated, the reports themselves, or when Plaintiffs discovered their reports were "unheeded." Plaintiffs also fail to allege *how* not removing some of the videos they reported would or could show that Defendants' entire video-reporting process was a deception. Instead, Plaintiffs merely allege Defendants do not meet Plaintiffs' subjective standards of adequate review. *See, e.g.*, *id.* ¶ 21 (describing Defendants' purported "failure to provide meaningful review"). And Plaintiff's allegations "upon information and belief" about purportedly inadequate action (*e.g.*, *id.* ¶¶ 71, 85) are not sufficient. *See Grenadyor*, 772 F.3d at 1108 (holding allegations based primarily on "information and belief" were insufficient for fraud-based claim "given the breadth of [plaintiff's] allegations").

*Second*, Counts III–VIII should also be dismissed because the claims are contradicted on the face of the Complaint. The only alleged misrepresentations or deceptive statements Plaintiffs point to are general statements about: (1) types of third-party content not allowed on Defendants'

platforms; (2) how to submit content reports; and (3) Defendants' processes for handling those reports. *See, e.g.,* Compl. ¶¶ 17–18, 69–70, 100, 187, 203, 210, 217, 238. But none of these statements say—or even imply—that Defendants will prevent all reported content from appearing on their platforms. *Id.* The statements also make clear that Defendants (not users) are responsible for deciding if third-party content violates the Community Guidelines. *Id.* ¶¶ 69–70 (YouTube in-app response to content report stating: "If *we* find this content to be in violation of our Community Guidelines, we will remove it."), *see also id.* ¶ 17 (referencing TikTok Community Guidelines, which state: "If you discover content or accounts that may violate our guidelines, please let us know so we can take appropriate action *if warranted*.").

At bottom, the misrepresentation and state-law claims are based on Plaintiffs' disagreement with Defendants' decisions not to remove the videos Plaintiffs reported.[8] But Plaintiffs do not identify any statement by Defendants that reporting a given video will yield a specific result, or that Defendants will remove *all* reported content, and the Complaint's incorporated documents contradict any such assertion. Compl. ¶¶ 8–9; 17 n.8; 69–70, 100. Courts have dismissed complaints for similar shortcomings. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.").

*Third*, Counts III–VIII at most allege that Defendants failed to fulfill alleged promises to "review and act upon harms that violate their policies." Compl. ¶ 192 (Count III); *see also id.* ¶¶ 206 (Count IV), 214 (Count V), 221–22 (Count VI), 231–32 (Count VII), 242–43 (Count VIII). However, to be actionable as a fraud or misrepresentation, a statement "must relate to a present or

---

[8] *See also* Compl. ¶ 115 (alleging that when a TikTok user reports a video, "they receive a confirmation message for their report stating: 'Thanks for reporting. We'll review your report and take action if there is a violation of our Community Guidelines.'").

pre-existing fact," *Murphy v. Mellon Accts. Pro. Corp.*, 538 N.E.2d 968, 970 (Ind. Ct. App. 1989), and "cannot be predicated on unfulfilled promises or statements concerning future events." *Henkin v. Skane-Gripen A.B.*, 986 F.2d 1424 (7th Cir. 1993) (Indiana law); *Hartwig v. Bitter*, 29 Wis. 2d 653, 656, 139 N.W.2d 644, 646 (1966) ("fraudulent misrepresentations must relate to present or pre-existing events or facts and cannot be merely unfulfilled promises or statements of future events."); *Elizaga v. Kaiser Found. Hospitals, Inc*., 259 Ore. 542, 548, 487 P.2d 870, 874 (1971) ("A failure to perform a promise is not a basis for an action for fraud."). Accordingly, Plaintiffs' allegations that Defendants did not apply their policies as promised fail as a matter of law.

