1    COOLEY LLP
     MICHAEL G. RHODES (116127)
2    (rhodesmg@cooley.com)
     KYLE C. WONG (224021)
3    (kwong@cooley.com)
     REECE TREVOR (316685)
4    (rtrevor@cooley.com)
     3 Embarcadero Center, 20th Floor
5    San Francisco, California 94111-4004
     Telephone:    +1 415 693 2000
6    Facsimile:    +1 415 693 2222

7    TIANA DEMAS (*pro hac vice forthcoming*)
     (tdemas@cooley.com)
8    110 N. Wacker Drive, Suite 4200
     Chicago, Illinois 60606
9    Telephone:    +1 312 881-6500
     Facsimile:    +1 312 881-6598

10
     Attorneys for Defendants
11   ALPHABET, INC., GOOGLE LLC, YOUTUBE,
     LLC, and XXVI HOLDINGS INC.
12
     *[Additional Counsel Appear on Signature Page]*
13
                  UNITED STATES DISTRICT COURT
14
                  NORTHERN DISTRICT OF CALIFORNIA
15
                       SAN JOSE DIVISION
16

17
     BOGARD, MCGRATH, JANE DOE, BECCA        Case No. 5:24-cv-03131-VKD
18   SCHMILL FOUNDATION, *Individually and
     on behalf of all others similarly situated*,   **DEFENDANTS' JOINT NOTICE OF MOTION
19                                                 AND MOTION TO DISMISS PLAINTIFFS'
                       Plaintiffs,                 COMPLAINT**
20
              v.                                   Hearing Date: October 22, 2024
21                                                 Time:         10:00 a.m.
     TIKTOK, INC., BYTEDANCE, INC.,               Courtroom:    Courtroom 2, 5th Floor
22   ALPHABET INC., XXVI HOLDINGS INC.,           Judge:        Hon. Virginia K. DeMarchi
     GOOGLE LLC, YOUTUBE, LLC,
23
                       Defendants.
24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## TABLE OF CONTENTS

**Page**

NOTICE OF MOTION & MOTION TO DISMISS...................................................................... 1

I. INTRODUCTION ......................................................................................................... 1

II. BACKGROUND ........................................................................................................... 3

    A. Defendants' Video Reporting and Review Processes. ....................................... 3

    B. Plaintiffs' Claims. ............................................................................................. 4

    C. Procedural History. ........................................................................................... 5

III. LEGAL STANDARDS................................................................................................. 5

IV. ARGUMENT ................................................................................................................ 6

    A. Section 230 Bars Plaintiffs' Claims.................................................................. 6

    B. Plaintiffs' Claims Are Barred by the First Amendment. ................................. 13

    C. Plaintiffs Cannot Plead a Product Liability Claim Against Defendants Because Defendants' Communication Services Are Not Products and Plaintiffs Do Not Allege Physical Harm (Count I). .......................... 14

        1. Defendants' Video-Reporting Processes Are Not "Products."................. 15

        2. Plaintiffs Do Not Allege Physical Injury. ................................................. 18

    D. Plaintiffs' Negligence Claim Fails Because They Do Not Adequately Plead That Defendants Owed Them a Duty (Count II). ...................................... 19

    E. All Claims Fail Because There Is No Proximate Causation, and Plaintiffs' Alleged Injuries Were Not Reasonably Foreseeable. ................................. 20

    F. Plaintiffs' Fraud-Based Claims Must Be Dismissed Because They Are Not Pled with Particularity Under Rule 9(b) and Suffer Numerous Claim-Specific Defects (Counts III-VIII). .................................................. 24

        1. The Fraud Claims Violate Rule 9(b). ....................................................... 24

        2. The Fraud Claims Are Conclusory and Implausible.................................. 26

        3. Plaintiff Bogard's IDCSA Claim Is Deficient (Count V). ........................ 27

        4. Plaintiff McGrath's WDTPA Claim Is Deficient (Count VI)................... 28

        5. Plaintiff Doe's OUTPA Claim Is Deficient (Count VII). ......................... 29

        6. Plaintiffs' UCL and FAL Claims Are Deficient (Count VIII). ................. 30

    G. The Foundation Lacks Article III Standing. ................................................... 32

    H. There Are No Viable Claims Against XXVI Holdings Inc. Nor Alphabet Inc......... 33

V. CONCLUSION ........................................................................................................... 33

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Alexander v. Beech Aircraft Corp.*,
    952 F.2d 1215 (10th Cir. 1991) ............................................................................... 15

*Allen v. Shiroma*,
    266 Or. 567 (1973) ................................................................................................... 23

*In re Apple Inc. App Store Simulated Casino-Style Games Litig.*,
    625 F. Supp. 3d 971 (N.D. Cal. 2022), ..................................................................... 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 5

*Ass'n of Unit of Owners Bridgeview Condominium v. Dunning*,
    69 P.3d 788 (Or. App. 2003) .................................................................................. 15

*Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of
    Transp.*, 713 F.3d 1187 (9th Cir. 2013) ................................................................. 33

*Bank v. Huizar*,
    178 N.E.3d 326 (Ind. Ct. App. 2021) ..................................................................... 28

*Banks v. R.C. Bigelow, Inc.*,
    536 F. Supp. 3d 640 (C.D. Cal. 2021) ................................................................... 32

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009) ........................................................................ *passim*

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003) .............................................................................. 6, 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................... 5, 19, 33

*Bennett v. Google, LLC*,
    882 F.3d 1163 (D.C. Cir. 2018) ............................................................................... 6

*Boring v. Google, Inc.*,
    598 F. Supp. 2d 695 (W.D. Pa. 2009) .................................................................... 19

*Braunstein v. Ariz. Dep't of Transp.*,
    683 F.3d 1177 (9th Cir. 2012) ............................................................................... 33

*Bride v. Snap Inc.*,
    2023 WL 2016927 (C.D. Cal. Jan 10, 2023) ......................................................... 10

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cᴏᴏʟᴇʏ LLP
Aᴛᴛᴏʀɴᴇʏs ᴀᴛ Lᴀᴡ
Sᴀɴ Fʀᴀɴᴄɪsᴄᴏ

*Buchler v. State By and Through Oregon Corrections Div.*,
    316 Or. 499 (1993) .................................................................................................. 20

*Calise v. Meta Platforms, Inc.*,
    103 F.4th 732 (9th Cir. 2024) ..................................................................... *passim*

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ................................................................................ 25

*Castillo v. Seagate Tech., LLC*,
    2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) .................................................... 31

*Cefalo v. Cont'l W. Ins. Co.*,
    285 Wis. 2d 766 (2005) ........................................................................................ 23

*Chitwood v. A.O. Smith Harvestore Prod., Inc.*,
    489 N.W.2d 697 (Wis. Ct. App. 1992) ................................................................ 27

*Coe v. Ware*,
    171 N.E. 732 (Mass. 1930) .................................................................................. 27

*Control Techniques v. Johnson*,
    762 N.E.2d 104 (Ind. 2002) ................................................................................. 21

*Creditors Protective Ass'n, Inc. v. Britt*,
    58 Or. App. 230 (1982) ........................................................................................ 30

*Das v. WMC Mortg. Corp.*,
    831 F. Supp. 2d 1147 (N.D. Cal. 2011) .............................................................. 25

*DeLoe v. Dep't Stores Nat'l Bank*,
    2017 WL 4052185 (D. Or. Aug. 18, 2017) ......................................................... 30

*Diep v. Apple*,
    2024 WL 1299995 (9th Cir. Mar. 27, 2024) ......................................................... 7

*Dillon v. Legg*,
    68 Cal. 2d 728 (1968) .......................................................................................... 21

*Divino Grp. LLC v. Google LLC*,
    2022 WL 4625076 (N.D. Cal. Sept. 30, 2022) ..................................................... 8

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008) ............................................................................... 11

*Doe v. Twitter, Inc.*,
    555 F. Supp. 3d 889 (N.D. Cal. 2021) ............................................................... 11

*Does 1-6 v. Reddit, Inc.*,
    51 F.4th 1137 (9th Cir. 2022) ................................................................................ 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Cooley LLP
Attorneys at Law
San Francisco

iii

DEFS' MOTION TO DISMISS
5:24-CV-03131-VKD

*Doull v. Foster*,
    163 N.E.3d 976 (Mass. 2021) ............................................................. 21

*Dyroff v. Ultimate Software Group*,
    2017 WL 5665670 (N.D. Cal. Nov. 26, 2017).................................. 19, 20

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ........................................................... 19

*Egbukichi v. Wells Fargo Bank, NA*,
    184 F. Supp. 3d 971 (D. Or. 2016) ................................................... 30

*Est. of B.H. v. Netflix, Inc.*,
    2022 WL 551701 (N.D. Cal. Jan. 12, 2022) ................................. 17, 19

*In re Facebook Privacy Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011) .............................................. 31

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) (en banc)........................................... 2, 7

*Fast Eddie's v. Hall*,
    866 N.E.2d 1270 (Ind. App. 1997) .................................................... 23

*Ferens v. John Deere Co.*,
    494 U.S. 516 (1990) ......................................................................... 15

*Fields v. Twitter, Inc.*,
    881 F.3d 739 (9th Cir. 2018).............................................................. 22

*In re Finjan Holdings, Inc. Sec. Litig.*,
    58 F.4th 1048 (9th Cir. 2023)............................................................. 6

*Food & Drug Admin. v. All. for Hippocratic Med.*,
    144 S. Ct. 1540 (2024) ...................................................................... 4

*Forth v. Gen. Motors Corp.*,
    1989 WL 83600 (E.D. Pa. July 24, 1989)........................................ 18

*Gamache v. Airbnb, Inc.*,
    2017 WL 3431651 (Cal. Ct. App. Aug. 10, 2017)............................. 23

*Gavra v. Google, Inc.*,
    2013 WL 3788241 (N.D. Cal. July 17, 2013) .............................. 7, 10

*Gibson v. Bankofier*,
    275 Or. App. 257 (2015) ................................................................... 27

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008)............................................................ 5

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

*Gilmore v. Wells Fargo Bank N.A.*,
   75 F. Supp. 3d 1255 (N.D. Cal. 2014) ............................................................. 24, 25

*In re Glenfed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) (en banc) ............................................................. 24

*Graham v. Bank of Am., N.A.*,
   226 Cal. App. 4th 594 (2014) ............................................................................ 23

*Great Pac. Sec. v. Barclays Cap., Inc.*,
   743 F. App'x 780 (9th Cir. 2018) ..................................................................... 25

*Haley v. Kolbe & Kolbe Millwork Co.*,
   863 F.3d 600 (7th Cir. 2017) ............................................................................. 24

*Hamm v. Mercedes-Benz USA, LLC*,
   2022 WL 913192 (N.D. Cal. Mar. 29, 2022) ................................................... 32

*Hawn v. Padgett*,
   598 N.E.2d 630 (Ind. Ct. App. 1992) ............................................................... 20

*Herceg v. Hustler Mag., Inc.*,
   565 F. Supp. 802 (S.D. Tex. 1983) ................................................................... 19

*Holland v. TD Ameritrade, Inc.*,
   2012 WL 592042 (E.D. Cal. Feb. 22, 2012) .................................................... 18

*HomeAway.com, Inc. v. City of Santa Monica*,
   918 F.3d 676 (9th Cir. 2019) ............................................................................... 7

*Hubbard v. Google*,
   2024 WL 3302066 (N.D. Cal. July 1, 2024) ................................................... 31

*Hydraulics Int'l, Inc. v. Amalga Composites, Inc.*,
   2022 WL 4273475 (E.D. Wis. Sept. 15, 2022) ............................................... 29

*Igbonwa v. Facebook, Inc.*,
   2018 WL 4907632 (N.D. Cal. Oct. 9, 2018) ...................................................... 8

*Indiana Pain & Spine Clinic, LLC v. Carolina Liquid Chemistries Corp.*,
   2022 WL 891051 (M.D.N.C. Mar. 25, 2022) .................................................. 28

*Jackson v. Airbnb, Inc.*,
   2022 WL 16753197 (C.D. Cal. Nov. 4, 2022) ................................................. 12

*Jacobs v. Meta Platforms, Inc.*,
   2023 WL 2655586 (Cal. Super. Ct. Mar. 10, 2023)......................................... 17

*James v. Meow Media, Inc.*,
   300 F.3d 683 (6th Cir. 2002) ............................................................................. 16

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Jane Doe No. 1 v. Uber Techs., Inc.*,
   79 Cal. App. 5th 410 (2022) ................................................................................. 20

*Jimenez v. Superior Ct.*,
   29 Cal. 4th 473 (2002) ............................................................................... 16, 18

*K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*,
   720 N.W.2d 507 (2006) ......................................................................................... 29

*Karimi v. Wells Fargo*,
   2011 WL 10653746 (C.D. Cal. May 4, 2011) .............................................. 21, 23