### D.    Plaintiff's Statutory Claims Are Not Cognizable (Counts V–VIII).

Each of Plaintiffs' statutory claims—violations of consumer protection laws in Indiana, Wisconsin, Oregon, and California—fail as well. In addition to failing to plead their theories with the particularity required by Rule 9(b), Plaintiffs do not allege the kind of commercial transaction or the kind of injuries required by these statutes.

### 1.    Plaintiff Bogard's IDCSA claim is inadequately pled (Count V).

Plaintiff Bogard's IDCSA claim fails because the Complaint does not adequately allege unfair or deceptive activity in connection with a relevant transaction or the required injury.

*First*, the IDCSA only applies to consumer transactions in exchange for money or other valuable consideration—not free downloads of apps such as YouTube or TikTok (or streaming free content from those platforms). Under the IDCSA, "[a] supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." Ind. Code § 24-5-0.5-3. A "consumer transaction" is "a sale, lease, assignment, award by chance, or other disposition of an item of personal property, real property, a service, or an intangible . . . to a person for purposes that are primarily personal, familial, charitable, agricultural, or household, or a solicitation to supply any of these things." *Id.* § 24-5-0.5-2(a)(1). Courts have construed this

language to limit the IDCSA to claims involving exchanges for money. *See, e.g.*, *Lawson v. Hale*, 902 N.E.2d 267, 269-71 (Ind. Ct. App. 2009) (alleged violation of IDCSA based on sale of a tractor for $8500 that leaked oil). But courts have not extended the IDCSA to apply to *free* platforms. Indeed, an Indiana state court recently decided that a "consumer transaction" under the IDCSA "does not stretch so far as to include download of a free app," specifically TikTok. *See* ECF 48-1 at 32, *Indiana v. TikTok* Order.

Moreover, Plaintiffs assert they watched and reported videos as "modern-day champions and vigilantes," to "advocate for children's safety online by educating members of the public and urging lawmakers to regulate tech platforms to prevent harm to children." Compl. ¶ 7. But injury pursuant to such a purpose is not cognizable under the IDCSA's definition of a "consumer transaction." *See, e.g.*, *Indiana Pain & Spine Clinic, LLC v. Carolina Liquid Chemistries Corp.*, No. 1:21CV543, 2022 WL 891051, at *8 (M.D.N.C. Mar. 25, 2022) (holding whether alleged conduct is connected to "consumer transaction" under IDCSA "lies in whether Plaintiffs purchased the device for primarily personal purposes").

*Second*, the IDCSA requires specific allegations of injury. A plaintiff asserting emotional damages must also allege "a direct physical impact." *Bank v. Huizar*, 178 N.E.3d 326, 341 (Ind. Ct. App. 2021). Plaintiff Bogard's allegations of "emotional distress, anxiety, helplessness, invalidation, grief, re-traumatization, and frustration," Compl. ¶ 75, do not meet this test.

### 2.    Plaintiff McGrath's WDTPA claim is deficient (Count VI).

Plaintiff McGrath's WDPTA claim against the Google Defendants similarly fails because the Complaint does not adequately allege unfair or deceptive activity in connection with a relevant transaction or an adequate injury.

*First*, like the IDCSA, the WDPTA cannot be invoked to recover for free downloads of an application. The WDPTA prohibits a person from using deceptive practices to "sell, distribute,

increase the consumption of or in any [way] dispose of any real estate, merchandise, securities, employment, service, or anything offered by such person." Wis. Stat. § 100.18. The statute thus "applies by its terms to commercial transactions," *Slane v. Emoto*, 582 F. Supp. 2d 1067, 1083 (W.D. Wis. 2008), to "protect the residents of Wisconsin from any untrue, deceptive or misleading representations made to promote the *sale* of a product," *K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 720 N.W.2d 507, 516 (2006) (emphasis added).

But, here, Plaintiff McGrath does not allege any commercial transaction involving YouTube and there are no allegations the Google Defendants sold, or Plaintiff McGrath purchased, anything. This is the very opposite of a "sale," and the Court should dismiss the WDPTA claim on this ground alone. *Hydraulics Int'l, Inc. v. Amalga Composites, Inc.*, No. 20-CV-371, 2022 WL 4273475 at *8–9 (E.D. Wis. Sept. 15, 2022) (observing that Wisconsin legislature crafted the WDPTA to protect consumers from false advertisement in sales).