*Katz v. Cal-W. Reconveyance Corp.*,
   2010 WL 424453 (N.D. Cal. Jan. 27, 2010) ....................................................... 31

*Kawczynski v. Am. Coll. of Cardiology*,
   2016 WL 2770552 (W.D. Wis. May 13, 2016) ................................................... 15

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .............................................................................. 25

*Kent v. Shiley Inc.*,
   1989 WL 88307 (D. Or. Jan. 24, 1989) .............................................................. 18

*Kifle v. YouTube LLC*,
   2021 WL 10331555 (N.D. Cal. Oct. 5, 2021) ...................................................... 6

*Klayman v. Zuckerberg*,
   753 F.3d 1354 (D.C. Cir. 2014) ....................................................................... 9, 12

*Kopis v. Savage*,
   498 N.E.2d 1266 (Ind. Ct. App. 1986) ............................................................... 27

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ........................................................................................ 31

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) .......................................................................................... 31

*L.W. v. Snap Inc.*,
   675 F. Supp. 3d 1087 (S.D. Cal. 2023) ............................................................... 10

*Lasley v. Combined Transp., Inc.*,
   261 P.3d 1215 (Or. 2011) ..................................................................................... 21

*Lawson v. Hale*,
   902 N.E.2d 267 (Ind. Ct. App. 2009) ................................................................. 28

*Loomer v. Zuckerberg*,
   2023 WL 6464133 (N.D. Cal. Sept. 30, 2023) .................................................... 7

*Lorenzo v. Qualcomm Inc.*,
  2009 WL 2448375 (S.D. Cal. Aug. 10, 2009) ........................................................ 24

*Lynch v. DeMotte State Bank*,
  2022 WL 4300455 (N.D. Ind. Sept. 19, 2022) ........................................................ 25

*Madrid v. Perot Sys. Corp.*,
  130 Cal. App. 4th 440 (2005) .................................................................................. 31

*Manigault-Johnson v. Google LLC*,
  2019 WL 3006646 (D.S.C. March 31, 2019) .......................................................... 33

*Martell v. Gen. Motors LLC*,
  492 F. Supp. 3d 1131 (D. Or. 2020) ....................................................................... 25

*Meador v. Apple, Inc.*,
  2016 WL 7665863 (E.D. Tex., Aug. 16, 2016) ....................................................... 22

*Miami Herald Pub. Co. v. Tornillo*,
  418 U.S. 241 (1974) ........................................................................................... 13, 14

*Modisette v. Apple Inc.*,
  30 Cal. App. 5th 136 (2018) .................................................................................... 23

*Moody v. NetChoice LLC*,
  __ S. Ct. __, 2024 WL 3237685 (July 1, 2024) ......................................... 2, 13, 14

*Murphy v. Roblox Corp.*,
  No. 3:23-cv-01940, ECF No. 47 (S.D. Cal. July 10, 2024) .................................... 25

*Newton v. Thomason*,
  22 F.3d 1455 (9th Cir. 1994) ..................................................................................... 6

*O'Handley v. Padilla*,
  579 F. Supp. 3d 1163 (N.D. Cal. 2022) .................................................................. 13

*Pearson v. Philip Morris, Inc.*,
  358 Or. 88 (2015) ............................................................................................... 29, 30

*Phillips v. Apple Inc.*,
  2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) ........................................................ 32

*Pierson v. Sharp Mem'l Hosp., Inc.*,
  216 Cal. App. 3d 340 (1989) .............................................................................. 15, 16

*Quinteros v. InnoGames*,
  2022 WL 898560 (W.D. Wash. Mar. 28, 2022) ...................................................... 17

*Regents of Univ. of Cal. v. Principal Fin. Grp.*,
  412 F. Supp. 2d 1037 (N.D. Cal. 2006) .................................................................. 27

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Riggs v. Apple, Inc.*,
    2017 WL 4018064 (Cal. Super. Ct. Aug. 24, 2017) ...................................................... 21, 22

*Rogers v. R.J. Reynolds Tobacco Co.*,
    557 N.E.2d 1045 (Ind. Ct. App. 1990) .................................................................................. 18

*Salameh v. Tarsadia Hotel*,
    726 F.3d 1124 (9th Cir. 2013)................................................................................................. 5

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*,
    2009 WL 3460218 (N.D. Ill. Oct. 20, 2009)......................................................................... 23

*Sharpe v. Puritan's Pride, Inc.*,
    466 F. Supp. 3d 1066 (N.D. Cal. 2020) ................................................................................ 31

*Sherwood v. Finch*,
    2000 WL 1862562 (D. Or. Dec. 20, 2000) ........................................................................... 23

*Shih v. Starbucks Corp.*,
    53 Cal. App. 5th 1063 (2020)........................................................................................... 21, 23

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010)............................................................................................... 26

*Simon v. United States.*,
    805 N.E.2d 798 (2004)........................................................................................................... 15

*Slane v. Emoto*,
    582 F. Supp. 2d 1067 (W.D. Wis. 2008) .............................................................................. 28

*In re Social Media Adolescent Addiction/Personal Injury Products Liability
    Litigation*,
    2023 WL 7524912 (N.D. Cal. Nov. 14, 2023).................................................................. 11, 17

*Social Media Cases*, 2023 WL 6847378 (Cal. Super. Oct. 13, 2023) ......................................... 17

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020)................................................................................................. 32

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ............................................................................................................... 32

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001)................................................................................................. 27

*Stewart v. Kodiak Cakes, LLC*,
    537 F. Supp. 3d 1103 (S.D. Cal. 2021) ................................................................................ 24

*SVGRP LLC v. Sowell Fin. Servs., LLC*,
    2019 WL 652890 (N.D. Cal. Feb. 15, 2019)........................................................................ 31

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*T&M Farms v. CNH Indus. Am., LLC*,
    488 F. Supp. 3d 756 (E.D. Wis. 2020) .................................................................... 29

*Teater v. Pfizer, Inc.*,
    2012 WL 3776366 (D. Or. June 27, 2012) ............................................................. 30

*Tesar v. Anderson*,
    789 N.W.2d 351 (Wis. App. 2010) ......................................................................... 21

*Twitter, Inc., v. Taamneh*,
    598 U.S. 471 (2023) ......................................................................................... 20, 22

*United States v. Bestfoods*,
    524 U.S. 51 (1998) .................................................................................................. 33

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ..................................................................................... 6

*Unknown Parties v. Google LLC*,
    2024 WL 1892291 (N.D. Cal. Apr. 29, 2024) .......................................................... 7

*Van Patten v. Vertical Fitness Grp., LLC*,
    847 F.3d 1037 (9th Cir. 2017) ................................................................................ 30

*Vitort v. Kroger Co.*,
    2021 WL 6061864 (D. Or. Sept. 13, 2021) ........................................................ 29, 30

*Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*,
    991 F.2d 1501 (9th Cir. 1993) ................................................................................ 14

*Wawanesa Mut. Ins. Co. v. Matlock*,
    60 Cal. App. 4th 583 (1997) ................................................................................... 22

*Winslow v. Brown*,
    125 Wis. 2d 327 (1985) .......................................................................................... 20

*Winter v. Facebook, Inc.*,
    2021 WL 5446733 (E.D. Mo. Nov. 22, 2021) .................................................. 11, 20

*Winter v. G.P. Putnam's Sons*,
    938 F.2d 1033 (9th Cir. 1991) ..................................................................... 15, 16, 19

*Wozniak v. YouTube, LLC*,
    100 Cal. App. 5th 893 (2024) ................................................................................. 11

*Ziencik v. Snap, Inc.*,
    2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) ........................................................... 17

**Statutes & Court Rules**

28 U.S.C. § 1404(a) ........................................................................................................... 5

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**DEFS' MOTION TO DISMISS**
5:24-CV-03131-VKD

47 U.S.C. § 230 ........................................................................................................ *passim*

Federal Rules of Civil Procedure
    Rule 8 ................................................................................................................. 33
    Rule 9 ..................................................................................................... 5, 24, 25
    Rule 12 ........................................................................................................ 5, 30

Cal. Bus. & Prof. Code
    § 17203 ............................................................................................................. 31
    § 17204 ............................................................................................................. 31
    § 17500 ............................................................................................................. 30

Ind. Code Ann.
    § 24-5-0.5-2(a)(1) ............................................................................................ 28
    § 24-5-0.5-3 ..................................................................................................... 27
    § 34-6-2-114 .................................................................................................... 15
    § 34-20-1-1 ...................................................................................................... 18

Or. Rev. Stat.
    § 31.710(2)(b) ................................................................................................. 30
    § 646.605 ......................................................................................................... 29
    § 646.608(1)(e) ................................................................................................ 29

Wis. Stat. § 100.18(1) .............................................................................................. 28

**Other Authorities**

Alphabet Inc., Annual Report (Form 10-K) (Feb. 11, 2016) ................................... 33

Restatement (Second) of Torts § 402(a) (1965) ............................................... 15, 18

Restatement (Third) of Torts (1998)
    § 19 .................................................................................................................. 15
    § 19(a) (1998) .................................................................................................. 15
    § 19 cmt. .......................................................................................................... 16

TikTok, Terms of Service (Nov. 2023), *available at*
    https://www.tiktok.com/legal/page/us/terms-of-service/en ................................. 12

YouTube, Community Guidelines, *available at*
    https://www.youtube.com/howyoutubeworks/policies/#community-guidelines/ .................. 12

YouTube's "Privacy Guidelines" .............................................................................. 11

YouTube, Terms of Service (January 5, 2022), available at
    https://www.youtube.com/static?template=terms ................................................. 12

6 Witkin, Summary of California Law Torts §1186 (10th ed. 2005) .......................... 21

Cooley LLP
Attorneys at Law
San Francisco

<u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE** that on October 22, 2024 at 10:00 a.m., Defendants Alphabet Inc., Google LLC, YouTube LLC, and XXVI Holdings Inc. (together, "Google Defendants"), and TikTok Inc. and ByteDance Inc. (together, "TikTok Defendants") (collectively, "Defendants") will move to dismiss the Complaint in its entirety.

The issues to be decided are whether the Complaint should be dismissed because: (1) Section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("Section 230"), bars the claims; (2) the First Amendment bars the claims; (3) Plaintiffs otherwise fail to state any claim upon which relief can be granted; (4) Plaintiffs fail to plead their fraud-based claims with particularity; and (5) the Becca Schmill Foundation ("Foundation") lacks Article III standing. The grounds for this motion are set forth in the accompanying Memorandum of Points and Authorities, the pleadings and papers on file in this matter, and upon such matters as may be presented before or at the time of the hearing on this Motion.

## I.    INTRODUCTION

This case is about Defendants' alleged failure to remove certain third-party videos found on YouTube and TikTok after Plaintiffs submitted complaints about the videos' content.

Plaintiffs assert they are "modern-day champions and vigilantes," Compl. ¶ 7, who "have been going online, searching for and reporting choking videos and other harmful videos they find to social media and video streaming platforms," *id.* ¶ 8. They each allegedly sent "safety reports" to YouTube and TikTok to flag what Plaintiffs deemed "dangerous content." *Id.* ¶¶ 9, 144. Plaintiffs seek to represent "[a]ll people who used TikTok and YouTube and who made safety reports through the process set forth by Defendants." *Id.* ¶¶ 8, 144. At bottom, each of their product liability, negligence and state consumer protection claims are grounded in Plaintiffs' disagreement with Defendants' content moderation decisions. Their claims must be dismissed for multiple independent reasons.

*First*, all claims are barred by Section 230, which prevents interactive communications services, including Defendants, from being held liable for their editorial decisions to publish third-

party content, whether allegedly harmful or not, including decisions whether or not to remove such content. This is a paradigmatic case for applying Section 230—"a provision enacted to protect websites against the evil of liability for failure to remove offensive content," and to disincentivize them from "bury[ing] their heads in the sand and ignor[ing] problematic posts altogether [to] escape liability." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008) (en banc). The contrary rule Plaintiffs seek here would punish providers like Defendants that adopt content moderation policies and make Section 230 a dead letter.

*Second,* Plaintiffs' claims are independently barred by the First Amendment, which extends to social media companies' decisions to "filter, prioritize, and label the various messages, videos, and other content their users wish to post." *Moody v. NetChoice LLC*, __ S. Ct. __, 2024 WL 3237685, at *5 (July 1, 2024).

*Third*, the individual claims suffer from numerous pleading defects, requiring dismissal:

- Count I (strict product liability) fails because Defendants' content moderation processes are not a "product" subject to product liability law, and Plaintiffs do not claim physical injury resulting from Defendants' alleged failure to remove content in response to Plaintiffs' reports.

- Count II (negligence) fails because Plaintiffs do not, and cannot, allege a cognizable legal duty of care to remove content or protect against "harmful" videos uploaded by third parties.

- All claims fail because even assuming Plaintiffs suffered emotional harm, that harm was not proximately caused by Defendants' failure to remove videos in response to Plaintiffs' safety reports, nor was it reasonably foreseeable.