*Second*, the WDPTA requires specific allegations of injury—"a pecuniary loss to the plaintiff."—not present here. *T&M Farms v. CNH Indus. Am.*, LLC, 488 F. Supp. 3d 756, 760 (E.D. Wis. 2020). Plaintiff McGrath alleges that she was unable to "return to work for three years," because of "the tragedy that happened [to her son]" and not because of any action by the Google Defendants. Compl. ¶ 87. Indeed, no allegation in the Complaint suggests that Plaintiff McGrath reported the videos watched by her son before his death. Quite the opposite, Plaintiff McGrath alleges she began making reports "[s]ince [her son's] death." Compl. ¶ 81. Plaintiff McGrath's remaining allegations of "anxiety, frustration, re-traumatization, and inability to find closure" are all insufficient to plead a WDPTA claim. *Id.* ¶ 223.

### 3.    Plaintiff Doe fails to state a claim under OUTPA (Count VII).

Plaintiff Doe's claim against the TikTok Defendants under the OUTPA, O.R.S. § 646.605, similarly fails because she has failed to plead an actionable misrepresentation and has not suffered a cognizable loss as required under the statute.

To state a claim under OUTPA, a plaintiff must plead a material misrepresentation that caused Plaintiff's injury. *Vitort v. Kroger Co.*, No. 3:20-CV-01317-AC, 2021 WL 6061864, at *7 (D. Or. Sept. 13, 2021), *report and recommendation adopted*, 2022 WL 294904 (D. Or. Feb. 1, 2022), *aff'd* 2023 WL 3143690 (9th Cir. Apr. 28, 2023) (dismissing OUTPA claim and finding alleged representations "are not false or misleading" and "do not constitute false advertising"); O.R.S. § 646.605(1)(e) (prohibiting only false representations); *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 117 (2015) ("[T]he unlawful trade practice must have caused the ascertainable loss that the plaintiff suffered."). But, as detailed above in Section A, the Complaint and its incorporated documents show that TikTok's content reporting system works precisely as TikTok represents. As such, the Court should dismiss the OUTPA claim. *Vitort.*, 2021 WL 6061864, at *7.

The OUTPA claim suffers from a second, independent flaw: it does not state an "ascertainable loss of money or property . . . an essential element of a private [O]UTPA claim." *Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp. 3d 971, 978 (D. Or. 2016) (citing *Creditors Protective Ass'n, Inc. v. Britt*, 58 Or. App. 230, 233 (1982)). The Complaint does not contain any actual allegations of monetary or property harm; instead, Plaintiff Doe claims she felt "ignored, anxious, and helpless" and suffered "emotional harm." Compl. ¶ 96. Such harms are not ascertainable. *Pearson*, 358 Or. at 117 ("[N]oneconomic losses cognizable in a civil action—such as physical pain, emotional distress, or humiliation (ORS 31.710(2)(b))—will not satisfy a private [O]UTPA plaintiff's burden"). And while Doe baldly alleges that TikTok's misrepresentation caused her "monetary loss" (Compl. ¶ 96), she provides no factual allegation to support this. Such

conclusory statements of loss are insufficient. *See, e.g.*, *Teater v. Pfizer, Inc.*, No. 3:05-CV-00604-HU, 2012 WL 3776366, at *9 (D. Or. June 27, 2012), *report and recommendation adopted*, 2012 WL 3776364 (D. Or. Aug. 29, 2012 ("Even accepting Plaintiff's [OUTPA] allegations as true, Plaintiff has failed to plead factual content that allows a reasonable inference to be drawn that Defendants are liable for the misconduct alleged."); *DeLoe v. Dep't Stores Nat'l Bank*, No. 3:17-CV-00022-SB, 2017 WL 4052185, at *5 (D. Or. Aug. 18, 2017) (recommending dismissal of claim under Rule 12(b)(6) "because Plaintiff has failed to allege with sufficient particularity that Defendants violated Oregon's UTPA").