- Counts III-VIII (fraud-based claims) are defective because Plaintiffs fail to plead fraud with particularity, and their general allegations of fraud are contradicted by other allegations in the Complaint, and for the state statutory claims (Counts V-VII), Plaintiffs do not plead the requisite ascertainable loss or that Defendants engaged in any "unfair or deceptive" conduct as part of a commercial transaction.

The Court should dismiss the Complaint with prejudice because the legal defenses and

1  defects apparent from the fact of the pleading cannot be cured through amendment.

2  **II.     BACKGROUND**

3      **A.     Defendants' Video Reporting and Review Processes.**

4          YouTube and TikTok are "popular video streaming applications" on which third-party users

5  can post and watch videos. Compl. ¶ 12.[1] As the Complaint alleges, both YouTube and TikTok

6  have robust video reporting and review processes. YouTube and TikTok publish Community

7  Guidelines that explain the types of content that are prohibited on their services. *Id.* ¶ 17.

8          YouTube enforces its Community Guidelines "using a combination of human reviewers

9  and machine learning." *Id.* ¶ 17, n.9. YouTube invites users to anonymously report videos that may

10  violate the Community Guidelines. *Id.* ¶ 17, n.8. Reported content is "not automatically taken

11  down." *Id.* Following the review process, a reported video may remain on YouTube, be age-

12  restricted, or be removed entirely. *Id.* ¶¶ 17, n.8, 134. When users submit a report, they receive an

13  automated message stating "*[i]f we find this content to be in violation* of our <u>Community</u>

14  <u>Guidelines</u>, we will remove it." *Id.* ¶¶ 69-70 (emphasis added). Users can view their report history

15  to check if a reported video has been removed. *Id.* ¶ 17, n.8.

16          TikTok also "set[s] forth a process for a user to report videos that they believe to be

17  harmful." *Id.* ¶¶ 111-15. "Once [a] user reports a video, they receive a confirmation message for

18  their report stating: 'Thanks for reporting. We'll review your report and take action *if there is a*

19  *violation* of our Community Guidelines.'" *Id.* ¶ 115 (emphasis added). Users can check the status

20  of their "Reports," and reported videos may ultimately be "removed … for violating [TikTok's]

21  Community Guidelines" or deemed to not violate TikTok's Community Guidelines. *Id.* ¶¶ 115-16.

22  If TikTok determines that a video does not violate the Community Guidelines, it advises users that

23  TikTok "understand[s] that you may not want to see this type of content, and you have the option

24  to block the account that posted it." *Id.* ¶ 117.

25  ───────────────

26  [1]  For purposes of this motion only, Defendants accept as true certain non-conclusory factual allegations in the Complaint. For the avoidance of doubt, Defendants dispute and do not concede

27  the accuracy of Plaintiffs' claims and allegations, including about the nature of Defendants' businesses and responsibility for purported harms, and expressly reserve the right to challenge any

28  such allegations in any later phase of litigation.

### B.    Plaintiffs' Claims.

Plaintiffs are four individuals and a foundation, Compl. ¶¶ 43-46, who allege various common law and state law statutory claims arising from "content reporting features Defendants created, designed, and marketed to members of the public." *See, e.g.*, *id*. ¶¶ 8, 10, 12, 17.[2] Each Plaintiff alleges using one or both of Defendants' content-reporting functions to report third-party videos for moderation. *Id.* ¶¶ 144, 147-49. They seek to represent a national class and three state subclasses (Indiana, Oregon, and Wisconsin) of users who reported videos to YouTube or TikTok or both. *See id.*

In Plaintiffs' view, Defendants' processes to remove reported content is "flawed" and "the reporting features yielded arbitrary and contradictory decisions" over whether to remove reported content. *See, e.g.*, *id.* ¶¶ 10, 15. They allege that Defendants did not remove content that Plaintiffs reported, and that these determinations caused Plaintiffs "to feel emotional distress, anxiety, helplessness, invalidation, grief, re-traumatization, and frustration," and to feel that Plaintiffs had "waste[d] valuable time" and resources in making the reports.[3] *Id.* ¶¶ 75, 86, 96, 103, 167.

Plaintiffs' claims seek to impose a duty on Defendants to monitor and remove third-party content and videos on their platforms in a particular way:

- Plaintiffs are "reporting" specific videos or types of content. *See, e.g.* Compl. ¶ 8 ("Plaintiffs have been going online, searching for and reporting choking videos and other harmful videos they find to the social media and video streaming platforms."), *id.* ¶ 19 (Plaintiffs "took the role of reporting harmful contents"), *id.* ¶¶ 31, 37.

- Plaintiffs seek to impose duties on Defendants "to take down" and "remove" third-party videos. *See, e.g., id.* ¶¶ 4, 28 (Plaintiffs "flag and report the harmful content so that it may be removed.")

- Plaintiffs' asserted harm arises from seeing third-party videos hosted on—and not

---

[2] Plaintiffs each discuss individual losses to their families. Defendants deeply sympathize with Plaintiffs and their families for those losses. But this case is not about those experiences. It is about "safety reports" Plaintiffs allegedly sent to Defendants to request removal of what Plaintiffs deemed "dangerous content." Compl. ¶¶ 9, 144.

[3] Although Plaintiff Doe purports to represent a class against YouTube, the Complaint contains no allegations that Doe reported any videos on YouTube. Accordingly, Plaintiff Doe lacks standing to pursue these claims. *Food & Drug Admin. v. All. for Hippocratic Med.*, 144 S. Ct. 1540, 1556 (2024) ("The injury in fact requirement prevents the federal courts from becoming a vehicle for the vindication of the value interests of concerned bystanders." (citation omitted)).

removed from—online services. *See, e.g.*, *id.* ¶¶ 4 (alleging distress after being informed of "a video containing harassment and bullying messages against her son was going viral"), *id.* ¶ 9 (alleging grief when reported videos are deemed not to violate guidelines and left on platforms), *id.* ¶ 32.

- All references to "content moderation," or "arbitrary enforcement," or "defective" responses refer to Plaintiffs' disagreement with Defendants' editorial decisions about specific third-party videos: namely, the failure to remove content. *See, e.g.*, *id.* ¶ 4 (objecting to automatic message that video "would not be removed as it did not violate any of its platform's guidelines or policies"), *id.* ¶ 14 (challenging "moderation" for failing to understand "the nuances of content versus context"), *id.* ¶ 20 (faulting failure "to meaningfully respond to reports of harmful contents"), *id.* ¶ 25 (asserting "materials containing obvious violations" "have remained up for years").

### C.    Procedural History.

On February 1, 2023, Plaintiffs filed this lawsuit against Defendants in the Southern District of Indiana. Defendants filed motions to dismiss for lack of personal jurisdiction under Rule 12(b)(2), or in the alternative, to transfer the case to the Northern District of California. ECF Nos. 38-41. Defendants also moved to dismiss the case for failure to state a claim under Rule 12(b)(6), for failure to plead fraud with particularity under Rule 9(b), and, as to the Foundation, for lack of subject-matter jurisdiction under Rule 12(b)(1). On March 28, 2024, the Southern District of Indiana ordered the case transferred to this Court pursuant to 28 U.S.C. § 1404(a), without reaching Defendants' substantive arguments. ECF No. 62.

## III.    LEGAL STANDARDS

To survive a Rule 12(b)(6) dismissal, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[L]abels and conclusions, and a formulaic recitation of the elements" are insufficient. *Id.* at 555. For claims grounded in fraud, like most claims here, Rule 9(b) requires a plaintiff to "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading … and why[.]" *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation omitted). "Threadbare recitals" of a cause of action "do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

1    In resolving a motion to dismiss, courts consider the pleadings in their entirety, including

2    "documents attached to the complaint, documents incorporated by reference in the complaint, or

3    matters of judicial notice—without converting the motion to dismiss into a motion for summary

4    judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "When a general conclusion

5    in a complaint contradicts specific facts retold in a document attached to the complaint,

6    incorporated by reference in the complaint, or subject to judicial notice, those specific facts are

7    controlling." *In re Finjan Holdings, Inc. Sec. Litig.*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023). Post-

8    transfer, Ninth Circuit law governs Defendants' federal defenses to Plaintiffs' claims and all issues

9    concerning federal procedure. *Newton v. Thomason*, 22 F.3d 1455, 1460 (9th Cir. 1994) ("[A]

10   transferee court in this circuit is bound only by [this] circuit's precedent").

11   **IV.    ARGUMENT**

12       **A.    Section 230 Bars Plaintiffs' Claims.**

13       Plaintiffs' claims are all premised on the theory that Defendants failed to remove third-party

14   content that supposedly violated their guidelines. These claims fall within the heartland of Section

15   230, which bars claims against: "(1) a provider or user of an interactive computer service (2) whom

16   a plaintiff seeks to treat … as a publisher or speaker (3) of information provided by another

17   information content provider." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009).[4]

18       In enacting Section 230, Congress recognized that "[m]aking interactive computer services

19   and their users liable for the speech of third parties would severely restrict the information available

20   on the Internet." *Batzel v. Smith*, 333 F.3d 1018, 1027-28 (9th Cir. 2003). The provision reflects

21   the policy choice to protect online service providers from liability for removing "some—but not

22   all—offensive material from their websites" because it "incentivized companies to neither restrict

23   content nor bury their heads in the sand in order to avoid liability." *Bennett v. Google, LLC*, 882

24   F.3d 1163, 1166 (D.C. Cir. 2018); *see also In re Apple Inc. App Store Simulated Casino-Style

25   Games Litig.*, 625 F. Supp. 3d 971, 980 (N.D. Cal. 2022) (explaining that Congress enacted Section

---

[4] Defendants undisputedly provide "interactive computer services." *See Kifle v. YouTube LLC*, 2021 WL 10331555, at *3 (N.D. Cal. Oct. 5, 2021) (collecting cases and noting that "multiple courts in the Northern District have held that YouTube is a provider of interactive computer services within the meaning of Section 230(c)(1).").

230's "broad immunity" because it feared that "the specter of liability would deter service providers from blocking and screening offensive material" and it "would be impossible for service providers to screen each of their millions of postings for possible problems."), *appeal dismissed and remanded sub nom. In re Facebook Simulated Casino-Style Games Litig.*, 2024 WL 2287200 (9th Cir. May 21, 2024). Accordingly, the Ninth Circuit has recognized that "Congress sought to spare interactive computer services this grim choice by allowing them to perform some editing on user-generated content without [] becoming liable for all [] otherwise unlawful messages that they didn't edit or delete." *Roommates.com*, 521 F.3d at 1170-71. A contrary rule would cause "Internet service providers … to abandon efforts to eliminate such material from their site." *Batzel*, 333 F.3d at 1129.

As the Ninth Circuit has explained, "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under Section 230." *Roommates.com*, 521 F.3d at 1170-71; *see also Loomer v. Zuckerberg*, 2023 WL 6464133, at *13 (N.D. Cal. Sept. 30, 2023) (Section 230 immunity applied where plaintiff's claims challenged "decisions by Facebook and Twitter to exclude third parties' content")*. More plainly, where "the duty at issue" would "necessarily require an internet company to monitor third-party content," Section 230 bars the claim. *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682 (9th Cir. 2019) *see also Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 742 (9th Cir. 2024) ("If [the duty] obliges the defendant to 'monitor third-party content'—or else face liability—then that too is barred by § 230I(1)." (citation omitted)); *Barnes*, 570 F.3d at 1105-06 (affirming dismissal of negligent undertaking claim challenging Yahoo!'s failure to remove indecent profiles); *Diep v. Apple*, 2024 WL 1299995, at *1 (9th Cir. Mar. 27, 2024) (affirming dismissal of claims targeting Apple's failure to remove app from App Store); *Unknown Parties v. Google LLC*, 2024 WL 1892291, at *1 (N.D. Cal. Apr. 29, 2024) (dismissing claims premised on YouTube "provid[ing] a platform" to user who "ran several YouTube channels" that he used to "groom and lure underage girls"); *Gavra v. Google, Inc.*, 2013 WL 3788241, at *2 (N.D. Cal. July 17, 2013) (dismissing claims premised on YouTube's failure to remove allegedly defamatory videos reported by plaintiffs).

1.     **Plaintiffs' Claims Arise from Third-Party Content.**

Section 230 bars any claim that seeks to hold an interactive computer service liable for content posted on the internet "by someone else." *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1140 (9th Cir. 2022). Plaintiffs do not allege that Defendants created or developed the videos at issue in this lawsuit (nor could they). The claims are about third-party content that Plaintiffs deem "harmful." *See, e.g.*, Compl. ¶ 8. The proposed class is "all people who made reports to YouTube or TikTok … regarding *content that violates the respective platform's policies*…" *Id.* ¶ 37 (emphasis added). This is clearly a case about information provided by "another information content provider." *Igbonwa v. Facebook, Inc.*, 2018 WL 4907632, at *6 (N.D. Cal. Oct. 9, 2018) (websites that merely provide a "means by which third parties can post information" do not develop content), *aff'd,* 786 F. App'x 104 (9th Cir. 2019); *see also Divino Grp. LLC v. Google LLC*, 2022 WL 4625076, at *17 (N.D. Cal. Sept. 30, 2022) (DeMarchi, J.) (dismissing UCL claim with prejudice under Section 230 and noting that "[n]othing in the TAC alleges or supports a plausible inference that defendants create or develop any content by" posted by third parties).