### 4. Plaintiffs lack statutory standing to bring their California state-law claim (Count VIII).

Plaintiffs cannot plead a violation of Section 17200 of California's UCL and Section 17500 of its FAL, for multiple reasons.

*First,* to have statutory standing under the UCL or FAL, plaintiffs must "'(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim.'" *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048–49 (9th Cir. 2017) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011)) (emphasis omitted); Cal. Bus. & Prof. Code § 17204. As discussed above, Plaintiffs do not allege they paid anything to watch or report videos on YouTube and TikTok. Their only alleged injury is mental and emotional harm, which is not an economic injury. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 n.1 (9th Cir. 2011) ("Plaintiffs filing an unfair competition suit must prove a pecuniary injury."); *see also In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011) (dismissing UCL claim against Facebook with prejudice because "Plaintiffs

allege that they received Defendant's services for free," and therefore, "as a matter of law, Plaintiffs cannot state a UCL claim."). The claims require dismissal.

*Second*, Plaintiffs do not allege any basis to seek the only remedies available under the UCL and FAL: restitution and injunctive relief. Cal. Bus. & Prof. Code § 17203; *see Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d 1066, 1071 (N.D. Cal. 2020) (UCL remedies "'are generally limited to injunctive relief and restitution'" (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 114 (2003)); *see also In re Outlaw Lab'y, LLP*, 463 F. Supp. 3d 1068, 1088 (S.D. Cal. 2020) ("[R]emedies for individuals under the FAL are limited to restitution and injunctive relief." (quotation omitted)). Here, there can be no restitution because there are no allegations of monies spent on either YouTube or TikTok, therefore, Defendants hold no "monies given to [them] or benefits in which the plaintiff has an ownership interest." *Korea Supply Co.*, 29 Cal. 4th at 1148. Because Plaintiffs have no basis to seek either remedy available under the UCL or FAL, these claims should be dismissed. *See, e.g.*, *Eurosesmillas, S.A. v. PLC Diagnostics, Inc.*, No. 17-CV-03159-TSH, 2019 WL 1960342, at *7-8 (N.D. Cal. May 2, 2019) (dismissing UCL claim because plaintiff was not entitled to any relief).

*Third*, Plaintiffs do not allege an inadequate remedy at law, as required under the UCL and FAL. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 n.2, 844 (9th Cir. 2020) (affirming dismissal of UCL claim when plaintiff had adequate legal remedy); *Banks v. R.C. Bigelow, Inc.*, 536 F.Supp.3d 640, 649 (C.D. Cal. 2021) (dismissing FAL claim for failure to plead inadequate remedy at law). Plaintiffs affirmatively seek damages—by definition, a legal remedy, *id.* at 838—based on allegations that are coextensive with their UCL and FAL claims. Compl. at 53 (seeking "an award of compensatory damages"). "[T]he availability of an adequate legal remedy is [thus]

29

clear from the face of the [complaint] and dictates dismissal[.]" *Hamm v. Mercedes-Benz USA, LLC*, No. 5:16-CV-03370-EJD, 2022 WL 913192, at *2 (N.D. Cal. Mar. 29, 2022).

*Fourth*, even if Plaintiffs had a basis to assert their UCL and FAL claims (they do not), the Complaint fails to plead any actual violation of either statute. As discussed in Section II.C., Plaintiffs fail to adequately state a claim for relief under the unlawful, fraudulent, or unfair prongs of the UCL under Rule 9(b)'s heightened pleading standard. The same is true for any untrue or misleading statements under the FAL, which are both inadequately pled as to the "the who, what, when, where, and how," and contradicted by Defendants' respective Community Guidelines. [9]

Plaintiffs' unlawful UCL claim also fails because it is based on the same facts as their common-law claims. *Compare* Compl. ¶¶ 191–94 *with id.* ¶¶ 242–44; *see Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) ("Because [the plaintiff] does not go beyond alleging a violation of common law, he fails to state a claim under the unlawful prong of § 17200."). And "negligence and product liability claims may not constitute predicate acts for a UCL claim." *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF (PVT), 2009 WL 4723366, at *12 (N.D. Cal. Dec. 4, 2009).