2.     **Plaintiffs' Claims Treat Defendants as Publishers.**

Each of Plaintiffs' claims seeks, under different labels, to impose a duty on Defendants to "monitor third-party content" in the way Plaintiffs want "or else face liability." *Calise*, 103 F.4th at 742 (citation omitted). These claims "inherently require[] the court to treat" Defendants as the publisher of "content provided by another," and are barred by Section 230. *Barnes*, 570 F.3d at 1102.

The Ninth Circuit recently distilled a test to determine if a claim seeks to treat a defendant as a publisher. First, the court should evaluate "the 'right' from which the duty springs," and "if it springs from something separate from the defendant's status as a publisher, such as from an agreement, or from obligations the defendant has in a different capacity, then § 230(c)(1) does not apply." *Calise*, 103 F.4th at 742 (citation omitted). Second, the court should ask: "what is this duty requiring the defendant to do? If it obliges the defendant to 'monitor third-party content'—or else face liability, then that too is barred by § 230(c)(1)." *Id.* (citation omitted).

Here, each of Plaintiffs' claims springs from a publisher's duty to monitor and remove third-

party content or "else face liability." *Id*. Plaintiffs allege they "flag[ged] and report[ed] harmful content" on YouTube and TikTok "so that it may be removed per the platforms' own published guidelines and rules," but that Defendants failed to remove it. Compl. ¶ 28; *see also id.* ¶¶ 39-40, 152, 169, 179 (describing claims as stemming from Defendants' content "reporting" features, processes, or procedures). Plaintiffs allegedly suffered harm *only when* Defendants failed to remove the reported content. *See, e.g.*, Compl. ¶¶ 75, 86, 87, 103. Their theory squarely targets Defendants' decisions and processes to remove third-party content—the core of publication, which involves "deciding whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102; *see also Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014) ("the very essence of publishing is making the decision whether to print or retract a given piece of content"); *accord Calise*, 103 F.4th at 744 (affirming dismissal of claims that would require the defendant "to actively vet and evaluate third party ads" to avoid liability).

It makes no difference that Plaintiffs have asserted such claims under various different causes of action. As the Ninth Circuit has made clear, "what matters is not the name of the cause of action … what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1101-02. That is the case here. Plaintiffs' product liability claim asserts that Defendants' content reporting processes were "defective," "ineffective," "arbitrary," and "flawed." Compl. ¶ 167. But those processes clearly functioned, as Plaintiffs submitted reports and received responses. *Id.* ¶¶ 70, 83, 91-92, 111-117, 131-134. Thus, the purported "defect" only arises if Defendants did not remove the videos Plaintiffs reported, which requires treating Defendants as publishers of third-party content. *Id.* ¶¶ 167; *Barnes*, 570 F.3d at 1102. The negligence claim is much the same, describing a "duty to exercise reasonable care … to protect users from an unreasonable risk of harm arising out of the use of their apps." Compl. ¶ 177. The only "risk of harm" Plaintiffs identify, however, is viewing "harmful" third-party content *published by Defendants*. The misrepresentation claims are similarly predicated on a duty to remove third-party content. *Id.* ¶¶ 192-93, 206. Plaintiffs assert that Defendants' descriptions of their content reporting features are false *only* when Plaintiffs disagree with the outcomes of their reports, *i.e.*, the content is not removed. *Id.* ¶¶ 193, 199, 207.

The state consumer protection claims all concern allegedly deceptive trade practices that, as pleaded, hinge on the same duty to remove third-party content as the misrepresentation claims. *Id.* ¶¶ 214, 223, 232, 243.

Courts have consistently dismissed similar claims under Section 230. In *Barnes*, for example, the plaintiff's ex-boyfriend posted sexually explicit profiles of her containing an "open solicitation" for sex. *Barnes*, 570 F.3d at 1098. "In accordance with Yahoo policy [],", the plaintiff mailed Yahoo a signed statement requesting that the profiles be removed. *Id.* Later, a Yahoo employee indicated that the department responsible for stopping the unauthorized profiles would "take care of it." *Id.* at 1099. Yahoo failed to remove the profiles, and the plaintiff sued for negligent undertaking. The Ninth Circuit rejected the plaintiff's argument that this claim "would not treat Yahoo as a publisher" because "a plaintiff cannot sue someone for publishing third-party content simply by changing the name of the theory from defamation to negligence." *Id.* at 1102. Since "removing content is something publishers do, [] to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove." *Id.* at 1102-03. The same reasoning applies here.[5]

Likewise, in *L.W. v. Snap Inc.*, 675 F. Supp. 3d 1087, 1096 (S.D. Cal. 2023), the court held that Section 230 barred product liability, misrepresentation, and state consumer protection claims brought by the same counsel that filed this action. In *L.W.*, each claim hinged on the defendants' "failure to remove CSAM distributed on Snapchat by third parties and Apple and Google's choice to allow Snapchat to remain available for download in their online stores," and would require "treat[ing] Defendants as publishers or speakers." *Id.* at 1095-96. *See also Bride v. Snap Inc.*, 2023 WL 2016927, at *6 (C.D. Cal. Jan 10, 2023) (dismissing product liability, negligence, misrepresentation, and state consumer protection claims concerning app that permitted users to share anonymous messages because "Plaintiffs fundamentally seek to hold Defendants liable based on content published by anonymous third parties on their applications"); *Gavra*, 2013 WL 3788241,

---

[5] The Ninth Circuit's analysis of a breach of contract claim in *Calise* and a quasi-contract promissory estoppel claim in *Barnes* is irrelevant because there are no such claims here, and Plaintiffs cannot amend to add them, particularly given their prior declarations. *See Calise*, 103 F.4th at 743; *Barnes*, 530 F.3d at 1107; ECF Nos. 46-4 ¶ 4 (Plaintiff Bogard's statement that she did not agree to the YouTube TOS), 46-5 ¶ 5 (Plaintiff McGrath's statement re same).

at *1-2 (Section 230 immunized Google and YouTube against negligence and defamation claims premised on their alleged failure to remove videos that did not violate YouTube's "Privacy Guidelines"); *Winter v. Facebook, Inc.*, 2021 WL 5446733, at *5 (E.D. Mo. Nov. 22, 2021) (Section 230 barred negligence and other tort claims that sought to hold TikTok liable for allegedly "failing to follow their own Community Standards and taking down content that violates those standards"). Here, as in the above cases, the claims impose a duty to remove third-party content "or else face liability," *Calise*, 103 F. 4th at 742 (citation omitted), which Section 230 bars.

Plaintiffs cannot avoid Section 230 by characterizing their claims as "not predicated by the contents of a third-party," and "calling into question the reporting features that Defendants created, designed, and marketed … " Compl. ¶¶ 10, 38. As discussed, the essence of Plaintiffs' claims is their disagreement with Defendants' decisions about whether to publish third-party content: the supposed "defect" or negligent act is failing to remove content, not the abstract "design" of the reporting tools independent of the objectionable third-party content they allegedly allow to be published.[6] To be sure, the Complaint references "content[s]" over 150 times and "video[s]" over 50 times. Courts have repeatedly rejected similar attempts to circumvent Section 230 through artful pleading. *Barnes*, 570 F.3d at 1101-02; *Doe v. MySpace, Inc.*, 528 F.3d 413, 419-21 (5th Cir. 2008) ("artful pleading" that defendant "failed to implement basic safety measures" and was negligent for not taking more precautions" was "disingenuous," as these allegations were "merely another way of claiming that [MySpace] was liable for publishing the communications"); *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 930 (N.D. Cal. 2021) (Section 230 barred design defect claim premised on platform's alleged failure to prevent and remove harmful third-party content involving sexual trafficking of minors), *aff'd in part, rev'd in part on other grounds by Doe # 1 v. Twitter, Inc.*, 2023 WL 3220912, at *1-2 (9th Cir. May 3, 2023) (addressing non-design defect claims on interlocutory appeal); *Wozniak v. YouTube, LLC*, 100 Cal. App. 5th 893 (2024) (applying Section 230 to dismiss

---

[6] In *In re Social Media Adolescent Addiction/Personal Injury Products Liability Litigation*, 2023 WL 7524912, at *13 (N.D. Cal. Nov. 14, 2023) ("*In re Social Media MDL*"), the court dismissed product liability claims against YouTube and TikTok that challenged "continuous" feeds of content, publication of short-form content and videos, and algorithms for recommending content because the claims "directly target[ed] defendants' roles as publishers of third-party content," and would have required the defendants to change the ways in which they published such content. *Id.* That is precisely what Plaintiffs put at issue here.

Cooley LLP
Attorneys at Law
San Francisco

negligence claim that "seeks to hold YouTube liable for allowing the scam videos to be shown … and is predicated on that third party content").

Nor may Plaintiffs avoid Section 230 by alleging that "Defendants also had a special duty to respond to Plaintiffs' reports" based on their terms of service. Compl. ¶ 39. The court in *Klayman v. Zuckerberg* rejected an identical argument, finding that Facebook's terms of service did not create a "special relationship" between the service and its users when the "plain text" of those terms provided that "Facebook is not responsible for the actions, content, information, or data of third parties." 753 F.3d 1354, 1359 (D.C. Cir. 2014). So, too, here. As Plaintiffs concede, Defendants explain that not every report results in removal of content. Compl. ¶¶ 115-17 (the removal of specific content on TikTok is contingent on "if a reported content is deemed not in violation of guidelines"; ¶¶ 129-34 (acknowledging that YouTube explains "When content is reported, it's *not* automatically taken down" and that removal occurs only "[i]f YouTube determines that a reported content violates their guidelines.") (emphasis added).[7]

Even if the terms did not contain this language, "[s]tate law cannot predicate liability for publishing decisions on the mere existence of the very relationship that Congress immunized from suit." *Klayman*, 753 F.3d at 1360; *see, e.g.*, *Jackson v. Airbnb, Inc.*, 2022 WL 16753197, at *1 (C.D. Cal. Nov. 4, 2022) (dismissing defective design theories about Snapchat's processes for identifying and removing gun content because "the duty would necessarily require monitoring third-party content … Plaintiffs are clearly seeking to treat Snap as a speaker or publisher.").

---

[7] While Plaintiffs' own concessions dispel any alleged "special duty," their references to public terms and community guidelines only confirm that Defendants disclaim any liability for harmful content or promises about specific removal decisions. For example, TikTok's terms of service provide that "[w]e do not guarantee the accuracy, integrity, appropriateness or quality of any User Content, and under no circumstances will we be liable in any way for any User Content." *See* TikTok, Terms of Service (Nov. 2023), *available at* https://www.tiktok.com/legal/page/us/terms-of-service/en; Compl. ¶ 17 (incorporating by reference terms and guidelines). Similarly, YouTube's terms of service, also incorporated by reference, clearly inform users who upload content to YouTube that: "You are legally responsible for the Content you submit to the Service." *See* YouTube, Terms of Service (January 5, 2022), available at https://www.youtube.com/static?template=terms (by clicking "view prior version" hyperlink), ECF No. 39-2. YouTube also explains—in its Community Guidelines and in the very messages Plaintiffs received after they reported videos—that it will remove content only if YouTube finds a violation of the Community Guidelines. *See* YouTube, Community Guidelines, *available at* https://www.youtube.com/howyoutubeworks/policies/#community-guidelines/; Compl. ¶¶ 17 n.8, 69-70 (incorporating by reference terms and guidelines).

Section 230(c)(1) "by itself, shields from liability all publication decisions, whether to edit, to remove, or to post, with respect to content generated entirely by third parties." *Barnes*, 570 F.3d at 1105. That principle resolves this case.

### B.      Plaintiffs' Claims Are Barred by the First Amendment.

Beyond Section 230, Plaintiffs' claims are barred by the First Amendment, which protects the "expressive activity" of "[d]eciding on the third-party speech that will be included or excluded from a compilation." *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2024 WL 3237685, at *11 (July 1, 2024). This includes, as the Supreme Court has recently confirmed, social media platforms' "capacity to engage in content moderation—to filter, prioritize, and label the various messages, videos, and other content their users wish to post." *Id.* at *5.