### E.    All claims fail because there is no proximate causation, and Plaintiffs' alleged injuries were not reasonably foreseeable (All Counts).

Each of Plaintiffs' claims fails for the additional reason that their alleged injuries are not causally or foreseeably connected to Defendants' alleged conduct, a required element of all claims. In the product liability context, Plaintiffs must plausibly allege that Defendants' "product causes

---

[9] Moreover, under California law, "state statutes like the UCL [and] FAL . . . presumptively do not apply to occurrences outside California." *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1147 (N.D. Cal. 2013). Here, Plaintiffs do not allege that any of the conduct underlying their UCL and FAL claims occurred primarily within California. The UCL and FAL claims consequently fail as a matter of law.

injury while the product is being used in a reasonably foreseeable way." *Shih v. Starbucks Corp.*, 53 Cal. App. 5th 1063, 1067 (2020). "[W]here there is an independent intervening act that is not reasonably foreseeable, the defendant's conduct is not deemed the 'legal' or proximate cause." *Riggs v. Apple, Inc.*, No. 17CV308219, 2017 WL 4018064, at *3-4 (Cal. Super. Ct. Aug. 24, 2017). The same foreseeability requirement applies to negligence and misrepresentation claims. *See, e.g., Dillon v. Legg*, 68 Cal. 2d 728, 739 (1968) ("In order to limit the otherwise potential infinite liability which would follow every negligent act, the law of torts holds defendant amenable only for injuries to others which to defendant at the time were reasonably foreseeable."); *Karimi v. Wells Fargo*, No. CV 11-00461-RGK, 2011 WL 10653746, at *2 (C.D. Cal. May 4, 2011) (dismissing fraudulent misrepresentation claim because plaintiffs' injuries were not proximately caused by the alleged misrepresentation).

Here, the original and direct causes of Plaintiffs' alleged emotional harm were the tragic losses of their children, but this lawsuit does not (and cannot) seek to hold Defendants liable for those losses. *See, e.g.*, Compl. ¶ 87 ("*Because of* the tragedy that happened to Griffin, [McGrath] could not return to work for three years.") (emphasis added). Rather, Plaintiffs focus on the later period *after* their children's deaths when Plaintiffs affirmatively sought out, viewed, and reported new "choking videos and other harmful videos." Compl. ¶¶ 6–8. To the extent Plaintiffs allege emotional harm from this "re-experience," their self-exposure to specific triggering content is not attributable to (or foreseeable by) Defendants and is clearly barred by Section 230. *See, e.g.*, *id.* ¶ 8–9; Section I.A *supra* (citing cases prohibiting intermediary platforms from being liable for harmful content).

Unable to recover for their original losses or their subsequent exposure to specific videos, Plaintiffs shift to alleging they were harmed by receiving "canned responses" that that the videos

they reported did not violate Defendants' Community Guidelines. Compl. ¶ 10. But these responses were not the proximate cause of any cognizable harm to each individual Plaintiff (let alone the proximate cause of similar and repeatable harm to an entire putative class). Indeed, proximate causation fails at the first step when Plaintiffs concede that *their* independent choices and actions started the chain that eventually (but not always) resulted in responses they found unsatisfactory. Plaintiffs do not (and cannot) allege this was reasonably foreseeable to Defendants. *See Wawanesa Mut. Ins. Co. v. Matlock*, 60 Cal. App. 4th 583, 588 (1997) (dismissing when alleged harm was not "*reasonably* within the scope of the risk created by the initial act"); *Sakai v. Massco Invs.*, LLC, 20 Cal. App. 5th 1178, 1186 (2018) (affirming summary judgment where third party's conduct "was not foreseeable or derivative of" defendant's conduct, and defendant was not "on notice" of the third-party conduct).