The Supreme Court explained that "[l]ike the editors, cable operators, and parade organizers" of the past, "major social-media platforms are in the business, when curating their feeds, of combining 'multifarious voices' to create a distinctive expressive offering." *Moody*, 2024 WL 3237685, at *14. And that "expressive offering" "derive[s] largely from the platforms' editorial decisions about which posts to remove, label, or demote." *Id.* "'The choice of material,' the 'decisions made [as to] content,' the 'treatment of public issues'—'whether fair or unfair'—all these 'constitute the exercise of editorial control and judgment.'" *Id.* (quoting *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 258 (1974)). "Those choices rest on a set of beliefs about which messages are appropriate and which are not (or which are more appropriate and which are less so.")." *Id.* at *14. And "[w]hen the government interferes with such editorial choices … it alters the content of the complication," and "confronts the First Amendment." *Id.* at *11. In short, Defendants "ha[ve] important First Amendment rights that would be jeopardized by a Court order telling [them] what content-moderation policies to adopt and how to enforce those policies." *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186, 1188 (N.D. Cal. 2022), *aff'd sub nom. O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023) (collecting cases finding that online communication services have First Amendment editorial rights).

Here, Plaintiffs' claims target Defendants' "decisions" about published content—including whether the content should have been published at all, whether to remove it from publication, or

whether instead to continue to make it available to users. *See, e.g.*, Compl. ¶¶ 10, 30, Prayer for Relief § H-I (seeking third-party review and auditing of content moderation decisions and processes). These claims are fundamentally about the "exercise of [a publisher's] editorial control and judgment," and they are barred by the First Amendment. *Moody*, 2024 WL 3237685 at *13 (quoting *Tornillo*, 418 U.S. at 258); *see also* ECF 48-1 at 34-35 (*State of Indiana v. TikTok, Inc.*, Cause No. 02D02-2212-PL-400, Order Denying Motion for Preliminary Injunction (May 4, 2023) (rejecting State of Indiana's request for injunction against TikTok and noting, in part, that "a significant body of case law does exist regarding social media First Amendment Constitutional protections that would be offended" if injunctive relief were issued)). And that is no less true insofar as Plaintiffs allege that Defendants use algorithms to help determine whether to remove content. *Moody*, 2024 WL 3237685 at *14 ("The platforms write algorithms to implement those standards—for example, to prefer content deemed particularly trustworthy or to suppress content viewed as deceptive (like videos promoting 'conspiracy theories.'" (cleaned up)). Plaintiffs' effort to use state law to "alter[] the platforms' choices about the views they will, and will not, convey"—because they do "not like the way those platforms are selecting and moderating content"—is barred by the First Amendment. *Moody*, 2024 WL 3237685, at *14, *16.

### C.     Plaintiffs Cannot Plead a Product Liability Claim Against Defendants Because Defendants' Communication Services Are Not Products and Plaintiffs Do Not Allege Physical Harm (Count I).

Even apart from these federal protections, Plaintiffs' claims fail as a matter of state law. Start with product liability. While Plaintiffs allege that Defendants' "reporting feature[s]" are a "design defect" that subject Defendants to strict liability, Compl. ¶¶ 163-65, this is simply a misapplication of established product liability law, which only applies to tangible products, not to services or harm caused by intangible items, particularly those that relate to the publication of ideas or information. The Complaint does not allege which state's law applies to the strict product liability claim, but regardless, as explained below, there is no actual conflict of law among the laws of California, Indiana, Wisconsin, or Oregon on this issue. *See Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*, 991 F.2d 1501, 1506 (9th Cir. 1993) ("There is no true conflict unless the laws of

the two jurisdictions differ and both states have a legitimate interest in having their law apply.").[8]

And under each state's law, Plaintiffs claims fail.

### 1. Defendants' Video-Reporting Processes Are Not "Products."

The longstanding definition of "product" is "a *physical* article which results from a manufacturing process and is ultimately delivered to a consumer." *Pierson v. Sharp Mem'l Hosp., Inc.*, 216 Cal. App. 3d 340, 345 (1989) (emphasis added). Plaintiffs plead their claim under Section 402(a) of the Restatement (Second) of Torts, Compl. ¶ 164, which identifies "products" as "tangible items, such as tires, automobiles, and insecticides." *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034 (9th Cir. 1991) (citing Restatement (Second) of Torts § 402(a) (1965)). Every other relevant state or authority imposes a similar tangibility requirement. *See, e.g.*, Restatement (Third) of Torts § 19(a) (1998) (defining "product" as "tangible personal property distributed commercially for use or consumption"); *Alexander v. Beech Aircraft Corp.*, 952 F.2d 1215, 1220 (10th Cir. 1991) (Indiana would conclude that a "'product' means any tangible object or goods produced," such that a handbook's "instructions themselves are not a product"); Ind. Code Ann. § 34-6-2-114 ("product" "does not apply to a transaction that, by its nature, involves wholly or predominantly the sale of a service rather than a product"); *Kawczynski v. Am. Coll. of Cardiology*, 2016 WL 2770552, at *2 (W.D. Wis. May 13, 2016) ("The focus of products liability law is on tangible items, not intangible ideas or abstract concepts … ." (citing Restatement (Third) of Torts § 19)); *Ass'n of Unit of Owners Bridgeview Condominium v. Dunning*, 69 P.3d 788, 800 (Or. App. 2003) (adopting Second Restatement's definition of "products").

---

[8] For the state common-law claims, Defendants' arguments rely on legal principles that are common across the three states at issue, and it is not necessary to decide which state's law applies. Should the Court conduct a choice-of-law analysis for these claims, it must follow the transferor court's choice of law rules. *Ferens v. John Deere Co.*, 494 U.S. 516, 519 (1990). That analysis requires the application of California law. Under Indiana's *lex loci delicti* rule, the court applies the substantive laws of "the state where the last event necessary to make an actor liable for the alleged wrong takes place," *Simon v. United States.*, 805 N.E.2d 798, 805 (2004) (citation omitted). California law applies because Defendants are based there, and their content moderation decisions were made from California. Even assuming that this is one of the "rare cases" in which Indiana's alternative choice of law analysis might apply, *see id.* at 806, that analysis still leads to California. *Id.* (setting forth multi-factor test that considers "1) the place where the conduct causing the injury occurred; 2) the residence or place of business of the parties; and 3) the place where the relationship is centered.").

Plaintiffs here do not challenge a tangible "product." Instead, they target Defendants' processes for reviewing and taking down reported videos. That is a quintessential service. As Plaintiffs allege, these video-reporting processes are "reporting *feature[s]*" that are "part of [Defendants'] *services*." Compl. ¶ 165 (emphasis added); *see also id.* ¶ 146 ("Membership in the class shall be determined based on TikTok and YouTube's own records of persons who used their *services*." (emphasis added)). That is insufficient as a matter of law to give rise to product liability because "[s]ervices, even when provided commercially, are not products." *Jimenez v. Superior Ct.*, 29 Cal. 4th 473, 479 (2002); *see also, e.g.*, Restatement (Third) of Torts § 19 cmt. f ("Courts are unanimous in refusing to categorize commercially-provided services as products.").

Extending product liability law to encompass Defendants' content moderation and removal features would be unworkable and raise grave constitutional concerns. The "physical article" requirement is "a fundamental and reasonable" limitation in product liability law because the "defect in the article even if initially latent is ultimately objectively measurable." *Pierson*, 216 Cal.App.3d at 345. And this tangibility requirement ensures that product liability law does not lead to "significant constitutional problems under the First Amendment that ought to be avoided." *James v. Meow Media, Inc.*, 300 F.3d 683, 695 (6th Cir. 2002). Imposing product liability law on decisions about whether to permit or remove content would "seriously inhibit those who wish to share thoughts and theories," raising the "disturbing … prospect that we might be deprived of the latest ideas," and would not "take into consideration the unique characteristics of ideas and expression." *Winter*, 938 F.2d at 1034-35.

Plaintiffs' theory would implicate each of these concerns. There is no "objectively measurable," *Pierson*, 216 Cal.App.3d at 345, "defect" identified by Plaintiff. To the contrary, the Complaint acknowledges that content moderation requires applying a platform's guidelines to specific content, relies on a mix of human review and machine learning, and is "nuanced." *See, e.g.*, Compl. ¶¶ 17, 123. Courts have repeatedly declined to extend product liability to encompass those nuanced aspects. At its core, Plaintiffs' theory targets Defendants' choices of whether to permit content on their services: the supposed "defects" are a series of context-specific decisions not to remove particular pieces of content that users may have flagged for any number of different

reasons. This is the antithesis of the kind of standardized consumer products that are the province of product liability law. Moreover, the concern about extending product liability law to ideas and expression is particularly pertinent here, where Plaintiffs seek to have Defendants "change their algorithms for content moderation," Compl. ¶ 88, impose new and different processes for content review and removal based on their disagreement with Defendants' editorial decisions (*id.*, Prayer for Relief § H), and ultimately make the choice to remove more third-party content from their services.

Courts around the country agree that product liability law does not apply in similar situations. *See, e.g.*, *Social Media Cases*, 2023 WL 6847378, at *20 (Cal. Super. Oct. 13, 2023) (dismissing product liability claims; TikTok and YouTube not a "product"); *Jacobs v. Meta Platforms, Inc.*, 2023 WL 2655586, at *4 (Cal. Super. Ct. Mar. 10, 2023) (dismissing product liability claim; "as a social media platform that connects its users, Facebook is more akin to a service than a product"); *Ziencik v. Snap, Inc.*, 2023 WL 2638314, at *4 (C.D. Cal. Feb. 3, 2023) (Snapchat is not a "product"); *Est. of B.H. v. Netflix, Inc.*, 2022 WL 551701, at *3 (N.D. Cal. Jan. 12, 2022) ("numerous authorities" conclude that "[t]here is no strict [product] liability for books, movies, or other forms of media"); *Quinteros v. InnoGames*, 2022 WL 898560, at *1, *7 (W.D. Wash. Mar. 28, 2022) (website and mobile app that enabled "interaction between online players … over chat and other message systems" offered a service, "not a product"), *aff'd in part, rev'd in part on other grounds*, 2024 WL 132241, at *4 (9th Cir. Jan. 8, 2024).[9] The same reasoning applies here and mandates dismissal of Plaintiffs' strict product liability claim.

---

[9] Plaintiffs may point to the decision in *In re Social Media MDL*. There, "the Court analyze[d] whether the various functionalities of defendants' platforms challenged by plaintiffs are products," an approach no other court has adopted. Among the court's rulings was that requiring users "to create or log in" to the platform to report child sexual abuse material was sufficiently pled as a defective "product" feature because it challenged the "design" of the platform. 2023 WL 7524912, at *34. Critically, the plaintiffs did not target the *determination whether* something was reportable content. Thus, even taking the court's decision as it is, the "defect" at issue here is not the design of the reporting tools, whether a user must log in, or the interfaces: Plaintiffs' theory instead squarely targets content and Defendants' moderation decisions. Their theory would require Defendants to "remov[e] or restrict[] … content," Compl. ¶ 120, which is precisely what the *In re Social Media MDL* court found barred by Section 230. *See supra* Section IV.A.

**2.      Plaintiffs Do Not Allege Physical Injury.**

The product liability claim separately fails because Plaintiffs fail to plead a physical harm. Section 402(a) only applies when a product causes "physical harm … to the ultimate user or consumer, or to his property." "Without exception, the Restatement sections applicable to negligence products liability claims require physical harm as a basis for liability." *Kent v. Shiley Inc.*, 1989 WL 88307, at *2 (D. Or. Jan. 24, 1989). Allegations of "emotional harm," without "injury to person or property," are not sufficient. *Holland v. TD Ameritrade, Inc.*, 2012 WL 592042, at *7 (E.D. Cal. Feb. 22, 2012), *report and recommendation adopted,* 2012 WL 13046349 (E.D. Cal. Mar. 21, 2012); *see also Rogers v. R.J. Reynolds Tobacco Co.*, 557 N.E.2d 1045, 1056 (Ind. Ct. App. 1990) ("[D]amages for emotional distress are recoverable only when accompanied by physical injury[.]"); *Forth v. Gen. Motors Corp.*, 1989 WL 83600, at *2 (E.D. Pa. July 24, 1989) ("[L]iability under § 402A is limited to physical harm and thus there can be no recovery for mental anguish and humiliation in the absence of physical injury.").

Plaintiffs do not plead any physical harm. Instead, they claim they "re-experience[d] trauma and grief" and "suffered severe mental harm, leading to emotional distress, pain, and suffering" when the videos they reported were not removed. Compl. ¶¶ 9, 171. Plaintiffs do not (and cannot) claim that Defendants' responses to Plaintiffs' content reports caused physical injury, and their claimed emotional injuries from seeing objectionable content that they would prefer Defendants to remove simply are not cognizable. The only other alleged injury—that the content reports were "a futile waste of time," *id.* ¶ 171—is, at best, a claim for economic loss, which also is not permitted under product liability law. *Jimenez.*, 29 Cal. 4th at 482 ("Damages available under strict products liability do not include economic loss."). The claim should be dismissed; *accord Holland*, 2012 WL 592042, at *7 (dismissing strict product liability claim premised only on allegations of "financial injury" and "emotional harm"); *Forth*, 1989 WL 83600, at *2 (dismissing strict product liability claim for failure to allege "physical damage to … vehicle"); Ind. Code Ann. § 34-20-1-1 (limiting product liability to claims "for physical harm caused by a product").