Courts applying California law and examining similar alleged chains of causation have found them inadequate and not reasonably foreseeable. For example, the court in *Riggs* rejected a theory of liability premised on the claim that Apple had caused a car accident by failing to design the iPhone to disable incoming messages while driving, which allegedly caused the plaintiff's death where the oncoming driver was texting while driving. The court dismissed the claim as a matter of law, finding "[t]he chain of causation . . . is far too attenuated for a reasonable person to conclude that Apple's conduct is or was a substantial factor in causing plaintiffs' harm." *Riggs,* 2017 WL 4018064, at *4 (citing *Meador v. Apple, Inc.*, No. 6:15-CV-715, 2016 WL 7665863, at *4 (E.D. Tex., Aug. 16, 2016)). *See also, e.g.*, *Fields v. Twitter, Inc.*, 881 F.3d 739, 749-50 (9th Cir. 2018) (finding no proximate cause for allegations that Twitter "facilitated the organization's growth and ability to plan and execute terrorist acts"); *Gamache v. Airbnb, Inc.*, No. A146179, 2017 WL 3431651, at *2-3 (Cal. Ct. App. Aug. 10, 2017) ("Airbnb's facilitation of some number

of short-term rentals in Plaintiffs' building . . . does not render Airbnb a proximate cause of the alleged harms."). *Taamneh*, 2023 WL 3511531, at *15 ("The fact that some bad actors took advantage of these platforms is insufficient to state a claim that defendants knowingly gave substantial assistance and thereby aided and abetted those wrongdoers' acts. And . . . a contrary holding would effectively hold any sort of communication provider liable for any sort of wrongdoing merely for knowing that the wrongdoers were using its services and failing to stop them," which would "run roughshod over the typical limits on tort liability.").

Thus, all of Plaintiffs' common-law tort claims must be dismissed for failure to plead foreseeability or proximate cause. *See, e.g.*, *Shih*, 53 Cal. App. 5th at 1070 (dismissing product liability claim because Plaintiffs' alleged injury "was not a foreseeable result of the alleged defects"); *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136, 153–54 (2018) (affirming dismissal of products liability and negligence claims arising from car accident for lack of causation because "the gap between Apple's design of the iPhone and the Modisettes' injuries is too great for the tort system to hold Apple responsible" (citation omitted)); *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 606 (2014) (dismissing misrepresentation claim because "[plaintiff] has not sufficiently pleaded a causal connection between any damages and any actionable conduct by the defendants"); *Karimi*, 2011 WL 10653746, at *2 (dismissing fraudulent misrepresentation claim because Plaintiffs' alleged damages, including emotional distress, were not the result of Defendant's allegedly fraudulent misrepresentation that Plaintiffs' property would not be foreclosed on while loan modification request was pending, but rather, were "the natural consequences of foreclosure, even when it is completely legal").

Plaintiffs' statutory tort claims—all based on the Defendants' alleged misrepresentations about their content reporting procedures and processes—fail for the same reason. *See In re Sears,*

*Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*, No. 05 C 2623, 2009 WL 3460218, at *5 (N.D. Ill. Oct. 20, 2009) (denying motion for class certification for IDCSA claim where plaintiffs did not adequately allege class members' damages were proximately caused by reliance upon misrepresentations); *Sherwood v. Finch*, No. CV-00-349-HU, 2000 WL 1862562, at *14 (D. Or. Dec. 20, 2000) (OUTPA's requirement that "plaintiffs prove that the 'ascertainable loss' was a result of defendant's violation" is "akin to a traditional proximate cause analysis"); *Haley v. Kolbe & Kolbe Millwork Co.*, 863 F.3d 600, 615 (7th Cir. 2017) ("[T]he absence of a reliance requirement does not relieve plaintiffs of the need to establish causation—i.e., that the alleged misrepresentation somehow caused them loss" under WDPTA); *Lorenzo v. Qualcomm Inc.*, No. 08CV2124 WQH LSP, 2009 WL 2448375, at *6 (S.D. Cal. Aug. 10, 2009) (dismissing UCL claim where the plaintiff's alleged injury was "at least three intermediaries between" the alleged claim); *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1135 (S.D. Cal. 2021) ("A plaintiff alleging false advertising or misrepresentation to consumers 'must show that the misrepresentation was an *immediate cause* of the injury-producing conduct.'") (emphasis in original). Accordingly, each of Plaintiffs' claims must be dismissed for failure to allege proximate cause and foreseeability.

## F. The Becca Schmill Foundation Lacks Article III Standing.

In addition to the arguments above, the Foundation should be dismissed for lack of Article III standing. To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be addressed by a favorable judicial [ruling]." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The Foundation's alleged injury—that it "was forced to expend its resources and time" on a study of Defendants' content reporting processes, Compl. ¶ 197—is insufficient because the Foundation lacks a legally protected interest related to conducting the study, fails to allege a causal connection between its decision to conduct the study and the reporting processes' alleged deficiencies, and

does not provide a legal ground for redress of its alleged injury. *See Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020). Nor can the Foundation establish associational standing on behalf of its members because, among other things, the Complaint fails to "provide names of any individual members at the pleading stage," and fails to establish that at least one of the Foundation's members would have standing in their own right. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1009 (7th Cir. 2021). Further, that certain of the Foundation's researchers "made reports," Compl. ¶ 108, does not identify what (if any) injury they allegedly suffered. The Foundation alleges it *hired* the researchers to conduct the study "on the report and response processes of harmful and illegal content on social media," *id.* ¶ 107, which directly contradicts any theoretical allegation that the researchers were injured by their role in that study.

## CONCLUSION

The Court should dismiss the claims against the Defendants with prejudice.

Dated: May 22, 2023                              Respectfully submitted,

By: *s/ Andrew Campbell*                         By: *s/ Tiana Demas*
FAEGRE DRINKER BIDDLE & REATH                    COOLEY LLP
LLP                                              Tiana Demas (admitted *pro hac vice*)
Andrea R. Pierson (#18435-49)                    110 N. Wacker Drive
Andrew L. Campbell (#25516-49)                   Suite 4200
300 N. Meridian Street, Suite 2500               Chicago, IL 60606
Indianapolis, IN 46204                           (312) 881-6500
 (317) 237-0300                                  tdemas@cooley.com
andrea.pierson@faegredrinker.com
andrew.campbell@faegredrinker.com                Michael G. Rhodes (admitted *pro hac vice*)
                                                 Kyle C. Wong (admitted *pro hac vice*)
                                                 3 Embarcadero Center, 20th floor
                                                 San Francisco, CA 94111
                                                 (415) 693-2000
                                                 rhodesmg@cooley.com
                                                 kwong@cooley.com

KING & SPALDING LLP
Geoffrey M. Drake (admitted *pro hac vice*)
Albert Giang (admitted *pro hac vice*)
David Mattern (admitted *pro hac vice*)
1180 Peachtree Street NE,
Suite 1600
Atlanta, GA 30309
(404) 572-4726
gdrake@kslaw.com
agiang@kslaw.com
dmattern@kslaw.com

*Counsel for Defendants TikTok Inc. and
ByteDance Inc.*

BARNES & THORNBURG LLP
Jeff Barron
11 South Meridian Street
Indianapolis, IN 46204
(317) 231-7751
jeff.barron@btlaw.com

*Counsel for Defendants Alphabet Inc., Google
LLC, YouTube, LLC, and XXVI Holdings Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the foregoing document

was served upon all counsel and parties of record via ECF on May 22, 2023.


*/s/ Tiana Demas*
Tiana Demas