**D.      Plaintiffs' Negligence Claim Fails Because They Do Not Adequately Plead That Defendants Owed Them a Duty (Count II).**

Plaintiffs' ordinary negligence claim fails because it requires pleading "the existence of a duty to exercise due care," *Dyroff v. Ultimate Software Group*, 2017 WL 5665670, at *12 (N.D. Cal. Nov. 26, 2017), *aff'd*, 934 F.3d 1093 (9th Cir. 2019), and Plaintiffs allege no cognizable duty. *See also Winter*, 938 F.2d at 1037 ("[F]or negligence to be actionable, there must be a legal duty to exercise due care."). It is not enough to "simply state[] that there is or ought to be a duty … the duty alleged must be one recognized by the law." *Boring v. Google, Inc.*, 598 F. Supp. 2d 695, 701 (W.D. Pa. 2009) (dismissing negligence claim for lack of duty), *rev'd in part on other grounds*, 362 F. App'x 273 (3d Cir. 2010).

The Complaint offers bare assertions that Defendants owed duties to Plaintiffs, such as to "exercise reasonable care and caution in designing, maintaining, and distributing their product to minors," to "protect users from an unreasonable risk of harm arising out of the use of their apps," and "to provide adequate warnings to users and those making reports about the dangers associated with their reporting system." Compl. ¶¶ 177, 181. The Court is "not bound to accept as true" these "legal conclusion[s]," *Twombly*, 550 U.S. at 555, and in any event, publishers do not owe a legal "duty to investigate the accuracy of the contents" of the media they publish. *Winter*, 938 F.2d at 1037. It is well-established that websites do not owe a legal duty to users to monitor or remove content. *See, e.g.*, *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1101 (9th Cir. 2019) ("No website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content."); *Boring*, 598 F. Supp. 2d at 701 (dismissing negligence claim resting on general allegations that Google "has a duty of care to the public to utilize proper internal controls," to avoid trespassing on Plaintiff's private property and "has a duty to utilize proper methods and controls"). Nor do websites owe a legal duty to users to prevent self-harm when the duty is premised on "content and [its] dissemination." *See Est. of B.H.*, 2022 WL 551701, at *3 (defendant website owed no duty to minor); *Herceg v. Hustler Mag., Inc.*, 565 F. Supp. 802, 802 (S.D. Tex. 1983) (rejecting theory that a magazine that described asphyxiation owed "a duty of social responsibility" to the plaintiffs).

Plaintiffs cannot manufacture a duty by analogizing Defendants' reporting process to "a rescuer" or "a safety hotline." Compl. ¶ 178. The Complaint offers no support for these conclusory and baseless allegations, which would impose limitless and arbitrary duties on any company that offers reporting tools to customers, from food delivery to the cable company. And Plaintiffs do not explain how their relationship with Defendants creates an affirmative duty to act or how the public interest would be served by imposing such a sweeping duty. *See, e.g.*, *Jane Doe No. 1 v. Uber Techs., Inc.*, 79 Cal. App. 5th 410, 427 (2022) (Uber did not owe duty to protect passengers from a scheme that caused plaintiffs to be assaulted because violence was not a "necessary component" of Uber's business model); *Twitter, Inc., v. Taamneh*, 598 U.S. 471, 501 (2023) ("Because plaintiffs' complaint rests so heavily on defendants' failure to act, their claims might have more purchase if they could identify some independent duty in tort that would have required defendants to remove ISIS' content. But plaintiffs identify no duty that would require defendants or other communication-providing services to terminate customers after discovering that the customers were using the service for illicit ends." (internal citations omitted)).[10]

In any event, any such hypothetical duty is contradicted by Congress' decision to bar liability against platforms for failing to prevent harms relating to third-party content. *See Dyroff*, 2017 WL 5665670, at *14 (collecting authority "that a website has no 'special relationship' with its users"); *Winter*, 2021 WL 5446733, at *6 (rejecting argument that by promulgating Community Standards, Facebook and TikTok had created and breached a duty of care by failing to remove objectionable content, holding "[S]tate law cannot predicate liability for publishing decisions on the mere existence of the very relationship that Congress immunized from suit").

### E.   All Claims Fail Because There Is No Proximate Causation, and Plaintiffs' Alleged Injuries Were Not Reasonably Foreseeable.

Plaintiffs' claims fail for the additional reason that their alleged injuries are not causally or foreseeably connected to Defendants' alleged conduct, a required element of all claims. In the

---

[10] *See also Buchler v. State By and Through Oregon Corrections Div.*, 316 Or. 499, 504-05 (1993) (no "special relationship" giving rise to affirmative duty to protect between correctional institution and members of public injured and killed by escaped prisoner); *Hawn v. Padgett*, 598 N.E.2d 630, 634 (Ind. Ct. App. 1992) (no special relationship between owner of truck and plaintiff injured by third-party negligent driver); *Winslow v. Brown*, 125 Wis. 2d 327, 331 (1985) (no special relationship between vehicle passenger and plaintiff injured by driver).

product liability context, Plaintiffs must plausibly allege that Defendants' "product causes injury while the product is being used in a reasonably foreseeable way." *Shih v. Starbucks Corp.*, 53 Cal. App. 5th 1063, 1067 (2020). "[W]here there is an independent intervening act that is not reasonably foreseeable, the defendant's conduct is not deemed the 'legal' or proximate cause." *Riggs v. Apple, Inc.*, 2017 WL 4018064, at *2 (Cal. Super. Ct. Aug. 24, 2017) (quoting 6 Witkin, Summary of California Law Torts §1186 (10th ed. 2005); *Control Techniques v. Johnson*, 762 N.E.2d 104, 108 (Ind. 2002) ("[T]he harm must have been reasonably foreseeable by the defendant."); *Doull v. Foster*, 163 N.E.3d 976, 983 (Mass. 2021) (similar); *Lasley v. Combined Transp., Inc.*, 261 P.3d 1215, 1219 (Or. 2011) (similar); *Tesar v. Anderson*, 789 N.W.2d 351, 363 (Wis. App. 2010) (similar). The same foreseeability requirement applies to negligence and misrepresentation claims. *See, e.g., Dillon v. Legg*, 68 Cal. 2d 728, 739 (1968) ("In order to limit the otherwise potential infinite liability which would follow every negligent act, the law of torts holds defendant amenable only for injuries to others which to defendant at the time were reasonably foreseeable."); *Karimi v. Wells Fargo*, 2011 WL 10653746, at *2 (C.D. Cal. May 4, 2011) (dismissing fraudulent misrepresentation claim because plaintiffs' injuries were not proximately caused by the alleged misrepresentation).

Here, the original and direct causes of Plaintiffs' alleged emotional harm were the tragic losses of their children, but this lawsuit does not (and cannot) seek to hold Defendants liable for those losses. *See, e.g.*, Compl. ¶ 87 ("Because of the tragedy that happened to Griffin, [McGrath] could not return to work for three years."). Rather, Plaintiffs focus on the later period *after* their children's deaths when Plaintiffs affirmatively sought out, viewed, and reported new "choking videos and other harmful videos." Compl. ¶¶ 6-8. To the extent Plaintiffs allege emotional harm from this "re-experience," their self-exposure to specific triggering content is not attributable to (or foreseeable by) Defendants and is clearly barred by Section 230. *See, e.g., id.* ¶ 8-9; *supra* Section IV.A (citing cases prohibiting intermediary platforms from being liable for harmful content).

Unable to recover for their original losses or their subsequent exposure to specific videos, Plaintiffs shift to alleging they were harmed by receiving "canned responses" that the reported videos did not violate Defendants' Community Guidelines. *Id.* ¶ 9. But these responses were not

the proximate cause of any cognizable harm to each individual Plaintiff (let alone the proximate cause of similar and repeatable harm to an entire putative class). Indeed, proximate causation fails at the first step when Plaintiffs concede that *their* independent choices and actions started the chain that eventually (but not always) resulted in responses they found unsatisfactory. Plaintiffs do not (and cannot) allege this was reasonably foreseeable to Defendants. *See Wawanesa Mut. Ins. Co. v. Matlock*, 60 Cal. App. 4th 583, 588 (1997) (dismissing when alleged harm was not "*reasonably* within the scope of the risk created by the initial act").

Courts examining similar alleged chains of causation have found them inadequate and not reasonably foreseeable. For example, the court in *Riggs* rejected a theory of liability premised on the claim that Apple had caused a car accident by failing to design the iPhone to disable incoming messages while driving, which allegedly caused the plaintiff's death where the oncoming driver was texting while driving. The court dismissed the claim as a matter of law, finding "[t]he chain of causation … is far too attenuated for a reasonable person to conclude that Apple's conduct is or was a substantial factor in causing plaintiffs' harm." *Riggs,* 2017 WL 4018064, at *4 (citing *Meador v. Apple, Inc.*, 2016 WL 7665863, at *4 (E.D. Tex., Aug. 16, 2016)). *See also, e.g.*, *Fields v. Twitter, Inc.*, 881 F.3d 739, 749-50 (9th Cir. 2018) (finding no proximate cause for allegations that Twitter "facilitated the organization's growth and ability to plan and execute terrorist acts"); *Taamneh*, 598 U.S. at 503 ("The fact that some bad actors took advantage of these platforms is insufficient to state a claim that defendants knowingly gave substantial assistance and thereby aided and abetted those wrongdoers' acts. And … a contrary holding would effectively hold any sort of communication provider liable for any sort of wrongdoing merely for knowing that the wrongdoers were using its services and failing to stop them," which would "run roughshod over the typical limits on tort liability.").[11]

---

[11] *See also, e.g.*, *Gamache v. Airbnb, Inc.*, 2017 WL 3431651, at *2-3 (Cal. Ct. App. Aug. 10, 2017) ("Airbnb's facilitation of some number of short-term rentals in Plaintiffs' building … does not render Airbnb a proximate cause of the alleged harms."); *Fast Eddie's v. Hall*, 866 N.E.2d 1270, 1274 (Ind. App. 1997) (bar's alleged negligence in allowing female patron to become intoxicated was not foreseeable cause of her murder by male patron whose advances she had rejected); *Allen v. Shiroma*, 266 Or. 567, 570 (1973) (defendant not liable for injuries sustained by plaintiff when he asked an unlicensed driver to move his car while he was assisting defendant following an earlier

Thus, all of Plaintiffs' common-law tort claims must be dismissed for failure to plead foreseeability or proximate cause. *See, e.g.*, *Shih*, 53 Cal. App. 5th at 1070 (dismissing product liability claim because Plaintiffs' alleged injury "was not a foreseeable result of the alleged defects"); *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136, 155 (2018) (affirming dismissal of products liability and negligence claims arising from car accident for lack of causation because "the gap between Apple's design of the iPhone and the Modisettes' injuries is too great for the tort system to hold Apple responsible" (citation omitted)); *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 609 (2014) (dismissing misrepresentation claim because "[plaintiff] has not sufficiently pleaded a causal connection between any damages and any actionable conduct by the defendants"); *Karimi*, 2011 WL 10653746, at *2 (dismissing fraudulent misrepresentation claim because Plaintiffs' alleged damages, including emotional distress, were not the result of Defendant's allegedly fraudulent misrepresentation that Plaintiffs' property would not be foreclosed on while loan modification request was pending, but rather, were "the natural consequences of foreclosure, even when it is completely legal").

Plaintiffs' statutory tort claims—all based on Defendants' alleged misrepresentations about their content reporting procedures and processes—fail for the same reason. *See In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*, 2009 WL 3460218, at *5 (N.D. Ill. Oct. 20, 2009) (denying motion for class certification for IDCSA claim where plaintiffs did not adequately allege class members' damages were proximately caused by reliance upon misrepresentations); *Sherwood v. Finch*, 2000 WL 1862562, at *14 (D. Or. Dec. 20, 2000) (OUTPA's requirement that "plaintiffs prove that the 'ascertainable loss' was a result of defendant's violation" is "akin to a traditional proximate cause analysis"); *Haley v. Kolbe & Kolbe Millwork Co.*, 863 F.3d 600, 615 (7th Cir. 2017) ("[T]he absence of a reliance requirement does not relieve plaintiffs of the need to establish causation—i.e., that the alleged misrepresentation somehow caused them loss" under WDPTA); *Lorenzo v. Qualcomm Inc.*, 2009 WL 2448375, at *6 (S.D. Cal. Aug. 10, 2009) (dismissing UCL claim where the plaintiff's alleged injury was "at least three intermediaries car accident); *Cefalo v. Cont'l W. Ins. Co.*, 285 Wis. 2d 766, 780 (2005) (not foreseeable that defendant's negligence in overturning his truck would cause plaintiff to crash because emergency vehicles had responded and obstructed roadway).

between" the alleged claim); *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1135 (S.D. Cal. 2021) ("A plaintiff alleging false advertising or misrepresentation to consumers 'must show that the misrepresentation was an *immediate cause* of the injury-producing conduct.'") (emphasis in original). Accordingly, each of Plaintiffs' claims must be dismissed for failure to allege proximate cause and foreseeability.

### F.   Plaintiffs' Fraud-Based Claims Must Be Dismissed Because They Are Not Pled with Particularity Under Rule 9(b) and Suffer Numerous Claim-Specific Defects (Counts III-VIII).

Counts III-VIII (the "Fraud Claims") allege that Defendants made false statements about their content-reporting processes, and so are liable for common-law fraud claims and under Indiana, California, Wisconsin, and Oregon consumer protection statutes. These claims all sound in fraud, but plaintiffs fail to meet Rule 9(b)'s heightened pleading requirements. Each claim also fails because it is contradicted by Plaintiffs' own allegations and for various additional claim-specific reasons.

### 1.   The Fraud Claims Violate Rule 9(b).

Each Fraud Claim sounds in fraud, so Plaintiffs must meet Rule 9(b)'s heightened pleading standard identifying the "time, place and content of [the] allegedly false misrepresentation[s] and must set forth and explanation as to why the statement or omission complained of was false or misleading." *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548, 1559 (9th Cir. 1994) (en banc).[12]

---

[12] Plaintiffs' fraudulent misrepresentation claim (Count III), the Indiana Deceptive Consumers Sales Act ("IDCSA") claim (Count V), the Wisconsin Deceptive Trade Practices Act ("WDPTA") claim (Count VI), the Oregon Unfair Trade Practices Act ("OUTPA") claim (Count VII), and California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL") (Count VIII) all "sound in fraud." *See Gilmore v. Wells Fargo Bank N.A.*, 75 F. Supp. 3d 1255, 1271 (N.D. Cal. 2014) (applying Rule 9(b) to fraudulent misrepresentation claim); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (applying Rule 9(b) to state consumer fraud statutory claims); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (same); *Lynch v. DeMotte State Bank*, 2022 WL 4300455, at *4 (N.D. Ind. Sept. 19, 2022) ("[a]n incurable deceptive act [under the IDCSA] requires a showing of fraud and, thus, must be pled with particularity"); *Martell v. Gen. Motors LLC*, 492 F. Supp. 3d 1131, 1145 (D. Or. 2020) (applying Rule 9(b) to assess the sufficiency of plaintiff's OUTPA claim); *Great Pac. Sec. v. Barclays Cap., Inc.*, 743 F. App'x 780, 783 (9th Cir. 2018) (ruling alleged UCL and FAL claims "are subject to Rule 9(b)'s particularity standard"). Similarly, Plaintiffs' negligent misrepresentation claim (Count IV) rests entirely on the allegation that Defendants "made false representations," Compl. ¶ 206, and also is subject to Rule 9(b), *see, e.g.*, *Gilmore*, 75 F. Supp. 3d at 1270 ("The Court agrees with the line of cases that hold that negligent misrepresentation is a species of fraud, and, hence, must be plead in accordance with Rule 9(b).").

The Fraud Claims boil down to a theory that Defendants misrepresented their content-reporting processes in their respective policies. Compl. ¶¶ 17, 36, 120-21, 128-29, 191, 206, 214, 221, 242. But Plaintiffs fail to allege any facts—let alone with the particularity required by Rule 9(b)—from which it could be inferred that the statements in these policies were false or misleading when made. *Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1166 (N.D. Cal. 2011) (dismissing "vague and conclusory allegations" of negligent misrepresentation that lacked "any information as to the who, what, when, where, and how of the misconduct charged." (citation omitted)); *Murphy v. Roblox Corp.*, No. 3:23-cv-01940, ECF No. 47 at 14-15 (S.D. Cal. July 10, 2024) (dismissing misrepresentation and state consumer protection claims challenging statements in online platform's community guidelines for failure to comply with Rule 9(b)).

Instead, Plaintiffs aver their reports resulted in "an automated message stating that [the video] *did not violate*" TikTok's community guidelines or "were unheeded by YouTube," Compl. ¶¶ 24, 25 (emphasis added); *see also id.* ¶¶ 193, 243, and some of the videos reported by the Foundation were not removed from YouTube, *id.* ¶ 141. Nowhere do Plaintiffs explain how Defendants' determination that reported videos did not violate their guidelines amounts to a false statement. And these allegations do not constitute the "who, what, when, where, and how" of the purported fraud. The Complaint is devoid of any particulars about the videos allegedly reported, the policies the videos supposedly violated, which reports prompted the allegedly false statements, or when Plaintiffs discovered their reports were "unheeded." Plaintiffs also fail to allege *how* not removing some of the videos they reported would or could show that Defendants' entire video-reporting process was a deception, much less legally actionable. At most, Plaintiffs allege Defendants do not meet Plaintiffs' subjective standards of adequate review, *e.g.*, *id.* ¶ 21 (describing Defendants' purported "failure to provide meaningful review"), but that is worlds away from identifying any actual fraudulent statement. And Plaintiff's "upon information and belief" allegations about purportedly inadequate action (*e.g.*, *id*. ¶¶ 71, 85) are not sufficient. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010) ("Claims made on information and belief are not usually sufficiently particular, unless they accompany a statement of facts on which the belief is founded.").

**2.      The Fraud Claims Are Conclusory and Implausible.**

Beyond this pleading problem, the bare allegations Plaintiffs do make are contradicted by other allegations in the Complaint and its incorporated documents. The only alleged misrepresentations or deceptive statements Plaintiffs point to are general statements about: (1) types of third-party content not allowed on Defendants' services; (2) how to submit content reports; and (3) Defendants' processes for handling those reports. *See, e.g.,* Compl. ¶¶ 17-18, 69-70, 100, 187, 203, 210, 217, 238. But none of these statements say—or even imply—that Defendants will prevent all reported content from appearing on their services. *Id.* The statements also make clear that Defendants (not users) are responsible for deciding if third-party content violates the Community Guidelines. *Id.* ¶¶ 69-70 (YouTube in-app response to content report stating: "If *we* find this content to be in violation of our Community Guidelines, we will remove it." (emphasis added)); *see also id.* ¶ 17 (referencing TikTok Community Guidelines, which state: "If you discover content or accounts that may violate our guidelines, please let us know so we can take appropriate action *if warranted*." (emphasis added)).[13]

The fact that Plaintiffs may disagree with or dispute decisions not to remove the videos they reported is not a legally viable basis for a fraud or misrepresentation claim. But Plaintiffs do not identify any statement by Defendants that reporting a given video will yield a specific result, or that Defendants will remove *all* reported content, and the Complaint's incorporated documents contradict any such assertion. *Id.* ¶¶ 8-9, 17 n.8; 69-70, 100. Courts have dismissed complaints for similar shortcomings. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not … accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.").

Moreover, to the extent Plaintiffs are alleging that Defendants failed to fulfill alleged promises to "review and act upon harms that violate their policies." Compl. ¶ 192 (Count III); *see also id.* ¶¶ 206 (Count IV), 214 (Count V), 221-22 (Count VI), 231-32 (Count VII), 242-43 (Count VIII), their claim fails as a matter of law. For an actionable fraud or misrepresentation, the law

---

[13] *See also* Compl. ¶ 115 (alleging that when a TikTok user reports a video, "they receive a confirmation message for their report stating: 'Thanks for reporting. We'll review your report and take action if there is a violation of our Community Guidelines.'").

Cooley LLP
Attorneys at Law
San Francisco

"requires a representation of a 'past or existing material fact,'" making statements "about what defendants will do in the future" inadequate. *Regents of Univ. of Cal. v. Principal Fin. Grp.*, 412 F. Supp. 2d 1037, 1045 (N.D. Cal. 2006) (citation omitted); *see also, e.g.*, *Gibson v. Bankofier*, 275 Or. App. 257, 270 (2015) ("To qualify as a misrepresentation … a statement must consist of more than "mere broken promises, unfulfilled predictions or erroneous conjectures as to future events." (citation omitted)); *Chitwood v. A.O. Smith Harvestore Prod., Inc.*, 489 N.W.2d 697, 702 (Wis. Ct. App. 1992) ("[T]he false representation must relate to present or preexisting facts and cannot be merely unfulfilled promises or statements of future events."); *Kopis v. Savage*, 498 N.E.2d 1266, 1272 (Ind. Ct. App. 1986) ("[A]ctionable fraud arises from false representation of past or existing facts, not from representations as to future action or future conduct."); *Coe v. Ware*, 171 N.E. 732, 734 (Mass. 1930) ("False statements of opinion, of conditions to exist in the future, or of matters promissory in nature, ordinarily are not actionable.").

Accordingly, Plaintiffs' claims that Defendants committed actionable fraud by failing to apply their content-moderation policies as Plaintiffs would prefer fail as a matter of law.

### 3. Plaintiff Bogard's IDCSA Claim Is Deficient (Count V).

Plaintiff Bogard fails to state a claim under the IDCSA for several independent reasons.

The IDCSA only applies to consumer transactions in exchange for money or other valuable consideration—not free downloads of apps such as YouTube or TikTok (or voluntarily reporting objectionable third-party content on those services). The IDCSA prohibits a defendant from committing "an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." Ind. Code Ann. § 24-5-0.5-3. A "consumer transaction" is "a sale, lease, assignment, award by chance, or other disposition of an item of personal property, real property, a service, or an intangible … to a person for purposes that are primarily personal, familial, charitable, agricultural, or household, or a solicitation to supply any of these things." *Id.* § 24-5-0.5-2(a)(1). Courts have construed this language to limit the IDCSA to claims involving exchanges for money. *See, e.g.*, *Lawson v. Hale*, 902 N.E.2d 267, 269-71 (Ind. Ct. App. 2009) (alleged violation of IDCSA based on sale of a tractor for $8500 that leaked oil). The statute does not apply to *free* services. *See, e.g.*, ECF 48-1 at 32, *Indiana v. TikTok* Order (noting that a "consumer transaction" under the

IDCSA "does not stretch so far as to include download of" TikTok).

Moreover, Plaintiffs assert they watched and reported videos to "advocate for children's safety online by educating members of the public and urging lawmakers to regulate tech platforms to prevent harm to children." Compl. ¶ 7. But an alleged injury pursuant to such a purpose is not cognizable under the IDCSA's definition of a "consumer transaction," which requires that the transaction be for "primarily personal purposes." *Indiana Pain & Spine Clinic, LLC v. Carolina Liquid Chemistries Corp.*, 2022 WL 891051, at *8 (M.D.N.C. Mar. 25, 2022).

The IDCSA also requires specific allegations of injury. A plaintiff asserting emotional damages must allege "a direct physical impact." *Bank v. Huizar*, 178 N.E.3d 326, 341 (Ind. Ct. App. 2021). As noted above, Plaintiff Bogard's general allegations of "emotional distress, anxiety, helplessness, invalidation, grief, re-traumatization, and frustration," Compl. ¶ 75, do not establish any physical impact, and for that reason as well is not cognizable.

### 4.    Plaintiff McGrath's WDTPA Claim Is Deficient (Count VI).

Plaintiff McGrath's WDPTA claim against the Google Defendants similarly fails because the Complaint does not adequately allege unfair or deceptive activity in connection with a relevant transaction or an adequate injury.

Like the IDCSA, the WDPTA cannot be invoked to recover for free use of an application. The WDPTA prohibits a person from using deceptive practices to "sell, distribute, increase the consumption of or in any [way] dispose of any real estate, merchandise, securities, employment, service, or anything offered by such person." Wis. Stat. § 100.18(1). The statute thus "applies by its terms to commercial transactions," *Slane v. Emoto*, 582 F. Supp. 2d 1067, 1083 (W.D. Wis. 2008), to "protect the residents of Wisconsin from any untrue, deceptive or misleading representations made to promote the *sale* of a product," *K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 720 N.W.2d 507, 516 (2006) (emphasis added) (citation omitted).

Plaintiff McGrath does not allege any commercial transaction involving YouTube and there are no allegations the Google Defendants sold, or Plaintiff McGrath purchased, anything. This is the very opposite of a "sale," and the Court should dismiss the WDPTA claim on this ground alone. *Hydraulics Int'l, Inc. v. Amalga Composites, Inc.*, 2022 WL 4273475 at *8-9 (E.D. Wis. Sept. 15,

2022) (observing that Wisconsin legislature crafted the WDPTA to protect consumers from false advertisement in sales).

The WDPTA also requires specific allegations of economic injury—"a pecuniary loss to the plaintiff"—not present here. *T&M Farms v. CNH Indus. Am., LLC*, 488 F. Supp. 3d 756, 760 (E.D. Wis. 2020). Plaintiff McGrath alleges that she was unable to "return to work for three years," because of "the tragedy that happened [to her son]"—but that is not because of Google's alleged failure to remove flagged content. Compl. ¶ 87. Indeed, no allegation in the Complaint suggests that Plaintiff McGrath reported the videos watched by her son before his death. To the contrary, Plaintiff McGrath alleges she began making reports "[s]ince [her son's] death." *Id.* ¶ 81. Plaintiff McGrath's remaining allegations of "anxiety, frustration, re-traumatization, and inability to find closure" are all insufficient to plead a WDPTA claim. *Id.* ¶ 223.

### 5.     Plaintiff Doe's OUTPA Claim Is Deficient (Count VII).

Plaintiff Doe's claim against the TikTok Defendants under the OUTPA, Or. Rev. Stat. § 646.605, similarly fails because she has failed to plead an actionable misrepresentation and has not suffered a cognizable loss as required under the statute.

To state a claim under OUTPA, a plaintiff must plead a material misrepresentation that caused Plaintiff's injury. *Vitort v. Kroger Co.*, 2021 WL 6061864, at *7 (D. Or. Sept. 13, 2021), *report and recommendation adopted*, 2022 WL 294904 (D. Or. Feb. 1, 2022), *aff'd* 2023 WL 3143690 (9th Cir. Apr. 28, 2023) (dismissing OUTPA claim and finding alleged representations "are not false or misleading" and "do not constitute false advertising"); Or. Rev. Stat. § 646.608(1)(e) (prohibiting only false representations); *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 117 (2015) ("[T]he unlawful trade practice must have caused the ascertainable loss that the plaintiff suffered."). But, as discussed in Section II.A, the Complaint and its incorporated documents show that TikTok's content reporting system works precisely as TikTok represents. As such, the Court should dismiss the OUTPA claim. *Vitort*, 2021 WL 6061864, at *7.

The OUTPA claim suffers from a second, independent flaw: it does not state an "ascertainable loss of money or property … an essential element of a private [O]UTPA claim." *Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp. 3d 971, 978 (D. Or. 2016) (citing *Creditors*

*Protective Ass'n, Inc. v. Britt*, 58 Or. App. 230, 233 (1982)). The Complaint does not contain any actual allegation of monetary or property harm; instead, Plaintiff Doe claims she felt "ignored, anxious, and helpless" and suffered "emotional harm." Compl. ¶ 96. Such harms are not ascertainable. *Pearson*, 358 Or. at 117 ("[N]oneconomic losses cognizable in a civil action—such as physical pain, emotional distress, or humiliation (ORS 31.710(2)(b))—will not satisfy a private [O]UTPA plaintiff's burden"). And while Plaintiff Doe baldly alleges that TikTok's misrepresentation caused her "monetary loss," Compl. ¶ 96, she provides no factual allegation to support this. Such conclusory statements of loss are insufficient. *See, e.g.*, *Teater v. Pfizer, Inc.*, 2012 WL 3776366, at *9 (D. Or. June 27, 2012), *report and recommendation adopted*, 2012 WL 3776364 (D. Or. Aug. 29, 2012 ("Even accepting Plaintiff's [OUTPA] allegations as true, Plaintiff has failed to plead factual content that allows a reasonable inference to be drawn that Defendants are liable for the misconduct alleged."); *DeLoe v. Dep't Stores Nat'l Bank*, 2017 WL 4052185, at *5 (D. Or. Aug. 18, 2017) (recommending dismissal of claim under Rule 12(b)(6) "because Plaintiff has failed to allege with sufficient particularity that Defendants violated Oregon's UTPA").

### 6. Plaintiffs' UCL and FAL Claims Are Deficient (Count VIII).

Plaintiffs' claims for a violation of Section 17200 of California's UCL and Section 17500 of its FAL fail for multiple reasons.

*First,* to have statutory standing under the UCL or FAL, plaintiffs must "'(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim.'" *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048-49 (9th Cir. 2017) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011)) (emphasis omitted); Cal. Bus. & Prof. Code § 17204. Plaintiffs do not allege they paid anything to watch or report videos on YouTube and TikTok, much less that they lost money or property as a result of Defendants' alleged failure to remove content in response to Plaintiffs' reports. *See In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011) (dismissing UCL claim with prejudice because "Plaintiffs allege that they received Defendant's services for free," and therefore, "as a matter of law, Plaintiffs cannot state a UCL claim."); *Hubbard v. Google,*

2024 WL 3302066, at \*9, \*12 (N.D. Cal. July 1, 2024) (dismissing UCL claim for failure to sufficiently allege that the plaintiffs lost the value of their personal information). Their only non-conclusory allegation of injury is mental and emotional harm, which is not an economic injury. *Katz v. Cal-W. Reconveyance Corp.*, 2010 WL 424453, at \*5 (N.D. Cal. Jan. 27, 2010) ("[A]nxiety and emotional distress and the physical symptoms thereof … is not the loss of money or property contemplated by the UCL.").

*Second*, Plaintiffs have not adequately pleaded entitlement to the only remedies available under the UCL and FAL: restitution and injunctive relief. Cal. Bus. & Prof. Code § 17203; *see Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d 1066, 1071 (N.D. Cal. 2020) (UCL remedies "'are generally limited to injunctive relief and restitution'" (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003)); *SVGRP LLC v. Sowell Fin. Servs., LLC*, 2019 WL 652890, at \*17 (N.D. Cal. Feb. 15, 2019) (DeMarchi, J.) ("Damages and non-restitutionary disgorgement are not available under the UCL."). Failure to plead entitlement to this relief requires dismissal. *Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at \*8 (N.D. Cal. Sept. 14, 2016) ("Because plaintiffs have not adequately pleaded standing to seek restitution or injunctive relief, their UCL claim is dismissed"). Here, there can be no restitution because there are no allegations that Defendants hold "monies given to [them] or benefits in which the plaintiff has an ownership interest." *Korea Supply Co.*, 29 Cal. 4th at 1148. Plaintiffs also cannot obtain injunctive relief under the UCL because such relief "is appropriate only when there is a threat of continuing misconduct." *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 463 (2005). Plaintiffs' allegations regarding Defendants' alleged responses to their flags, Compl. ¶¶ 4, 14, 20, 75, 86, 87, 103, are insufficient because they reflect wholly past conduct. *See Phillips v. Apple Inc.*, 2016 WL 1579693, at \*9-10 (N.D. Cal. Apr. 19, 2016) (granting motion to dismiss claims seeking injunctive relief because plaintiffs did not sufficiently plead "a likelihood of future harm").

Furthermore, Plaintiffs do not allege an inadequate remedy at law, as required to obtain any equitable relief in federal court, including injunctive relief. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 n.2, 844 (9th Cir. 2020) (affirming dismissal of UCL claim when plaintiff had adequate legal remedy); *Banks v. R.C. Bigelow, Inc.*, 536 F. Supp. 3d 640, 649 (C.D. Cal. 2021)

(dismissing FAL claim for failure to plead inadequate remedy at law). Plaintiffs seek damages—by definition, a legal remedy, *Sonner*, 971 F.3d at 838—based on allegations that are coextensive with their UCL and FAL claims. Compl. ¶ 42 (seeking "compensatory damages"). "[T]he availability of an adequate legal remedy is [thus] clear from the face of the [complaint] and dictates dismissal[.]" *Hamm v. Mercedes-Benz USA, LLC*, 2022 WL 913192, at *2 (N.D. Cal. Mar. 29, 2022).

*Third*, the Complaint fails to plead any actual violation of either the UCL or FAL. Plaintiffs' UCL claim appears predicated entirely on the statute's "fraudulent" prong—not any claim of unlawful or unfair conduct—and so fails for all the reasons discussed above. *See supra* Section IV.F.a – IV.F.b; Compl. ¶¶ 242-44 (alleging fraud under the UCL). The same is true for any untrue or misleading statements under the FAL, which are both inadequately pled as to the "the who, what, when, where, and how," and contradicted by Defendants' respective Community Guidelines.

### G.  The Foundation Lacks Article III Standing.

In addition to the arguments above, the Foundation should be dismissed for lack of Article III standing. To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be reddressed by a favorable judicial [ruling]." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The Foundation's alleged injury—that it "was forced to expend its resources and time" on a study of Defendants' content reporting processes, Compl. ¶ 197—is insufficient because the Foundation lacks a legally protected interest related to conducting the study, fails to allege a causal connection between its decision to conduct the study and the reporting processes' alleged deficiencies, and does not provide a legal ground for redress of its alleged injury. *See Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012). Nor can the Foundation establish associational standing on behalf of its members because the Complaint lacks "specific allegations establishing that at least one *identified member* ha[s] suffered or would suffer harm," and fails to establish that at least one of the Foundation's members would have standing in their own right. *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013) (citation omitted). Further, that certain of the Foundation's researchers "made reports,"

Compl. ¶ 108, does not identify what (if any) injury they allegedly suffered. On the contrary, the Foundation alleges it *hired* the researchers to conduct the study "on the report and response processes of harmful and illegal content on social media," *id.* ¶ 107, which directly contradicts any theoretical allegation that the researchers were injured by their role in that study.

**H.     There Are No Viable Claims Against XXVI Holdings Inc. Nor Alphabet Inc.**

Despite naming four separate Google Defendants, Plaintiffs assert claims against YouTube only. Compl. ¶¶ 162, 175, 188, 204, 211, 218, 239. Under Rule 8, the Court need not consider Plaintiffs' claims against Defendants XXVI Holdings Inc. and Alphabet Inc. because Plaintiffs do nothing more than name these entities and assert only jurisdictional allegations. *See Twombly,* 550 U.S. at 545 (Rule 8 warrants dismissal where the plaintiffs' allegations failed to put a defendant on notice of "what the claim is" and "the ground upon which it rests" (citation omitted)). Further, Plaintiffs concede that XXVI Holdings Inc. and Alphabet Inc. are parent companies, and Plaintiffs do not allege that either entity is responsible for the conduct alleged in the Complaint.  Compl. ¶¶ 49-50; *see also* Alphabet Inc., Annual Report (Form 10-K) (Feb. 11, 2016), *available at* https://bit.ly/3hrlrGB (disclosing corporate reorganization process "pursuant to which Alphabet became a holding company with no business operations of its own"); ECF No. 18 at ¶ 1-4 (certifying that that Google LLC is "a subsidiary of XXVI Holdings, which is a subsidiary of Alphabet, Inc."). As such, the Complaint does not overcome the bedrock principle of corporate law that a parent company generally cannot be held liable for the actions of its separate subsidiaries. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *see also Manigault-Johnson v. Google LLC*, 2019 WL 3006646, at *3 (D.S.C. March 31, 2019) (dismissing claims against Alphabet where the plaintiffs alleged "only that Alphabet is the parent corporation of Google and YouTube and does not allege any facts showing how Alphabet is responsible for the conduct alleged in the complaint.").

**V.     CONCLUSION**

The Court should dismiss all claims against the Defendants with prejudice.

1         Respectfully submitted,

2

3 Dated: July 12, 2024     COOLEY LLP

4

5           */s/ Kyle C. Wong*

6           Kyle C. Wong

7          *Attorneys for Defendants ALPHABET INC.,*
           *XXVI HOLDINGS INC., GOOGLE LLC, and*
8          *YOUTUBE, LLC*

9 Dated: July 12, 2024     KING & SPALDING LLP
           FAEGRE DRINKER BIDDLE & REATH LLP

10

11           */s/ Bailey J. Langner*

12           Bailey J. Langner

13          Bailey J. Langner
           **KING & SPALDING LLP**
14          50 California Street, Suite 3300
           San Francisco, CA 94111
15          Tel: (415) 318-1214
           Email:  blangner@kslaw.com

16          Geoffrey M. Drake
           (*pro hac vice forthcoming*)
17          **KING & SPALDING LLP**
           1180 Peachtree Street NE, Suite 1600
18          Atlanta, GA 30309
           Tel: (404) 572-4726
19          Email: gdrake@kslaw.com

20          David Mattern
           (*pro hac vice forthcoming*)
21          **KING & SPALDING LLP**
           1700 Pennsylvania Ave. NW, Suite 900
22          Washington, D.C. 20006
           Tel: (202) 626-2946
23          Email: dmattern@kslaw.com

24

25

26

27

28

Andrea R. Pierson
(*pro hac vice forthcoming*)
Andrew L. Campbell
(*pro hac vice forthcoming*)
**FAEGRE DRINKER BIDDLE & REATH
LLP**
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Tel: (317) 237-0300
Fax: (317) 237-1000
Email: andrea.pierson@faegredrinker.com
         andrew.campbell@faegredrinker.com

*Attorneys for Defendants TIKTOK INC. and
BYTEDANCE INC.*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Kyle C. Wong, attest that concurrence in the filing of this document has been obtained from all other signatories. Executed on July 12, 2024, in San Francisco, California.

*/s/ Kyle C. Wong*
Kyle C. Wong